## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRY STOLTZ, ALLAN CHANG, ROSALIE MAYES, REBECCA STARR, TERESA M. COHEN, KENNETH LEIBOWITZ, GILBERT MENDEZ, SHARON MANIER, ANDREA NEAL, BRITTANEE JACKSON, JAMES MANIER, JOHN DOE (GEORGIA), and JANE DOE (TEXAS), on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAGE DAIRY PROCESSING INDUSTRY, S.A., FAGE USA DAIRY INDUSTRY, INC., and FAGE USA HOLDINGS, INC.,<br><br>Defendants. | Case No. 14-cv-3826 (MKB)<br><br><br>ECF Case |

### DEFENDANTS FAGE DAIRY PROCESSING, S.A., FAGE USA DAIRY INDUSTRY, INC., AND FAGE USA HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND ALTERNATIVELY, MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF NEW YORK

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Attorneys for Defendants

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................. 1

PLAINTIFFS' ALLEGATIONS .......................................................................... 3

LEGAL STANDARD ........................................................................................... 5

ARGUMENT ........................................................................................................ 6

I.      Plaintiffs' Consumer Fraud and Deceptive Trade Practices Claims (Counts I-IX) Fail as a Matter of Law ................................................................. 6

      A.      Dismissal Is Proper Where, as Here, the Allegations in the Complaint Establish That the Defendant Fully Disclosed All Information Necessary for a Reasonable Consumer Acting Reasonably to Understand the Claim ................................................. 6

      B.      New York Law Supports Dismissal of Plaintiffs' Claims ....................... 11

      C.      Plaintiffs Have Insufficiently Alleged Damages ..................................... 16

      D.      Plaintiffs Have Failed to Allege Causation ............................................... 16

II.     Plaintiffs Fail to State a Claim for Negligent Misrepresentation (Count X) ........ 17

      A.      Plaintiffs' Negligent Misrepresentation Claim Fails Because Plaintiffs Have Not Plausibly Pled Any Misrepresentations on the Part of FAGE .............................................................................................. 17

      B.      There Is No Special Relationship Between FAGE and Plaintiffs............. 17

      C.      Plaintiffs Have Failed to Allege Reliance ................................................. 18

      D.      Count X Is Also Barred Under the Economic Loss Doctrine ................... 19

III.    Plaintiffs' Unjust Enrichment Claim (Count XI) Fails as a Matter Of Law ......... 20

IV.    Plaintiffs Cannot Allege Negligent Misrepresentation and Unjust Enrichment Under the Laws of All 50 States and the District of Columbia......... 21

V.     Plaintiffs Have Not Stated Cognizable Claims Against FAGE Holdings and FAGE Greece ................................................................................................ 21

VI.    Alternatively, This Court Should Transfer This Case to the Northern District of New York ........................................................................................ 22

i

A.      Legal Standard ........................................................................................... 23

B.      An Action Could Have Been Brought in the Northern District of
        New York ................................................................................................... 23

C.      The Interest of Justice Factors Favor Transfer to the Northern
        District of New York ................................................................................. 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Coca-Cola Co.*,
   No. CV-09-0395 (JG) (RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ...........13, 14, 15

*Allen v. Westpoint-Pepperell, Inc.*,
   945 F.2d 40 (2d Cir. 1991)...................................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................5

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ..........................................................................................22

*Avoy v. Turtle Mountain, LLC*,
   No. 13-CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014).....................................8

*Beckerman v. Heiman*,
   No. 05 Civ. 5234 (BSJ) (GWG), 2006 WL 1663034 (S.D.N.Y. June 16, 2006) ..................24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................5

*BNP Paribas Mortg. Corp v. Bank of America, N.A.*,
   949 F. Supp. 2d 486 (S.D.N.Y. 2013)...............................................................................19

*Corsello v. Verizon N.Y., Inc.*,
   967 N.E.2d 1177 (N.Y. 2012).............................................................................................20

*Derbaremdiker v. Applebee's Int'l, Inc.*,
   No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ............................12

*Dzielak v. Whirlpool Corp.*,
   Civ. No. 2:12-0089 (KM), 2014 WL 2758746 (D. N.J. June 16, 2014)..................................7

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   387 F. Supp. 2d 265 (S.D.N.Y. 2004)..........................................................................17, 18

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)......................................................................................2, 7, 12

*Fink v. Time Warner Cable*,
   837 F. Supp. 2d 279 (S.D.N.Y. 2011)...............................................................................12

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006)...................................................................23

*Gale v. Int'l Bus. Machines Corp.*,
    781 N.Y.S.2d 45 (N.Y. App. Div. 2004) .............................................................16

*Glass v. S & M NuTec. LLC*,
    456 F. Supp. 2d 498 (S.D.N.Y. 2006)...................................................................24

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................15, 20

*Guerrero v. Target Corp.*,
    889 F. Supp. 2d 1348 (S.D. Fla. 2012) ................................................................20

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)...................................................................................5

*Hunt v. U.S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008)..................................................................................19

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...............................................................20

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)..................................................................................6

*In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Lit.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) .......................................................................21

*Kane v. Chobani, Inc.*,
    973 F. Supp. 2d 1120 (N.D. Cal. 2014) ...............................................................19

*Kane v. Chobani, Inc.*,
    No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013)................8

*Kimmell v. Schaefer*,
    675 N.E.2d 450 (N.Y. 1996).................................................................................18

*Kuenzig v. Kraft Foods, Inc.*,
    No. 8:11-cv-838-T-24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) ........8

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005)....................................................................6

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011)...............................................................................18

*Mangiafico v. Blumenthal,*
    471 F.3d 391 (2d Cir. 2006).................................................................................5

*Matson v. Bd. of Educ. of City School Dist. of New York,*
    631 F.3d 57 (2d Cir. 2011)..................................................................................6

*McKinnis v. Kellogg USA,*
    No. CV 07-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ...........................6, 7, 8

*McKinniss v. Sunny Delight Beverages Co.,*
    No. 07-02034-RGK(JCx), 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)...............................8

*Milich v. State Farm Fire & Cas. Co.,*
    2013 WL 906501, 513 Fed. Appx. 97 (2d Cir. March 12, 2013) ...........................................12

*New York Univ. v. Continental Ins. Co.,*
    662 N.E.2d 763 (N.Y. 1995)..............................................................................19

*Nivia v. Nationstar Mortg., LLC,*
    No. 13-CIV-24080, 2014 WL 4146889 (S.D. Fla. Aug. 21, 2014) ........................................7

*Parks v. Dick's Sporting Goods, Inc.,*
    05–CV–6590 (CJS), 2006 WL 1704477 (W.D.N.Y. June 15, 2006) ...................................21

*Preira v. Bancorp Bank,*
    885 F. Supp. 2d 672 (S.D.N.Y. 2012)...................................................................16

*Prukala v. Elle,*
    11 F. Supp. 3d 443, 447 (M.D. Penn. 2014) ...........................................................7

*S.F. v. Archer-Daniels-Midland Co.,*
    No. 13–CV–634S, 2014 WL 1600414 (W.D.N.Y. April 21, 2014) ...................................22

*Sands v. Ticketmaster-New York, Inc.,*
    No. 31614/92, 1994 WL 662956 (N.Y. Sup. Ct. June 23, 1994) *aff'd,* 616 N.Y.S.2d
    362 (N.Y. App. Div. 1994) .................................................................................7

*Savage v. Beiersdorf Inc.,*
    No. 13-CV-0696 (DLI) (LB), 2013 WL 5532756 (E.D.N.Y. Sept. 30, 2013) ......................18

*Sheridan v. Trustees of Columbia Univ.,*
    745 N.Y.S.2d 18 (N.Y. App. Div. 2002) ...............................................................18

*Small v. Lorillard Tobacco Co.,*
    720 N.E.2d. 892 (N.Y. 1999)............................................................................16

*Simington v. Lease Fin. Grp., LLC,*
    10 Civ. 6052 (KBF), 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012).................................21

v

*Steger v. Delta Airlines, Inc.*,
　　382 F. Supp. 2d 382 (E.D.N.Y. 2005) ................................................................5

*Subaru Distributors Corp. v. Subaru of America, Inc.*,
　　425 F.3d 119 (2d Cir. 2005) ................................................................6

*Tiismann v. Linda Martin Homes Corp.*,
　　281 Ga. 137 (2006) ................................................................7

*Van Dusen v. Barrack*,
　　376 U.S. 612 (1964) ................................................................23

*Verzani v. Costco Wholesale Corp.*,
　　No. 09 CIV 2117 (CM), 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F.
　　App'x 29 (2d Cir. 2011) ................................................................8

*Vigiletti v. Sears, Roebuck & Co.*,
　　*No.* 2573/05, 2005 WL 7775119 (N.Y. Sup. Ct. Sept. 27, 2005), *aff'd*, 838 N.Y.S.2d
　　785 (N.Y. App. Div. 2007) ................................................................17

*Waldman v. New Chapter, Inc.*,
　　714 F. Supp. 2d 398 (E.D.N.Y. 2010) ................................................................15

*Zalewski v. T.P. Builders, Inc.*,
　　No. 1:10–CV–876 (GLS/RFT), 2011 WL 3328549 (N.D.N.Y. Aug. 2, 2011) ................22

*Zine v. Chrysler Corp.*,
　　600 N.W.2d 384 (Mich. App. 1999) ................................................................7

*Zuckerman v. BMG Direct Marketing, Inc.*,
　　737 N.Y.S.2d 14 (N.Y. App. Div. 2002) ................................................................12

## STATUTES

28 U.S.C. § 1391(b)(1) ................................................................23

28 U.S.C. § 1404(a) ................................................................3, 23, 25

N.Y. Gen. Bus. Law § 349 ................................................................ passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2) ................................................................5

Fed. R. Civ. P. 9(b) ................................................................3

Fed. R. Civ. P. 12(b)(6) ................................................................ passim

## <u>INTRODUCTION</u>

Almost since the inception of the dairy industry in the United States, dairy products have been sold with the fat content prominently displayed on the package.  Over the past fifteen years, FAGE USA Dairy Industry, Inc. ("FAGE USA") has marketed and sold Greek strained yogurt in the United States under the brand labels "FAGE Total 2%" and "FAGE Total 0%," with the respective percentages designating the milk fat contained in each product.  Examples of FAGE's products are shown below:



Abandoning common sense, Plaintiffs and their lawyers now bring a class action lawsuit claiming that reasonable consumers of FAGE Total 0% products have been misled into believing that "0%" somehow implies not just that the product is fat free (which it is), but that it is also the first dairy product in history to be entirely free of all calories, sugar, and carbohydrates.  In order to survive a motion to dismiss, Plaintiffs must allege facts that, if accepted as true, could permit the Court to draw a reasonable inference that reasonable consumers *who are acting in a reasonable manner* under the circumstances are likely to be misled by FAGE's use of "0%" on its product label.  The allegations in Plaintiffs' Amended Complaint fail to meet this standard for three primary reasons.

**<u>First</u>**, it cannot be credibly disputed that reasonable consumers of dairy products are accustomed to the use of percentages—like 0% and 2%—on such products to denote milk-fat content and nothing else.  **<u>Second</u>**, Plaintiffs' theory is that reasonable consumers could

somehow be tricked into believing that FAGE's Greek strained yogurt products are entirely devoid of all caloric content, even though no such yogurt product (or dairy product of any kind) exists *anywhere in the world*, and such a product would defy the laws of chemistry and nutrition. All pasteurized milk products contain naturally-occurring proteins and sugar (lactose) and, therefore, no milk-based product could possibly be entirely free of all calories.  Plaintiffs have not pointed to any yogurt product, dairy product, or even *any food product* that a reasonable consumer could expect to be free of all fat, calories, sugar, and carbohydrates.  **Finally**, Plaintiffs have not plausibly suggested that reasonable consumers are likely to be deceived because *indisputably accurate* information about the total calories, sugar, and carbohydrates appear on the very same product label—mere *centimeters* from where "FAGE Total 0%" is displayed.

In pre-motion proceedings before the Court, Plaintiffs have suggested that no matter how farfetched their allegations may be, this Court must deny FAGE's motion to dismiss because all such consumer fraud claims necessarily give rise to an issue of fact.  This is an inaccurate statement of the law.  Under Rule 12(b)(6), this Court properly acts as a gatekeeper with respect to claims that are not plausible on their face.  As the Second Circuit has confirmed, this is true also in the context of consumer fraud claims when the Court finds the plaintiff has not alleged facts sufficient to suggest that a defendant's advertisements qualify as deceptive acts or practices likely to mislead a reasonable consumer acting reasonably under the circumstances.  *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (affirming the District Court's decision to dismiss consumer fraud claims where the Court found that the alleged conduct pled was not materially misleading).  So too should the Court act as a gatekeeper here and dismiss Plaintiffs' claims as unsustainable on their face.

In addition, each of Plaintiffs' claims suffer from multiple independent legal defects that warrant dismissal:

- Plaintiffs insufficiently alleged injury and causation under their various consumer fraud and unfair trade practices claims and such claims are insufficiently pled under Rules 9(b) and 12(b)(6).

- Plaintiffs' negligent misrepresentation claim (Count X) fails for a variety of additional reasons, including the fact that Plaintiffs cannot plead the requisite special relationship between themselves and FAGE to warrant relief under this cause of action. Although the Court has specifically raised this defect with Plaintiffs in pre-motion proceedings, they have continued to persist in pleading this claim.

- Plaintiffs' unjust enrichment claim (Count XI) is duplicative of other substantive claims brought by Plaintiffs and Plaintiffs have not pled sufficient facts to support such a claim.

- Plaintiffs' claims against FAGE USA Holdings, Inc. ("FAGE Holdings"), and FAGE Dairy Processing Industry, S.A. ("FAGE Greece") should be dismissed based on the fact that the claims against these entities consist solely of "group pleading" and no basis is provided in the Amended Complaint for why such entities are responsible for the conduct alleged.

Finally, *in the alternative to dismissal*, this Court should transfer the case to the Northern District of New York under 28 U.S.C. § 1404(a), where the headquarters of FAGE is located. Plaintiffs' choice of forum (especially after adding additional named plaintiffs from states around the United States) is entitled to little, if any, deference, and it would be more convenient for the parties and witnesses to litigate this matter in the Northern District of New York.

## PLAINTIFFS' ALLEGATIONS

In the Amended Complaint, Plaintiffs allege that they are purchasers of FAGE's Greek strained yogurt products. (Am. Compl. ¶ 7.) While the original Complaint mentioned nothing about "reliance" on the advertising about which Plaintiffs complain, the Amended Complaint now includes the blanket statement that the Plaintiffs "reviewed" and "relied" on FAGE Total

3

0% labels in purchasing FAGE Total 0% Greek yogurt.[1]  (*Id.* ¶ 6.)  There are no details about the actual purchasing decisions of the Plaintiffs, and how their interpretation of FAGE Total 0% factored into that decision.

Separate and apart from the brief allegations made about Plaintiffs' own unremarkable experiences as consumers of FAGE Total yogurt, the Amended Complaint alleges generally that consumers elsewhere are misled by the reference to "FAGE Total 0%" that appears on the front and top label of each container of yogurt, as well as other advertising broadly promoting FAGE Total 0% as a healthy product.  (*Id.* ¶¶ 4-6.)  According to the Amended Complaint, the reference to "0%" is misleading because consumers will believe that 0% refers to sugar, carbohydrates, or calories rather than the non-fat nature of the yogurt.   (*Id.* ¶¶ 4, 5, 36, 47.)   As Plaintiffs acknowledge (and as pictures in their Amended Complaint clearly depict), accurate information as to all of the nutritional facts about these products appears on the same product packaging next to the reference to "0%."  (*Id.* ¶¶ 39, 47.)  Further, the word "nonfat" appears next to "Total 0%" on FAGE Total yogurt containers in the very picture that Plaintiffs provide, although Plaintiffs allege that it is "not placed in close enough proximity."  (*Id.* ¶ 47.)

The Amended Complaint asserts eleven causes of action: deceptive practices claims under N.Y. Gen. Bus. Law ("GBL") § 349 (Counts I and II); mirror-image claims under the consumer fraud or unfair trade practices laws of New Jersey, Pennsylvania, California, Florida, Michigan, Georgia, and Texas (Counts III-IX); a negligent misrepresentation claim (Count X); and a claim for unjust enrichment (Count XI).

---

[1] There are still no specific allegations that the Plaintiffs relied upon the FAGE Total 0% label at the time they purchased FAGE Total 0% yogurt, and that this factor was the driving reason for their purchase.

## **LEGAL STANDARD**

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). A claim can survive a motion to dismiss only if it "is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This requires the court to undertake "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. On a motion to dismiss, the Court may consider the "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005). In addition, the court may consider written materials that the

5

plaintiff's case refers to and depends upon. *Matson v. Bd. of Educ. of City School Dist. of New York*, 631 F.3d 57, 61-62 (2d Cir. 2011).[2]

## ARGUMENT

**I.      Plaintiffs' Consumer Fraud and Deceptive Trade Practices Claims (Counts I-IX) Fail as a Matter of Law**

Plaintiffs' claims under GBL § 349 (Counts I and II) should be dismissed because Plaintiffs have not pled any conduct on the part of FAGE that could be remotely misleading or deceptive to a reasonable consumer acting reasonably under the circumstances.  The copycat claims under the other state laws (Counts III-IX) are defective for the same reason.

**A.      Dismissal Is Proper Where, as Here, the Allegations in the Complaint Establish That the Defendant Fully Disclosed All Information Necessary for a Reasonable Consumer Acting Reasonably to Understand the Claim**

Under GBL § 349, a plaintiff must show (1) that the act, practice, or advertisement was consumer-oriented, (2) that the act, practice, or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the misleading act or practice.  *See Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).  Most importantly, to prevail on a consumer fraud claim under New York law, Plaintiffs must establish that FAGE's "allegedly

---

[2] In this case, because the content and labels on containers of FAGE Total 0% Greek strained yogurt are central to Plaintiffs' Amended Complaint, are referenced in it, and Plaintiffs misleadingly only reference certain excerpts of the labels, the Court can consider representations of these product labels, which are contained within this brief (without converting the instant motion to a motion for summary judgment)**.**  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document *integral to or explicitly relied upon* in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (emphasis in original); *Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining the court may consider any documents attached to the complaint, incorporated in the complaint by reference, or those upon which the complaint relies when assessing the adequacy of the complaint); *see also McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *2 (C.D. Cal. Sept. 19, 2007) (taking judicial notice of product boxes and labels in dismissing case with prejudice).

deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances."[3]   *Fink*, 714 F.3d at 741 (applying New York law).  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Id.*

"[C]ontext is crucial" is determining "whether a reasonable consumer would have been misled by a particular advertisement."  *Id.* at 742.  "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Id.* The Second Circuit in *Fink* stated that a "plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment."  *Id.*

"The key to understanding GBL § 349 is whether the practice that the plaintiff attacks is fully disclosed."  *Sands v. Ticketmaster-New York, Inc.*, No. 31614/92, 1994 WL 662956, at *2 (N.Y. Sup. Ct. June 23, 1994) *aff'd*, *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362,

---

[3] The other state law claims (Counts III-IX) involve the exact same standard—that the conduct or advertisement at issue must actually be misleading to a reasonable consumer, and if it is not, the claims fails as a matter of law.  *See, e.g., Prukala v. Elle*, 11 F. Supp. 3d 443, 447 (M.D. Penn. 2014) (under Pennsylvania law, plaintiff must establish "a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances"); *Nivia v. Nationstar Mortg., LLC*, No. 13-CIV-24080, 2014 WL 4146889, at *5 (S.D. Fla. Aug. 21, 2014); *McKinnis v. Kellogg USA*, No. CV 07-2611, 2007 WL 4766060, at *3 (C.D. Cal. Sept. 19, 2007) (if alleged misrepresentation "would not deceive a reasonable consumer … then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss"); *Dzielak v. Whirlpool Corp.*, Civ. No. 2:12-0089 (KM), 2014 WL 2758746, at *19-20 (D. N.J. June 16, 2014) (same, and holding Rule 9(b) applies to New Jersey Consumer Fraud Act); *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 141 (2006); *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. App. 1999) (explaining "the issue is not whether the omission is misleading to a reasonable consumer but whether the consumer could reasonably be expected to discover the omission at issue").

7

363 (N.Y. App. Div. 1994) (challenged business practices do not violate GBL § 349 because the practices were fully disclosed prior to the sale of the tickets); *Verzani v. Costco Wholesale Corp.*, No. 09 CIV 2117 (CM), 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) *aff'd*, 432 F. App'x 29 (2d Cir. 2011) (dismissing plaintiff's § 349 claim where label on shrimp cocktail package accurately stated that the "combined weight" of the food in the tray was sixteen ounces; plaintiff's assumption that he was purchasing sixteen ounces of shrimp did not make the label misleading in a material respect).[4]

Here, on the face of the Amended Complaint, Plaintiffs cannot possibly establish misleading conduct or cognizable injury.  Even though Plaintiffs allege that consumers are misled (notwithstanding numerous, obvious signals on the container that "Total 0%" refers to non-fat), the operating standard is whether a "reasonable consumer" acting "reasonably" would think that "Total 0%" refers to sugar, carbohydrates, or calories.  The plain language of the FAGE Total containers renders Plaintiffs' claims invalid as a matter of law.[5]

First, the side and top labels on the FAGE Total 0% container clearly say "nonfat" in

---

[4] Courts outside the Second Circuit have expressly rejected as a matter of law claims similar to what Plaintiffs assert here.  *See, e.g., Kuenzig v. Kraft Foods, Inc.*, No. 8:11-cv-838-T-24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011); *McKinniss v. Sunny Delight Beverages Co.,* No. 07-02034-RGK(JCx), 2007 WL 4766525, at *4-5 (C.D. Cal. Sept. 4, 2007); *Avoy v. Turtle Mountain, LLC*, No. 13-CV-0236-LHK, 2014 WL 587173, at *5-6 (N.D. Cal. Feb. 14, 2014); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013); *McKinnis v. Kellogg USA,* No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007).

[5] This analysis applies equally to Plaintiffs' allegations that the FAGE Total 0% label and advertising efforts in the traditional media and social media about these products are misleading.

close proximity to the "Total 0%" notation on the front of the label.[6]  These side and top labels, which this Court can consider in ruling on this motion to dismiss, are set forth below for Blueberry and Peach flavors of FAGE Total 0% Greek yogurt:

 

Plaintiffs essentially admit the close proximity of the "nonfat" reference to "Total 0%," alleging that "nonfat" is not "in close enough proximity" to "Total 0%."  (Am. Compl. ¶ 47.)  Plaintiffs' rhetoric aside, the examples above speak for themselves.

Second, the nutritional facts, as included in the Amended Complaint, that appear on a container of FAGE Total 0% Greek strained yogurt prohibits as a matter of law any claim that consumers could be misled.  An example of the nutrition facts for one container of FAGE Total 0% is excerpted below:

| Nutrition Facts | Amount/Serving | %DV* | Amount/Serving | %DV* | INGREDIENTS: Grade A Pasteurized Skimmed Milk, Live Active Yogurt Cultures (L. Bulgaricus, S. Thermophilus, L. Acidophilus, Bifidus, L. Casei). |
|---|---|---|---|---|---|
| Serv. Size 1 Container (170g) | Total Fat 0g | 0% | Total Carb. 7g | 2% | |
| | Sat. Fat 0g | 0% | Fiber  0g | 0% | |
| Calories 100 Fat Cal 0 | Trans Fat 0g | | Sugars 7g | | FAGE USA Dairy Industry, Inc. 1 Opportunity Drive, Johnstown Industrial Park, Johnstown, NY 12095 1-866-962-5912 MON.-FRI. www.usa.fage.eu |
| | Cholest. 0mg | 0% | Protein 18g | 36% | |
| *Percent Daily Values (DV) are based on a 2,000 calorie diet. | Sodium 65mg | 3% | | | |
| | Vitamin A 0% | • | Vitamin C 0% | | |
| | Calcium 20% | • | Iron 0% | | Certified GF |

---

[6] The fact that other brands of yogurt cited by Plaintiffs include "0% fat" references on the front of their label reinforces the conclusion that it is common in the yogurt industry to link 0% to the yogurt's non-fat qualities, not calories, carbohydrates, or sugar.  (Am. Compl. ¶ 44.)

Accordingly, no reasonable consumer could possibly think that "Total 0%" on the front of the container (flanked with the word "nonfat") could ever refer to the amount of carbohydrates, sugar, or calories, which are obviously represented on the nutrition facts.

Third, numerous dairy products are sold with the fat content prominently displayed on the package. Consumers are therefore accustomed to the use of such percentages to designate milk fat content. The following are just a few examples of dairy products—including other Greek yogurt products that utilize percentages in the exact same way as FAGE:



Like most manufacturers of milk-based dairy products, FAGE offers varieties of its FAGE Total yogurt product with varying percentages of milk fat, including 0% and 2%. Likewise, in the context of the marketplace, "FAGE Total 2%" is located next to "FAGE Total 0%"—when viewed together, it becomes apparent to any reasonable consumer that "2%" and

0%" refer to the fat content in the product.  The Amended Complaint critically concedes this

point, including in Paragraph 44 yogurt products with "0%" on the label that unmistakably refers

to fat content.  (Am. Compl. ¶ 44.)

Fourth, sugar and carbohydrates are measured in grams, and calories are measured

numerically, not in percentages as reflected by "Total 0%."  No reasonable consumer would

conclude that, based on the front of the container, that there is "0% sugar," "0% carbohydrates,"

or "0% calories"—it simply makes no sense.

Finally, Plaintiffs' theory makes no sense because their purported interpretation of "Total

0%"—namely, a Greek strained yogurt product that has no fat, carbohydrates, sugar, or

calories—is not a product that exists anywhere in the world, nor could it exist.  Indeed, the *only*

products Plaintiffs have cited in their Amended Complaint that consumers would reasonably

expect to be free of all calories are soft drink products,[7] which consist essentially of water

sweetened with artificial flavors and sugar substitutes.  As any reasonable consumer would

recognize, a dairy product, which has natural proteins and sugars (lactose), could not conceivably

be free of all calories.  Accordingly, Plaintiffs' analogy to soft drinks does not support their

claims.

## B. New York Law Supports Dismissal of Plaintiffs' Claims

There is ample authority arising out of New York courts for the proposition that facially

implausible consumer class actions brought under GBL § 349 are subject to dismissal.  First, in

---

[7] Plaintiffs draw a false analogy between FAGE Total 0% and Coke Zero and Pepsi Max 0 (products that have come on the market much more recent than FAGE Total 0%).  Plaintiffs' analogy rings hollow because these two products are objectively not comparable to FAGE Total 0% Greek strained yogurt and these products both clearly indicate that their respective references to the number "0" or "Zero" *are* referring to calories, carbohydrates and sugar. (Am. Compl.  ¶¶ 4, 36.)

*Fink*, the district court examined GBL § 349 claims brought against an internet provider that marketed a "Road Runner High Speed Online" internet service that did not live up to consumer expectations regarding internet speed and reliability.  *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 281-83 (S.D.N.Y. 2011).  The plaintiffs in *Fink* specifically challenged a number of marketing statements made by the defendant, including the statement that the defendant offered an "always-on connection"; that it was "blazing fast"; that it was the "fastest, easiest way to get online"; and that the service offers speeds "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up." *Id.*

The District Court concluded in *Fink* that the plaintiffs had not sufficiently pled deceptive practices on the part of the defendant that would lead a *reasonable consumer* to be deceived.  *Id.* at 283-84.  The Second Circuit affirmed, confirming that the District Court may make the determination as to whether acts or practices are deceptive or misleading to a reasonable consumer acting reasonably under the circumstances, as a matter of law.  *Fink*, 714 F.3d at 741.

Furthermore, in a similar context, "New York courts have dismissed claims for having failed to satisfy this element where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to the plaintiff."  *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058 KAM, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012); *Milich v. State Farm Fire & Cas. Co.*, 2013 WL 906501, 513 Fed. Appx. 97, 98 (2d Cir. March 12, 2013) (affirming dismissal of GBL § 349 claims because "[a] policyholder who declines to read the readily accessible provisions referred to cannot claim to have been misled"); *see also Zuckerman v. BMG Direct Marketing, Inc.*, 737 N.Y.S.2d 14 (N.Y. App. Div. 2002) ("The complaint alleges that defendant, a music club operator engaged in the selling of musical recordings by mail, bills its customers for shipping and handling in 'false' and 'inflated' amounts

that exceed defendant's actual shipping and handling costs.  Such allegations were properly held insufficient to state a cause of action under General Business Law § 349 in view of defendant's promotional materials setting forth the exact amount to be charged for the shipping and handling of each recording selected.").

Plaintiffs' counsel have attempted to model the Amended Complaint off of the U.S. District Court's decision in *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010), and have argued to the Court in pre-motion proceedings that *Ackerman* dictates that their Amended Complaint cannot be dismissed.  Even if the Court accepts *Ackerman* as persuasive authority, the District Court's decision in *Ackerman* stands for nothing more than the proposition that the existence of accurate facts on a nutrition label *alone* "does not eliminate that possibility that reasonable consumers may be misled."  *Id.* at *16. *Ackerman* does not stand for the proposition that consumer fraud claims alleging deceptive product labeling *de facto* must survive Rule 12(b)(6) and proceed to costly discovery.

In *Ackerman*, the plaintiffs alleged that *twelve misleading statements* on Coca-Cola's "vitaminwater" beverage misled consumers into believing that a product which was essentially a soft drink with no nutritional value was, in fact, a vitamin supplement with a great deal of nutritional value.[8]  *Id.* at *5, *15.  *Ackerman* does not apply here because: (1) the *Ackerman*

---

[8] These alleged misstatements included, for example: (1) "Nutrient-Enhanced Water Beverage"; (2) "vitamins + water = all you need"; (3) flavor names "rescue" and "defense"; (4) name "vitaminwater" itself; (5) "vitamins + water = what's in your hand"; (6) "this combination of zinc and fortifying vitamins can … keep you healthy as a horse"; (7) "specially formulated … [to] reduce the risk of chronic diseases"; (8) "specially formulated to provide vitamin[s] … [that] may reduce the risk of age-related eye disease"; (9) "specially formulated … [to] promot[e] healthy, pain-free functioning of joints …"; (10) "specially formulated with nutrients required for optimal functioning of the immune system"; (11) "specially formulated with [B] vitamins and theanine. The [B] vitamins are there to replace those lost during times of stress (physical and

court found that the "collective effect" of these twelve statements was misleading to consumers; (2) the twelve statements in *Ackerman* were vague and allowed for consumers to make reasonable, conflicting interpretations about their meaning, unlike here; (3) "vitaminwater" was a brand-new product and new product line that consumers were not familiar with, increasing the likelihood of deception; dairy products that display their fat content have been available to consumers for decades; (4) the nutritional facts label in *Ackerman* did not, in fact, dispel the allegedly misleading statements (see footnote 8, *supra*); (5) *Ackerman* involved numerous health-specific claims; FAGE Total 0% does not; and (6) the *Ackerman* court gave "substantial weight" to the FDA's determination that fortification of a food can be misleading.

In sum, the *Ackerman* court observed that, where the Complaint adequately stated a basis to conclude that consumers were being misled by the defendant's marketing claims, the fact that the nutrition label included accurate information about the product's ingredients was not sufficient to warrant dismissal. *Id.* at *16.

The *Ackerman* court did not abandon the legal standard requiring it to assess whether the plaintiff had adequately pled facts that could plausibly suggest that the defendant's conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances. *Id.* at *16, *17 (recognizing the inquiry is whether "as a matter of law" the representations at issue would be misleading to reasonable consumers). To the contrary, the Court engaged in a very in-depth analysis of the plaintiff's claims and concluded—in that particular case—that the allegations were sufficient to survive a motion to dismiss. *Id.* Here, in contrast, we have a highly distinguishable fact pattern in which Plaintiffs have *not* pled facts that would plausibly suggest,

---

mental)"; and (12) "specially formulated with nutrients that enable the body to exert physical power by contributing to structural integrity of the musculoskeletal system." *Id.* at *5.

based on the totality of the advertising claims at issue, that reasonable consumers would be misled.  Accordingly, *Ackerman* is of no help to Plaintiffs.

In pre-motion proceedings, Plaintiffs also cited a number of other New York cases, which are equally unhelpful to Plaintiffs.  First, *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014), is another case where, *based on the specific factual circumstances* and allegations made in the Complaint, the Court found that the Plaintiff plausibly stated a right to relief.  *Id.* at 479-80.  In *Goldemberg*, despite the fact that the cosmetic products at issue were entirely synthetic, they were advertised as "Active Naturals" and were accompanied by an aggressive marketing campaign touting the "power" of nature.  *Id.* at 480.  The Court found that these allegations were sufficient to plausibly suggest that consumers might be reasonably confused about the components of the product.  *Id.*

Finally, *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010), was a "slack fill" case where the defendant allegedly included too much empty space in the product's packaging.  In *Waldman*, there were no allegations that representations about the quality or character of the product itself were misleading.  *Waldman* is far afield from the instant case.

Accordingly, while Plaintiffs' cases involve circumstances where arguably the misrepresentations at issue were ambiguous and further discovery was appropriate on the issue of whether they were "misleading," the allegations in Plaintiffs' Amended Complaint do not deserve similar treatment.  No reasonable consumer acting reasonably could believe that "Total 0%" refers to sugar, carbohydrates, or calories.  Plaintiffs have fallen short of pleading plausible allegations that warrant expensive and time-intensive discovery.

For these reasons, Plaintiffs have failed to allege any "deceptive acts or practices" that are necessary to state a claim under the consumer fraud or deceptive trade practices laws of New

York, New Jersey, Pennsylvania, California, Florida, Michigan, Georgia, and Texas.  As a result, Plaintiffs' claims under Counts I-IX should be dismissed.

### C.        Plaintiffs Have Insufficiently Alleged Damages

In response to FAGE's pre-motion letter, Plaintiffs essentially dropped as legally defective their damages claim of "out of pocket" harm—that they would not have purchased the products but for the alleged deceptive conduct.  This theory is not cognizable in New York, and, in fact, has been squarely rejected.  *See, e.g., Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012) ("[T]he New York Court of Appeals has expressly rejected [the argument] that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business § 349.") (citing *Small v. Lorillard Tobacco Co.*, 720 N.E.3d 892, 898 (N.Y. 1999)).

Instead, their key damages theory is they paid a "premium" for FAGE Total 0% yogurt because of the allegedly misleading Total 0%.  (Am. Compl. ¶¶ 37, 58-60.)  But this theory is implausible and cannot form the basis for Plaintiffs' state law consumer fraud and deceptive trade practices claims.  Plaintiffs merely compare the price of FAGE Total yogurt—a high-end product—with other less expensive yogurt products, and calculate the "premium price" based on the difference in the prices of these products.  There is absolutely no connection between "Total 0%" and the so-called "premium price" that consumers pay for FAGE Total yogurt.  Ascertainable loss is a required element for these claims, but Plaintiffs allege nothing of the sort.

### D.        Plaintiffs Have Failed to Allege Causation

Plaintiffs "must show that the defendant's material deceptive act caused the injury" under GBL § 349.  *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45 (N.Y. App. Div. 2004) (affirming dismissal of GBL § 349 because "plaintiff did not see any of these statements, [so]

they could not have been the cause of his injury"); *Vigiletti v. Sears, Roebuck & Co.*, *No.* 2573/05, 2005 WL 7775119, at *3 (N.Y. Sup. Ct. Sept. 27, 2005), *aff'd*, 838 N.Y.S.2d 785 (N.Y. App. Div. 2007) (no causation under GBL § 349 where plaintiffs did not see the allegedly misleading statements before purchasing the product).  After failing to allege any reliance-type allegations in the original complaint, now Plaintiffs seemed to have remembered that they actually "reviewed" FAGE Total's labels and "reasonably relied" on them.  (Am. Compl. ¶ 6.) This allegation is conclusory and fails to draw any connection between "Total 0%," Plaintiffs' resulting (unreasonable) interpretation, and the ultimate purchasing decision.  This is yet another reason why this claim is fatally flawed.

## II.     Plaintiffs Fail to State a Claim for Negligent Misrepresentation (Count X)

As the Court alluded to during pre-motion proceedings, Plaintiffs' negligent misrepresentation claim is deficient on its face for several independent reasons.  Although the Court gave Plaintiffs the opportunity to withdraw the claim, Plaintiffs have persisted in pursuing it.  Accordingly, FAGE hereby moves the Court to dismiss this claim.

### A.     Plaintiffs' Negligent Misrepresentation Claim Fails Because Plaintiffs Have Not Plausibly Pled Any Misrepresentations on the Part of FAGE

First, as described in detail above in connection with Plaintiffs' Counts I-IX, Plaintiffs have alleged no act on the part of FAGE that is deceptive or misleading to consumers.  For this reason, Plaintiffs have alleged no act that could reasonably be described as an actionable "misrepresentation" on the part of FAGE.  Accordingly, Plaintiffs' negligent misrepresentation claim in Count X should be dismissed for all of the reasons described above.

### B.     There Is No Special Relationship Between FAGE and Plaintiffs

A required element for a negligent misrepresentation claim is that "the defendant had a duty, *as a result of a special relationship*, to give correct information." *EED Holdings v. Palmer*

17

*Johnson Acquisition Corp.,* 387 F. Supp. 2d 265, 280-81 (S.D.N.Y. 2004) (emphasis added). Under New York law, for example, a statement made in the context of an arms-length commercial transaction, without more, cannot give rise to a duty to provide correct information. *See Kimmell v. Schaefer,* 675 N.E.2d 450, 454 (N.Y. 1996) (arm's-length commercial transaction comprised of "casual statements and contacts" cannot give rise to a negligent misrepresentation claim); *see also Sheridan v. Trustees of Columbia Univ.,* 745 N.Y.S.2d 18, 19 (N.Y. App. Div. 2002) (negligent misrepresentation claim dismissed "since, at the time of the alleged misrepresentation, the parties were clearly acting at arm's length"). "Rather, an arm's-length commercial transaction can only give rise to a negligent misrepresentation claim if a special relationship exists between the parties . . . a special relationship can arise where the defendant either (1) possesses unique or specialized expertise or (2) occupies a special position of confidence and trust with the injured party." *EED Holdings*, 387 F. Supp. 2d at 281 (internal quotations omitted).

Here, Plaintiffs have not (and cannot) allege that a special relationship existed between FAGE and Plaintiffs under either of these two scenarios. Plaintiffs allege nothing beyond there being a "privity-like" relationship, so the negligent misrepresentation claim must be dismissed.

### C. Plaintiffs Have Failed to Allege Reliance

Under New York law "[i]t is well settled that '[a] claim for negligent misrepresentation requires the plaintiff to demonstrate . . . reasonable reliance." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011); *Savage v. Beiersdorf Inc.*, No. 13-CV-0696 (DLI) (LB), 2013 WL 5532756, at *4 (E.D.N.Y. Sept. 30, 2013) (dismissing negligent misrepresentation claim for lack of reliance, noting that "[e]ven if Plaintiff had properly pled causation, there are no allegations that Plaintiff relied on Defendant's marketing statements when using Defendant's product. In fact, it is unclear whether Plaintiff even read the marketing

statement[s] before using [defendant's product] that allegedly caused his [injuries].").  The other states are in accord.  *See, e.g., Hunt v. U.S. Tobacco Co.*, 538 F.3d 217 (3d Cir. 2008) (under Pennsylvania law, private consumer required to show "justifiable reliance"); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120 (N.D. Cal. 2014) (under California law, consumers had no standing because there was no reliance).

After omitting any reference to "reliance" altogether from the original Complaint, Plaintiffs have now added the bare-bones, conclusory allegation that Plaintiffs "reviewed" FAGE Total's labels and "reasonably relied" on them.  (Am. Compl. ¶ 6.)  It is obvious that Plaintiffs have simply added that formulaic recitation after reviewing FAGE's First Pre-Motion Letter, but revealingly, they offer no details about this purported reliance.  That is, Plaintiffs have still failed to allege that they examined "Total 0%" and believed that it meant zero calories, sugar, or carbohydrates, and in turn purchased FAGE Total yogurt products for that reason.  There is no reliance, rendering this claim deficient.

### D.      Count X Is Also Barred Under the Economic Loss Doctrine

Separately, Plaintiffs' negligent misrepresentation claim should be dismissed based on the economic loss doctrine.  The economic loss doctrine is a judicially created doctrine providing that "where plaintiffs allege primarily economic loss as an injury in a tort claim, the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie."  *BNP Paribas Mortg. Corp v. Bank of America, N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013) (internal citations omitted); *see also New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 768 (N.Y. 1995) ("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie.") (internal citations omitted).

In the present action, Plaintiffs allege throughout the Amended Complaint that the damage that they and the putative class members allegedly suffered is purely economic in nature and is limited to alleged "premium price" paid and out-of-pocket economic harm. Accordingly, Plaintiffs' claim for negligent misrepresentation (Count X) should be dismissed for failure to state a claim upon which relief can be granted.

## III. Plaintiffs' Unjust Enrichment Claim (Count XI) Fails as a Matter Of Law

Under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Rather, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* "An unjust enrichment claim is not available *where it simply duplicates, or replaces, a conventional contract or tort claim*." *Id.* (emphasis added); *see also Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012) (dismissing unjust enrichment claim where plaintiff "does not lack an adequate legal remedy."); *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (there is no unjust enrichment claim under California law). In fact, in *Goldemberg*, one of the primary cases on which Plaintiffs rely, the court dismissed the unjust enrichment claim because it "simply restates elements of other claims." *Goldemberg*, 8 F. Supp. 3d at 483-84.

Here, there can be no question that Plaintiffs' unjust enrichment is entirely duplicative of the other claims pled in this case and serves no independent purpose. Even if this claim could be pled for the time being in the alternative to Plaintiffs' other claims, it must still be dismissed because Plaintiffs have not pled facts sufficient to show that there was an equitable obligation running from FAGE to Plaintiffs, or that FAGE has in any way been unjustly enriched.

20

Accordingly, Plaintiffs' unjust enrichment claim should be dismissed for all of the reasons discussed above with respect to Plaintiffs' other claims.

## IV.     Plaintiffs Cannot Allege Negligent Misrepresentation and Unjust Enrichment Under the Laws of All 50 States and the District of Columbia

Alternatively, Plaintiffs also cannot bring claims of negligent misrepresentation and unjust enrichment under the laws of all 50 states and the District of Columbia, as there are no allegations showing any connection by each of the named Defendants to all of those states.  *In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Lit.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014). "Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state."  *Id.* (citing *Simington v. Lease Fin. Grp., LLC,* 10 CIV. 6052(KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Where plaintiffs themselves do not state a claim under their respective state's consumer statutes, however, they do not have standing to bring claims under other state statutes—even where they are named plaintiffs in a purported class action."); *Parks v. Dick's Sporting Goods, Inc.,* 05–CV–6590 (CJS), 2006 WL 1704477, at *2 (W.D.N.Y. June 15, 2006) ("the Court finds that the plaintiff .. lacks standing to assert state-law claims arising under the laws of states other than New York, since he was never employed by defendant anywhere other than New York.")).

There is good reason for this rule—Plaintiffs cannot plead claims under state laws for which there are absolutely no allegations connected to those states.  For this alternative reason, Counts X and XI are invalid as a matter of law.

## V.     Plaintiffs Have Not Stated Cognizable Claims Against FAGE Holdings and FAGE Greece

The instant action names three FAGE corporate entities as Defendants: (1) FAGE USA, the main U.S. operating entity responsible for the manufacture and sale of FAGE Total Greek

strained yogurt; (2) FAGE Holdings, a holding company for the stock of the FAGE U.S. subsidiaries; and (3) FAGE Greece, the corporate subsidiary responsible for operating in the country of Greece.  The Amended Complaint refers to all three Plaintiffs collectively using "group pleading," and such allegations fail to state a claim against FAGE Holdings or FAGE Greece.  *S.F. v. Archer-Daniels-Midland Co.*, No. 13–CV–634S, 2014 WL 1600414, at \*5 (W.D.N.Y. April 21, 2014); *Zalewski v. T.P. Builders, Inc.,* No. 1:10–CV–876 (GLS/RFT), 2011 WL 3328549, at \*5 (N.D.N.Y. Aug. 2, 2011) ("The court will not accept ... vague group pleading to serve as a basis for liability."); *Atuahene v. City of Hartford,* 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together … and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [Rule 8's] minimum standard.").

FAGE Greece has no direct relationship with FAGE USA and has no operations in the United States.[9]  Neither FAGE Holdings nor FAGE Greece have any responsibility for the manufacturing, marketing, promotion, or sale of FAGE Total yogurt.  No apparent reason exists, therefore, for naming FAGE Greece or FAGE Holdings as a defendant in this case—except for harassment.  Thus, the claims against FAGE USA and FAGE Holdings should be dismissed.

## VI.   Alternatively, This Court Should Transfer This Case to the Northern District of New York

One of the thirteen named Plaintiffs lives within the Eastern District of New York.  This same named plaintiff is the only one to have purportedly bought FAGE Total yogurt from stores in the Eastern District of New York.  The other twelve Named Plaintiffs are scattered around the United States.  They reside and allegedly bought FAGE Total yogurt in different states, cities,

---

[9]  Prior to a corporate restructuring beginning in 2012, FAGE Greece was the FAGE global corporate parent.  Since this restructuring, FAGE Greece has become a subsidiary of FAGE International S.A. and is responsible only for manufacture and sale of FAGE products in Greece.

and stores with zero connection to the Eastern District of New York.  This case is a classic example where transfer is proper to the Northern District of New York.

A.      **Legal Standard**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "[T]he purpose of [28 U.S.C. § 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 616, (1964).

A motion to transfer venue requires a two-part inquiry: "first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate." *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,* 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (internal citations omitted).  "In determining whether the interest of justice favors transfer, courts consider the following nine factors: "(1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the weight accorded to plaintiffs choice of forum, and (9) trial efficiency." *Id.*

B.      **An Action Could Have Been Brought in the Northern District of New York**

FAGE is headquartered in Johnstown, New York, where its factory is located that produces FAGE Total Greek strained yogurt for sale throughout the United States.  There is personal jurisdiction over FAGE and venue is proper in the Northern District of New York.  *See* 28 U.S.C. § 1391(b)(1) (venue proper where defendant resides).

23

**C.    The Interest of Justice Factors Favor Transfer to the Northern District of New York**

First, this case has little, if any, connection with the Eastern District of New York. Plaintiffs' choice of forum is afforded less weight in a putative class action with plaintiffs who are "scattered throughout the country" because "numerous potential plaintiffs … [can] make a showing that a particular forum is best suited for the adjudication of the class's claim." *Glass v. S & M NuTec. LLC*, 456 F. Supp. 2d 498, 504 (S.D.N.Y. 2006).  The Amended Complaint now includes named Plaintiffs from New York, New Jersey, Pennsylvania, Florida, California, Michigan, Georgia, and Texas.[10]  Only one of these thirteen plaintiffs resides within the Eastern District of New York; the other twelve are scattered around the United States.

Second, FAGE has its headquarters in Johnstown, New York, within the Northern District of New York.  That is where its factory produces FAGE Total yogurt for distribution and sale throughout the United States.  FAGE's documents and witnesses are located at FAGE's corporate headquarters and production facility in the Northern District of New York.  And the locus of operative facts (i.e., designing, creating, and printing FAGE Total Greek yogurt labels) is in the Northern District of New York.  *See, e.g., Beckerman v. Heiman*, No. 05 Civ. 5234 (BSJ) (GWG), 2006 WL 1663034, at *4-10 (S.D.N.Y. June 16, 2006) (transferring to Central District of California where the product was designed, labeled, and produced there and sold in

---

[10] For unstated reasons, the Amended Complaint identifies the class representatives from Georgia and Texas anonymously.  No valid justification could exist for why these class plaintiffs should not be named in the Amended Complaint.

New York, among many other places throughout the United States).[11]   For these reasons, the

Section 1404(a) factors support transfer to the Northern District of New York.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed in its

entirety pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, transferred to the Northern

District of New York pursuant to 28 U.S.C. § 1404(a).

Dated: November 12, 2014                Respectfully submitted,

                                        /s/Luke A. Connelly
                                        Luke A. Connelly
                                        200 Park Avenue
                                        New York, New York  10166
                                        Tel: (212) 294-6700
                                        Fax: (212) 294-4700
                                        lconnelly@winston.com

                                        Kimball R. Anderson (*pro hac vice*)
                                        Kevin P. McCormick (*pro hac vice*)
                                        Thomas G. Weber (*pro hac vice*)
                                        WINSTON & STRAWN LLP
                                        35 West Wacker Drive
                                        Chicago, IL 60601
                                        Tel: (312) 558-5600
                                        Fax: (312) 558-5700
                                        kanderson@winston.com
                                        kmccormick@winston.com
                                        tgweber@winston.com

                                        *Attorneys for Defendant*

---

[11] The factors of relative means and the forum's familiarity with the governing law are neutral factors.