**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**BARRY STOLTZ, ALLAN CHANG,**
**ROSALIE MAYES, REBECCA STARR,**
**TERESA M. COHEN, KENNETH LEIBOWITZ,**
**GILBERT MENDEZ, SHARON MANIER,**
**ANDREA NEAL, BRITTANEE JACKSON,**
**JAMES MANIER, JOHN DOE (GEORGIA),**
**and JANE DOE (TEXAS) on behalf**
**of themselves and others similarly situated,**

          **Plaintiffs,**                                              **Case No.:  14-cv-03826 (MKB)**


                    **v.**


**FAGE DAIRY PROCESSING INDUSTRY, S.A.,**
**FAGE USA DAIRY INDUSTRY, INC.,  and**
**FAGE USA HOLDINGS, INC.,**

          **Defendants.**

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

# TABLE OF AUTHORITIES

INTRODUCTION .................................................................................................. 1

LEGAL STANDARD ............................................................................................ 4

ARGUMENT ......................................................................................................... 5

    I. PLAINTIFFS' CONSUMER FRAUD AND DECEPTIVE TRADE
       PRACTICES CLAIMS ARE MORE THAN ADEQUATELY PLED ......................... 5

        A. Plaintiffs' First Amended Complaint States a Claim Under GBL § 349 ............ 5

        B. Dismissal is Not Proper Because Plaintiffs' Allegations Are Plausible ............. 6

        C. New York Law Supports Plaintiffs' Claims .................................................... 12

        D. Plaintiffs Sufficiently Allege That They Have Suffered an Injury and
           Paid a Premium Price for Defendants' Products ................................................. 16

        E. Plaintiffs Have Adequately Alleged Causation ................................................. 17

    II. PLAINTIFFS' NEGLIGENT MISREPRESENTAION CLAIM IS
        SUFFICIENTLY PLED ........................................................................................ 18

        A. Plaintiffs have Plausibly Pled Misrepresentation by Defendants ..................... 18

        B. There is a Special Relationship Between Defendants and Plaintiffs ................. 18

        C. Plaintiffs Have Adequately Alleged Reliance .................................................. 20

        D. Count X Is Not Barred Under Economic Loss Doctrine ................................... 21

    III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS SUFFICIENTLY PLED ....... 21

    IV. PLAINTIFFS CAN ALLEGE  NEGLIGENT MISREPRESENTATION AND
        UNJUST ENRICHMENT UNDER THE LAWS OF ALL 50 STATES AND
        THE DISTRICT OF COLUMBIA ....................................................................... 23

    V. PLAINTIFFS HAVE STATED COGNIZABLE CLAIMS AGAINST ALL
        DEFENDANTS .................................................................................................... 24

CONCLUSION.................................................................................................... 25

# TABLE OF CONTENTS

## FEDERAL CASES

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395(JG),
    2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................................... passim

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................... 4

*Bell Atl.Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 4, 5

*Ebin v. Kangadis*, 297 F.R.D. 561 (S.D.N.Y. 2014) ..................................................... 20

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    387 F. Supp. 2d 265 (S.D.N.Y. 2004) ...................................................................... 18, 19

*Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106 (2d Cir. 2010) ...................... 4

*Ferring B.V. v. Allergan, Inc.*, No. 12-2650,
    2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013) ............................................................. 23

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ............................................ 16

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) .................................... 16

*Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418,
    2013 WL 3192174 (S.D.N.Y. June 24, 2013) ................................................................ 4

*Henderson v. J.M. Smucker Co.*, No. 10-4524,
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ............................................................. 15

*Hitt v. Ariz. Beverage Co., LLC*, No. 08-cv-809,
    2009 WL 449190 (S.D. Cal. Feb. 4, 2009) ................................................................... 7

*Hughes v. Ester C Co.*, No. 12-0041,
    2013 WL 1080533 (E.D.N.Y. Mar. 15, 2013) ........................................................ 15, 21

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
    701 F. Supp. 2d 356 (E.D.N.Y. 2010) ........................................................................ 22

*In re Frito- Lay N.A. Inc. "All Natural" Litigation*, No. 12-MD-2413 (RRM) (RLM),
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ......................................................... 10, 15

*In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010) ......................... 21

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) .................... 13

*Jernow v. Wendy's Int'l, Inc.*, No. 07-CIV-3971 (LTS)(THK),
2007 WL 4116241 (S.D.N.Y. Nov. 15, 2007) ........................................................ 16, 17

*Kane v. Chobani, Inc.*, No. 12-CV-02425 (LHK),
2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ................................................................ 9

*Lam v. Gen. Mills, Inc.*, 859 F.Supp. 2d 1097 (N.D. Cal. 2012) ................................................ 9

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ....................... 13

*Lynch v. Tropicana Products, Inc.*, No. 11-07382,
2013 WL 2645050 (D.N.J. June 12, 2013) .......................................................... 15, 17

*Martorella v. Deutsche Bank Nat'l Trust Co.*, No. 12–80372–CIV,
2013 WL 1137514 (S.D. Fla. Mar. 18, 2013) ............................................................. 22

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ....................................... 5, 6, 12, 17

*Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) .................................................. 13

*Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.*,
33 Misc. 3d 1211(A) (N.Y. Sup. Ct. 2011) ................................................................ 23

*Schandler v. New York Life Ins. Co.*, No. 09-10463,
2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011) ............................................................. 23

*Smajlaj v. Campbell Soup Co.*, 782 F.Supp. 2d 84 (D.N.J. 2011) ................................................ 15

*St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010) ............................... 22

*Stewart v. Smart Balance, Inc.*, No. 11-6174 (JLL),
2012 WL 4168584 (D.N.J. June 26, 2012) .............................................................. 15

*Stoltz, et al. v. Chobani, LLC, et al.*,
No. 1:14-cv-03827-RRM-JO (E.D.N.Y. June 19, 2014) ............................................... 11

*United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704 (ERK),
2009 WL 1456582 (E.D.N.Y. May 22, 2009) ............................................................ 13

*United States v. Gonzalez-Alvarez*, 277 F.3d 73 (8th Cir. 2002) .............................................. 21

*Vicuna v. Alexia Foods, Inc.*, No. 11-CV-6119,
2012 WL 1497507 (N.D.Cal. Apr. 27, 2012) ............................................................. 10

*Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010) .......................... 7

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) ................................ 14, 17

*Williams v. Gerber Prods, Inc.*, 552 F.3d 934 (9th Cir. 2008) ............................................. passim

*Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 (SC),
    2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ...................................................... 9

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112 (E.D.N.Y. 2011) ........................................................ 4

*Yumul v. Smart Balance, Inc.*, 733 F.Supp. 2d 1117 (C.D. Cal. 2010) ........................................ 9

## STATE CASES

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006) ......................................... 12

*Cox v. Microsoft Corp.*, 10 Misc. 3d 1055A,
    809 N.Y.S.2d 480 (N.Y. Sup. Ct. 2005) ...................................................... 17

*Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E. 2d 1190,
    98 N.Y.2d 314 (2002) ........................................................................ 5

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ..................................................... 6, 21

*Niagara Mohawk Power Corp. v. Freed*, 265 A.D.2d 938 (N.Y. App. Div. 1999) .................... 22

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y. 2d 20 (1995) ........................................................................ 5

*Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89 (N.Y. App. Div. 2010) ........................... 22

*Randy Knitwear v. Am. Cyanamid Co.*, 11 N.Y.2d 5 (1962) ...................................................... 20

*Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288,
    758 N.Y.S. 2d 284 (1st Dept. 2003) ........................................................ 5

*US Bank Nat'l Assoc. v. Gestetner*, 103 A.D.3d 962 (N.Y. App. Div. 2013) ............................ 23

## RULES

Fed. R. Civ. P. 8 ................................................................................................................. passim

Fed. R. Civ. P. 9(b) .......................................................................................................... passim

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 4, 9

Fed. R. Civ. P. 15 ................................................................................................................. 24

## OTHER AUTHORITIES

Milosavljevic, M., Koch, C., Rangel, A. *Consumers Can Make Decisions in as Little as a Third of a Second.* JOURNAL OF SOCIETY FOR JUDGMENT AND DECISION MAKING  Vol. 6, No. 6, 520, 520-530 (2011) ............................................................. 3

## EXHIBITS

EXHIBIT A, Fage® Total 0% Yogurt Packaging

EXHIBIT B, Fage® Total 0% Products as Sold at Fairway Market

EXHIBIT C, Lactose-Free Yogurt Alternatives

EXHIBIT D, Nutrient Levels of Various Milk Products

EXHIBIT E, Fage® Advertisement on Defendants' Facebook Page

## <u>INTRODUCTION</u>

- A seventy year old grandmother shopping for groceries in preparation for a lavish family gathering sees Fage "Total 0%" yogurts prominently displayed in shopping aisles.   Thinking that her grandchildren will be overfed on less nutritious desserts, she decides to buy Fage® "Total 0%" yogurts as a healthy alternative for her grandchildren because she believes that the "Total 0%" means that there is no sugar.  It's amazing that something can taste so good without any sugar; but after all, in her lifetime, food scientists have been able to invent diet sodas, decaffeinated coffee and gluten free pasta.

- A harried homemaker shopping on a Saturday morning with her five year old son and three year old daughter is upset that, instead of looking after the children, her husband decides to sleep in.  With two rambunctious children in tow, she brings them to buy groceries.  Her children had been wanting to buy ice-cream, but seeing Fage® "Total 0%," she instinctively decides that the Fage is the healthy alternative because it has no calories.  If her children don't eat it, she would—after all, she has put on a few extra pounds during the holiday season.  Little does she know that Fage® yogurts have similar caloric content as ice cream.

- A health concious man is concerned why, even though he has been cutting down on his sugar intake, he continues to have head-aches, symptoms of undigested sugar in his system.  As he stacks more Fage® "Total 0%" yogurts in his shopping cart, he thinks of all the healthy adjustments he has made to his diet.  He is confused why he continues to feel sick.  As he reaches into his pants pocket, he realizes that he left his reading glasses in the car again.  He will read the minute fine print on the nutritional label another time.

- Fresh from yoga class, a young college co-ed grabs an armful of Fage® "Total 0%" yogurts as a protein replenisher.  She likes to have two before her workout and two after; she can indulge because the yogurts have no carbohydrates, sugars or calories.  Because of her heavy school schedule, she always shops quickly and, glancing at the prominent "Total 0%" label, she proceeds to the check-out counters.  A fleeting thought—people weren't kidding about the Freshman 15!  Since leaving home for college, she has continued to put on weight despite cutting down on sweets and pursuing healthier eating options like Fage® yogurts.

What each of the above individuals sees when they are shopping is the prominent "Total 0%"

label, which is the most eye-catching and prominent disclosure on the Fage® yogurt package.

See below and EXHIBIT A:

1



Like the seemingly perfect first date who does not "over share," upon whose coy and phlegmatic demeanor we can project our romantic ideals, consumers project all of their aspirations of health, fitnes and taste on the intentionally vague "Total 0% representation."  On the store shelves, the fleets of Fage yogurts are a multi-splendored kaleidescope of "Total 0%" to subconciously brainwash the unsuspecting public that this product has 0% of whatever the individual consumer hopes to avoid. See below and EXHIBIT B:



Against savvy Mad Men marketing, consumers have been brainwashed into thinking that smoking Marlboros make them cool (when it only really kills them), buying the world a Coke promotes global harmony (when it is an acid that rots their teeth), and diamonds are forever and men should spend two months' salary on an engagement ring (when diamond prices are artificially inflated by DeBeers and no more exclusive than semi-precious gemstones).  While in a free market economy, corporate conglomerates have the legal right to resort to any means necessary to improve their profits, a line has to be drawn when puffery and innovative marketing becomes outright fraud and deception.  Consumer purchasing decisions are made in as little as a third of a second.[1] The unsuspecting public are no match for the Don Drapers of Madison Avenue and should not bear the burden of deciphering the fine print on fraudulent marketing.

What is particularly outrageous is that Defendants only have to label the yogurts as "0% Fat" like every other fat-free dairy product (if that is in fat what the Total 0% is intended to mean).  Such change could be effected at no cost and would minimize consumer confusion.  Instead, Defendants insist on keeping their vague and misleading "Total 0%" label and continue to fight a long drawn out legal battle to enforce their right to mislead and deceive the unprotected public.  Defendants contend that consumers should read the fine print which would rectify any erroneous first impressions caused by the "Total 0%" label.  The notion that ingredients lists provide a shield for liability for other label deceptions has been dispelled in the federal courts. *See Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008). Moreover, rather than focusing on the duty of the unsuspecting consumer to be vigilant, the focus should be on what a reasonable company would do in order to avoid making misleading product labels.  While there will always be a slice of consumers who will read the fine print, there will also always be

---

[1] *See* Milosavljevic, M., Koch, C., Rangel, A. *Consumers Can Make Decisions in as Little as a Third of a Second*. JOURNAL OF SOCIETY FOR JUDGMENT AND DECISION MAKING  Vol. 6, No. 6, 520, 520-530 (2011).

consumers who do not, either because they are not educated, less vigilant or simply too trusting. A reasonable and socially responsible company would want the consuming public to know what is actually in its products, particularly since ingredients dramatically affect consumer health. On the contrary, Defendants continue to perpetuate against an unsuspecting public without any remorse their deceptive Total 0% label.

Against such unscrupulous corporate actors as Defendants, the Court is the last protection that consumers have. The Court must dismiss Defendants' motion to dismiss in its entirety.

## LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). "The question on a Rule 12(b)(6) motion is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (citations omitted). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)) (denying motion to dismiss GBL section 349 claim). To survive a motion to dismiss, a party need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, "[t]he plausibility standard is not akin to a 'probability requirement . . .'" *Iqbal*, 129 S. Ct. at 1946; *see also Bell Atl. Corp.*, 550 U.S. at 556 (internal quotation marks omitted) ("[A] well-pleaded complaint may proceed even

if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

The detailed facts alleged in the First Amended Complaint render Plaintiffs' claims more than plausible, and therefore, Defendants' motion to dismiss should be denied.

## ARGUMENT

## I. PLAINTIFFS' CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES CLAIMS ARE MORE THAN ADEQUATELY PLED

### A. Plaintiffs' First Amended Complaint States a Claim Under GBL § 349

Section 349 of the New York General Business Law prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). "The statute seeks to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E. 2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted). To state a claim pursuant to section 349, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y. 2d 20, 25 (1995). Whether a particular act or practice is deceptive is intensely-factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

Defendants' motion to dismiss Plaintiffs' GBL § 349 claims based on the grounds that the First Amended Complaint ("FAC") lacks detail regarding misleading or deceptive conduct by Defendants that resulted in injury to Plaintiffs, is without merit. The Second Circuit's decision in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), is on point here. In *McDonald's*, plaintiff claimed that McDonald's had violated GBL § 349, among other statutes, by falsely

5

representing that McDonald's food was "nutritionally beneficial and part of a healthy lifestyle if consumed daily" and that "McDonald's failed to adequately disclose that its use of certain additives and the manner of its food processing rendered certain of its foods substantially less healthy than represented." *Id.* at 512. The District Court dismissed plaintiff's claims, stating that the plaintiff had failed to state that he had suffered an actual injury cognizable under GBL §349. *See Id.* at 511-12.

The Second Circuit reversed, holding that the complaint stated a GBL § 349 claim. *See Id.* Specifically, the Second Circuit held that the lack of detail that the district court found to render the complaint insufficiently pled "is the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements." *Id.* Here, the FAC adequately alleges facts demonstrating that Defendants' labeling, marketing, and advertising of the Fage® Total 0% yogurts (the "Products") are deceptive, that Defendants' representations misled Plaintiffs, and the deceptive and unlawful conduct at issue caused Plaintiffs' alleged injuries. Following the logic of the Second Circuit's decision in *McDonald's*, the First Amended Complaint here states a claim under GBL §349.

### B. Dismissal is Not Proper Because Plaintiffs' Allegations Are Plausible

Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label…  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

In their motion, Defendants ignore this law and instead argue that their "Total 0%" claim so obviously refers to the fat content, that no reasonable consumer could be misled. (Def. Mem. at 8). Such matter is an issue of fact.  Courts have repeatedly held it improper to determine as a matter of law on a motion to dismiss the plausibilty of consumers' interpretations of food labeling. *See, e.g.*, *Ackerman*, No. CV-09-0395(JG)(RML), 2010 WL 2925955, at *17 (E.D.N.Y.

6

July 21, 2010) (quoting *Gerber*, 552 F.3d at 938) ("'[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss.'"). Even more to the point, numerous courts have found allegations that consumers were misled in connection with food products to be a sufficient basis for a cause of action.[2] The Merriam-Webster dictionary defines the word "total" as follows:

> 1: comprising or constituting a whole : entire <the total amount>
> 2: absolute, utter <a total failure> <a total stranger>
> 3: involving a complete and unified effort especially to achieve a desired effect <total war> <total theater>

http://www.merriam-webster.com/dictionary/total (as appeared on November 25, 2014).

Yet, Defendants urge the Court to find that the term "**Total 0%**" has a radically different meaning for consumers when it appears on their Product labels compared to its use in any other context. As clearly stated in the FAC, given that the "0%" is preceded by the word "Total," a reasonable consumer is likely to believe that the Products do not contain fat, sugar, sodium, cholesterol, carbohydrates, calories or any other item required to be disclosed on the Product packaging. *See* FAC ¶ 46. It is particularly difficult for consumers to reach Defendants' conclusion (that it only refers to fat content) given that there are multiple 0%'s on the "Nutrition Facts" label of the Products. *Id.* at ¶ 47. Further, Plaintiffs' First Amended Complaint provides Defendants' Blueberry yogurt as an example. The FAC explains that the Product has 0 calories from fat, 0 grams of trans fat, 0% saturated fat, 0% total fat, 0% fiber, 0% cholesterol, 0% vitamin A and 0% iron and without adding a qualifier to "Total 0%," Defendants are causing

---

[2] *See Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) ("[P]laintiffs allege that they were deceived by the labeling of defendant's drink products as 'All Natural'. . . [P]laintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's labeling."); *Hitt v. Ariz. Beverage Co., LLC*, No. 08–cv–809, 2009 WL 449190 (S.D. Cal. Feb. 4, 2009) (same).

consumers to have to guess what exactly the term refers to. *Id.* at ¶ 48. In their Motion, Defendants claim that reasonable consumers are not misled by the "Total 0%" on Fage® containers because of the "obvious signals on the container" that it refers to "non-fat" but fail to explain what the obvious signals are or how a reasonable consumer would even make that connection between the claims without any statement or symbol on the packaging linking them. Second, Defendants try to explain away their marketing ploy by claiming that the nutrition facts section on the back of Fage® Total 0% containers *prohibit as a matter of law* any claim that consumers could be misled. *See* Def. Mem. at 9. In other words, Defendants argue that they can disclaim what their Products promise on the front label by the ingredient list on the back. This Court should reject Defendants' argument as the Ninth Circuit has already done in *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008). In *Williams*, the putative class brought claims against a fruit juice manufacturer for misleadingly representing products as "fruit juice" containing "all natural ingredients" when the products contained predominantly corn syrup and sugar. *Williams*, 552 F.3d at 936  There, the defendant advanced an argument nearly identical to the one Defendants make here – i.e., that the nutrition panel clarified the front-label representations. Rejecting the argument, the Ninth Circuit held:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list to correct those misrepresentations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other represenation on the packaging.

*Williams*, 552 F.3d at 939.

A long line of cases agree, following *Williams* to deny food manufacturers immunity by fine-print "corrections." *See, e.g.*, *Lam v. Gen. Mills, Inc.*, 859 F.Supp. 2d 1097, 1105 (N.D. Cal. 2012) ("Likewise, here, the Fruit Snacks' ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging: that the Fruit Snacks are made with a particular type and quantity of fruit."); *Yumul v. Smart Balance, Inc.*, 733 F.Supp. 2d 1117, 1128 (C.D. Cal. 2010) ("where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation"); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586(SC), 2013 WL 1320468, at *13 (N.D. Cal. Apr. 1, 2013) ("Even though the nutrition box could resolve any ambiguity, the Court cannot conclude as a matter of law, in the context of a Rule 12(b)(6) motion, that no reasonable consumer would be deceived by the 'Made with ALL NATURAL Ingredients' labels."). Defendants' attempt to blame consumers for not reading their small print disclosures is unavailing because the overall impression created by the label and whether it is misleading and deceptive to a reasonable consumer is uniquely a matter of fact to be resolved by a jury.

Defendants rely on a handful of cases which stand for the unremarkable proposition that if the front-label representation is truthful, then liability will not lie. *See, e.g.*, *Kane v. Chobani, Inc.*, No. 12-CV-02425 (LHK), 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) (holding that the "all natural" representations were not false, despite the product containing "fruit or vegetable juice concentrate [for color]"). Here, however, Defendants do not attempt to argue that the "Total 0%" label is true as understood by Plaintiffs, only that no one could be misled or deceived by its meaning. Defendants may later wish to present evidence defending their

representations, but at this stage of the proceedings, the Court cannot conclude that, as a matter of law, a reasonable consumer would not be misled.

Next, Defendants allege that a reasonable consumer could not possibly interpret "Total 0%" to mean that the Products have no fat, carbohydrates, sugar or calories because unlike yogurt, only soft drinks could reasonably be expected to lack calories and because a reasonable consumer would recognize that Greek strained yogurt has lactose. *See* Def. Mem. at 11. As to the first claim, Defendants point out a distinction without difference. There are a myriad of food and beverage products with identical or nearly identical representations that have misled consumers. *See In re Frito- Lay N.A. Inc. "All Natural" Litigation*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) ("What a reasonable consumer would believe the term "natural" to mean on a food label cannot be resolved on [a] motion to dismiss]"); *Vicuna v. Alexia Foods, Inc.*, No. 11-CV-6119, 2012 WL 1497507 at *2 (N.D.Cal. Apr. 27, 2012) ("[T]he question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute."). While *In re Frito-Lay* addressed "all natural" claims on chips and *Alexia Foods* addressed "all natural" claims on frozen potato products, in both instances, the courts found the term "natural" to cause a factual dispute. Here, Plaintiffs have made the connection between Defendants' products and other products clear. As stated in the FAC, Plaintiffs and Class members have been exposed to numerous products which use a "0"/"Zero" marketing campaign to target health conscious consumers. *See* FAC at ¶ 42. These campaigns typically highlight that the products lack a substance that consumers would prefer to avoid such as added sugar, calories, or carbohydrates, among other things. *Id*. Perhaps most similar to Defendants' labeling is that of RedBull® "Total Zero" energy drink. RedBull® labels its product "Total Zero" to indicate to consumers that the product contains no calories or carbohydrates. *Id*.

10

Unable to escape these unassailable facts, Defendants argue that numerous dairy products are sold with the fat content displayed on the package and provide examples of other dairy products that utilize percentages. There are several flaws with Defendants' argument: (1) the examples provided by Defendants are not substantially similar to the Fage® Product label because none of the examples provided say "Total 0%," instead they display the "0%" in isolation; (2) the fact that some companies may use a 0% does not render its use non-misleading [3], (3) the photograph of the Products as shown on Page 1 of Defendants' Memorandum of Law is not an accurate representation of what a consumer walking through a store sees.  The three different products, placed side by side: Total, Total 0% and Total 2%, in the photograph would appear to lend context, but in fact is confusing.  A consumer looking at the Total label in isolation would not have any idea what it means, nor would a person who looks at Total 0% know what that means either.  Moreover in actual store shelves, each of the products are often sold in isloation and consumers buying Total 0% would not necessarily see any of the other types for comparative purposes.  *See* EXHIBIT B.

The second assumption made by Defendants is that the only yogurt products reasonable consumers are familiar with are dairy-based. Given numerous consumers' desire for healthy alternatives, some companies have begun to sell yogurts without lactose. *See* EXHIBIT C. As such, it is quite reasonable for a consumer to believe that a yogurt product does not contain lactose sugar or any other types of sugar.  Before the invention of artificial sweeteners, it would have been unthinkable for consumers that a product that tasted sweet did not have sugars or calories, such as diet soda.  Consumers trust that food companies can consistently invent new healthier alternatives.  Contrary to what Defendants claim, there are numerous dairy products

---

[3] Chobani is currently being sued for similarly misleading marketing. *See Stoltz, et al. v. Chobani, LLC, et al.*, No. 1:14-cv-03827-RRM-JO (E.D.N.Y. June 19, 2014).

that have 0% cholesterol, 0% carbohydrates, and 0 grams of sugar. *See* EXHIBIT D for a comparison of nutrient levels in various milk products.   As such, it is very reasonable for a consumer to see Total 0% and believe that it contained no sugar, carbohydrates, calories or anything else that may be perceived as unhealthy.

Innovation in food technology over the past several years is not limited to milk products. The demand for alternative food options has also resulted in a notable increase in the sale of gluten-free and vegan goods. Even five years ago, who would have believed that pasta could be made without gluten?  Advances in food innovation in already-existing products could certainly cause a reasonable consumer to believe that it is possible for a product to lack calories or sugar or fat or carbohydrates.

The reasonable consumer standard is not the expert standard. A "reasonable consumer" is "the ordinary consumer acting reasonably under the circumstances" and "is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006). Reasonable consumers are not food chemistry experts having specific knowledge of Defendants' production technologies.

### C. New York Law Supports Plaintiffs' Claims

Complaints for violation of GBL section 349 are subject to the notice pleading standards of Federal Rule of Civil Procedure 8(a)(2). *See Pelman*, 396 F.3d at 511 (Section 349 claims "need only meet the bare-bones notice-pleading requirements of Rule 8(a)"). Faced with Plaintiffs' detailed and highly credible allegations, Defendants argue that the Court should ignore the named Plaintiffs' own experiences in purchasing Defendants' Products. Not only have Plaintiffs satisfied Rule 8(a)'s requirements but they have also satisfied Rule 9(b)'s heightened requirements by adequately pleading the who, what, when, where, and how of the alleged

deceptive conduct.[4] The allegations in the FAC provide "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted); *see also United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

| | |
|---|---|
| **Who:** | The FAC specifically identifies Defendants as the entities who manufactured, distributed, advertised, marketed, and sold the Products under the "Total 0%" product line. (FAC at ¶ 32). |
| **What:** | The FAC identifies and describes the Products. (FAC at ¶¶ 2, 30). Plaintiffs allege (i) the Products' name (*i.e.*, Fage® Total 0% Greek Yogurt) is prominently displayed on the top and front of the Product packaging and (ii) the representation, namely that Defendants deceptively advertise and market their Products using the term "Total 0%," a term that is false and misleading given its vagueness. (FAC at ¶¶ 2, 35-36). |
| **Where:** | The FAC explains that Defendants made the misleading claim directly on the Product packaging. (FAC at ¶ 3). Moreover, the FAC identifies exactly where each of the named Plaintiffs purchased the Products. (FAC at ¶¶ 17-27). |
| **When:** | Plaintiffs allege when they purchased the Products. (FAC at ¶¶ 17-27). Moreover, the FAC identifies exactly where each of the named Plaintiffs purchased the Products. (FAC at ¶¶ 17-27). Plaintiffs allege that they were exposed to Defendants' misrepresentations prior to purchase and relied on them. (FAC at ¶ 67). |
| **How**: | The FAC explains how Defendants' labeling is false and misleading. Defendants intend to create consumer confusion by causing consumers to impute any meaning to the 0%, including but not limited to the representation that the Products lack sugar, carbohydrates, calories, etc. As |

---

[4] *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("As to particularity, the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the repect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *See also Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979) (stating that in the Second Circuit, even for the claims where Rule 9(b) applies, the rule's requirements must be read in conjunction with and "harmonized with the general directives . . . of Rule 8 that the pleadings should contain a 'short and plain' statement of the claim or defense and with each averment should be 'simple, concise and direct.'").

such, the labeling of "Total 0%" on the packaging, without additional immediate context, is false and misleading. (FAC at ¶ 36). Defendants purposely mislead the public because they willfully want the public to think the 0% means no sugar, calories or carbohydrates when consumers are shopping in supermarket aisles and only see the 0%, and not the fine print that shows how unhealthy and full of sugar the Products are. (*Id.*). Defendants use the term "Total 0%" on their Product packaging to make their Products appear healthier than other products and to increase sales and charge a premium. (*Id.* at ¶ 37).

Thus, Defendants' argument that Plaintiffs' claims are not sufficiently pled is baseless. The allegations in the FAC are more than sufficient to state a plausible GBL section 349 claim arising out of the affirmative misrepresentation on Defendants' Product packaging. *See Ackerman*, 2010 WL 2925955, at *17; *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405-406 (E.D.N.Y. 2010) (denying motion to dismiss GBL section 349 claims where consumer alleged misleading product packaging). In a desperate attempt to steer the Court away from this District's clear position on §349 claims where misleading product packaging is alleged, Defendants argue that *Ackerman* is distinguishable from this case in the *number* of misleading statements addressed there despite the court in *Ackerman* giving no indication that the *number* as opposed to *nature and quality* of the misrepresentations factored into its decision. (*See* Def. Mem. at 13).

In *Ackerman*, the court declined to rule as a matter of law, that no reasonable consumer would be misled into believing that the beverage "vitamin water" contained only vitamins and water and that it was a "product that may help maintain healthy dietary practices." *Ackerman*, 2010 WL 2925955, at *15. The vitamin water ingredient list included ingredients other than vitamins and water and indicated the sugar content of the beverage. *Id.* at *16. Just as the court in *Ackerman* reasoned that the information contained on vitamin water's ingredients label, "though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could

14

be misled by vitamin water's labeling and marketing," this Court should not conclude that Defendants' "Total 0%" label meets the heavy burden of "extinguish[ing] the possibility" that Plaintiffs were, and a reasonable consumer could be, misled regarding the nutrient content and health benefits of Defendants' Products. *Id.*; *see also Frito-Lay*, 2013 WL 4647512, at *15.

Defendants summarily declare that the nutritional facts section of their Product labels "prohibit as a matter of law any claim that consumers could be misled." (Def. Mem. at 9). However, it is well-settled that small print and back-of-the-label disclosures do not insulate defendants from liability stemming from otherwise misleading affirmative statements because reasonable consumers should not be expected to scour a label to be sure prominent representations are not false. *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *16 ("The fact that the actual sugar content of vitamin water was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled.").[5]

The large bold "Total 0%" prominently displayed on the front of Defendants' Products, as displayed on supermarket shelves, is a hypnotic kaleidoscope of colors promising a siren's song of healthy eating. Given that purchasing decisions are instinctive, allowing Defendants free rein to post cryptic 0% labels without sufficient context is misleading. At the least, how a reasonable consumer would interpret Defendants' Product packaging is an issue of fact more appropriately decided by a jury based on expert surveys and consumer reactions to Fage's deceptive labeling. While Defendants will have ample opportunity to investigate the plausibility

---

[5] *Hughes v. Ester C Co.*, No. 12-0041, 2013 WL 1080533, at *17 (E.D.N.Y. Mar. 15, 2013) ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). *See also Lynch v. Tropicana Products, Inc.*, No. 11-07382, 2013 WL 2645050 at *7 (D.N.J. June 12, 2013) (same); *Henderson v. J.M. Smucker Co.*, No. 10-4524, 2011 WL 1050637 at *4 (C.D. Cal. Mar. 17, 2011) (same); *Stewart v. Smart Balance, Inc.*, No. 11-6174(JLL), 2012 WL 4168584, at *9 (D.N.J. June 26, 2012) (quoting *Smajlaj v. Campbell Soup Co.*, 782 F.Supp. 2d 84 at 98 (D.N.J. 2011) ("[T]he fact that the labels were literally true does not mean that they cannot be misleading to the average consumer").

of Plaintiffs' claims during discovery, at this stage of the proceedings, Plaintiffs' claims must be allowed to proceed.

Defendants' citation to *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) is inapposite, if not outright misleading. In *Fink*, the court simply held that where "the allegations of the Complaint are materially inconsistent with the sole advertisement" at issue, the plaintiffs' claims "lack the facial plausibility necessary to survive a motion to dismiss." *Fink*, 714 F.3d at 742. There, the plaintiff alleged misrepresentations that were not in fact present in the advertisement in question. *Fink*, 714 F.3d at 742.

### D. Plaintiffs Sufficiently Allege That They Have Suffered an Injury and Paid a Premium Price for Defendants' Products

Defendants claim Plaintiffs' allegations are insufficient to allege injury under New York law. Simply put, Defendants are wrong. The FAC alleges quite extensively that Plaintiffs paid a premium price for Defendants' Products. FAC at ¶¶ 6, 17-29, 53, 58. This is sufficient under New York's consumer protection law. *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *23 (citation omitted) (Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations."); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 483 (C.D. Cal. 2012) (where consumers allege they paid a premium for a product based on marketing representations, they have adequately alleged injury under New York consumer protection law).

In *Jernow v. Wendy's Int'l, Inc.*, No. 07-CIV-3971 (LTS)(THK), 2007 WL 4116241, at *8 (S.D.N.Y. Nov. 15, 2007), the plaintiffs claimed that Wendy's deceived consumers regarding the content of its food by misrepresenting the amount of trans-fat in its food. *Jernow*, 2007 WL 4116241, at *3-5. The plaintiffs alleged that Wendy's was able to charge a premium based upon these misrepresentations. *Id*. Defendant Wendy's argued this was insufficient to claim injury

under GBL § 349. The court rejected the argument and denied the motion to dismiss. *Id.* ("Under New York law, a premium could constitute an actual injury compensable under Section 349").[6]

Defendants are unable to cite to a single case to support their argument that Plaintiffs' price premium allegations are insufficient. Defendants simply argue without support that the FAC's well-pled allegations of a price premium are implausible because it merely compares the price of Defendants' Products with less expensive yogurt products. Not only do Plaintiffs' detailed allegations with regard to price premium compare Defendants' Products to substantially similar products but far exceed the requirements of Rule 8(a), Fed. R. Civ. P. *See* FAC ¶¶ 58-60. In addition, Defendants' argument flies in the face of the well-settled rule to the contrary.[7] The existence of the price premium will be established through expert testimony, not on a motion to dismiss, and allegations far less detailed than those in the FAC regularly survive a motion to dismiss. *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *23; *Jernow*, 2007 WL 4116241, at *8; *Lynch v. Tropicana Products, Inc*, 2013 WL 2645050, at *7. Moreover, Plaintiffs need not prove the exact price premium because under GBL § 349(h), they may recover a minimum of $50.00 (and prevail on an injunction) if they were injured by Defendants' violation of the statute.

### E. Plaintiffs Have Adequately Alleged Causation

Plaintiffs' allegations that they would not have purchased Defendants' Products had they been accurately labeled and that they paid a price premium because of the misleading Total 0% claim are both sufficient to plead causation. *See* FAC ¶¶ 6, 71; *see, e.g.*, *Waldman*, 714 F. Supp.

---

[6] *See also Cox v. Microsoft Corp.*, 10 Misc. 3d 1055A, 809 N.Y.S.2d 480 (N.Y. Sup. Ct. 2005) (sufficient allegations of actual injury where plaintiffs alleged that Microsoft was able to charge inflated prices for its products as a result of its deceptive actions).

[7] *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (holding that "an action under §349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice pleading requirements of Rule 8(a), Fed. R. Civ. P."). Moreover, the District of New Jersey held last year that identical allegations of a price premium stated a claim under New York law and also satisfied the heightened pleading requirements of Rule 9(b) under New Jersey law. *See Lynch v. Tropicana Products, Inc.*, No. 11-07382, 2013 WL 2645050 (D.N.J. June 12, 2013).

2d at 406. As such, Plaintiffs have adequately pled causation. Moreover, the FAC, clearly states

as follows:

> Due to Defendants' failure to explicitly state what the "0%" on the front and top
> labels of their Products (as defined in Paragraph 30), Plaintiffs and Class
> members imputed several meanings to the representation including that the
> Products lacked sugar, calories, carbohydrates and/or fat. Plaintiffs and Class
> members were exposed to these misrepresentations prior to purchase and relied on
> them. As a result of such reliance, Plaintiffs and Class members thought that the
> Products were preferable to other similar products lacking such false and
> misleading statements. Plaintiffs and Class members would not have bought the
> purchased products had they not been misled by the "0%" representation into
> believing that the Products were healthier than they were.

FAC ¶ 67.

The statements above cannot credibly be deemed conclusory or be said to fail to draw the

connection between Defendants' label representation, Plaintiffs' reasonable interpretation and

ultimate purchasing decision.

## II. PLAINTIFFS' NEGLIGENT MISREPRESENTAION CLAIM IS   SUFFICIENTLY PLED

### A. Plaintiffs have Plausibly Pled Misrepresentation by Defendants

On the factual issues of plausibly pled negligent misrepresenations, Plaintiffs allege in

detail that:

> Defendants conspicuously display the term "Total 0%" without specification as to
> what 0% refers to. The labeling is deceptive and misleading because a reasonable
> consumer looking at the label is likely to believe that the Products contain 0
> calories or 0% of a daily value for sugar, rather than fat, as is the case with the
> Products. (FAC ¶ 189).

### B. There is a Special Relationship Between Defendants and Plaintiffs

A required element for a negligent misrepresentation claim is that "the defendant had a

duty, as a result of a special relationship, to give correct information." *EED Holdings v. Palmer

Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 280-81 (S.D.N.Y. 2004). However, an arm's-

length commercial transaction can give rise to a negligent misrepresentation claim if a special relationship exists between the parties . . . a special relationship can arise where the defendant either (1) possesses unique or specialized expertise or (2) occupies a special position of confidence and trust with the injured party." *EED Holdings*, 387 F. Supp. 2d at 281 (internal quotation marks omitted).

Here, Defendants do not just passively sell food products by way of retailers and distributors. Given the pivotal role of social media in the marketing of products, Defendants here actively encourage consumers to rely on Defendants' reputation and skill in warranting the quality of the Products. As stated in the FAC, in furtherance of their efforts to deceive consumers as to the contents of their Products, Defendants posted an image on their Facebook page along with the following message: "Tip the scales in your favor with FAGE® Total 0%." FAC ¶ at 52, *see also*, EXHIBIT E.

The statement above and accompanying image in EXHIBIT E mislead consumers into believing that Defendants' Products are healthier than other products. The Products do not "tip the scales" in the consumers' favor as Defendants claim. The Products will not cause consumers to lose weight given that they are high in sugar and caloric content. Had Plaintiffs known that the representations they relied on herein were false, misleading, deceptive and unfair, they would not have purchased the Products nor paid the premium price Defendants charged and continue to charge for them. FAC ¶ at 53. As shown above, Defendants sought to get Plaintiffs to rely on their unique and specialized knowledge of the Products and their purported effect on health. The fact that Defendants used a scale, a well known symbol of justice, underscores their intent to lure consumers to trust their Product claims. As such, a special relationship existed between the parties.

Recently, in the case *Ebin v. Kangadis*, 297 F.R.D. 561 (S.D.N.Y. 2014), olive oil buyers brought a putative class action against a seller, alleging, inter alia, fraud and negligent misrepresentation under New York and New Jersey law based on the seller marketing pomace oil as "100% Pure Olive Oil." Not only did the plaintiffs' negligent misrepresentation claim survive a motion to dismiss, but the court granted plaintiffs' motion for class certification. *Id.* at 570.

In the landmark case of *Randy Knitwear v. Am. Cyanamid Co.*, the New York Court of Appeals held a manufacturer of a fabric liable for misrepresentations "on its own labels and tags which accompanied the fabrics purchased by the plaintiff" despite a lack of privity between the parties. *Randy Knitwear v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 14 (1962). The court explained the rational for abolishing the age-old privity requirement:

> The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising ... Under these circumstances, it is highly unrealistic to limit a purchaser's protection to warranties made directly to him by his immediate seller. The protection he really needs is against the manufacturer whose published representations caused him to make the purchase.

*Id.* at 12-13.

### C. Plaintiffs Have Adequately Alleged Reliance

As described in detail above in connection with Plaintiffs' consumer fraud claims, Plaintiffs have sufficiently alleged reliance on Defendants' negligent misrepresentations. Plaintiffs have alleged that they relied upon Defendants' false misrepresentations when purchasing the Products, which reliance was justified and reasonably foreseeable. *See* FAC at ¶ 196. As a result of such reliance, Plaintiffs and Class members thought that the Products were preferable to other similar products lacking such false and misleading statements. Plaintiffs and Class members would not have bought the purchased products had they not been misled by the "0%" representation into believing that the Products were healthier than they were. *See* FAC at ¶ 67.

### D. Count X Is Not Barred Under Economic Loss Doctrine

Courts have repeatedly held that misbranded and adulterated food and drugs have no economic value, and are legally worthless. *United States v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (8th Cir. 2002) ("where a product [milk] cannot be sold lawfully it has a value of zero for the purpose of calculating loss"); *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 at 157 (2010) (reasonable person would not purchase a product that could not be legally sold or possessed).

Defendants ignore case law concerning allegations of "loss of money or property" and "injury in fact" in labeling cases. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source . . ." *Kwikset*, 51 Cal. 4th at 328. Plaintiffs here did not receive what Defendants said they were purchasing. Under *Kwikset*, nothing more is required to allege "loss of money or property" and "injury in fact." Plaintiffs have adequately alleged injury because of the purchase of Defendants' misbranded Products.

## III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS SUFFICIENTLY PLED

To prevail on a claim for unjust enrichment in New York, a plaintiff need only plead that (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution. *Hughes v. Ester C Co.*, No. 12-0041, 2013 WL 1080533, at *24 (E.D.N.Y. Mar. 15, 2013). The FAC easily establishes these elements by alleging (1) that Defendants received certain monies as a result of the uniform deceptive marketing of their Products; (2) Plaintiffs and the Class conferred a benefit on Defendants through purchasing their Products displaying a "0%"

on the top and front label Product packaging; and (3) Defendants have knowledge of this benefit, have voluntarily accepted and retained the benefits conferred on it and will be unjustly enriched if they are allowed to retain such funds. FAC ¶¶ 202-205. Thus, Plaintiffs have stated a claim for unjust enrichment.[8]

New York courts recognize that unjust enrichment claims are quite versatile – they may be pled in the alternative, and they are not mutually exclusive with other types of claims. *See* Fed. R. Civ. P. 8(a)(3) ("[A] demand for the relief sought, which may include relief in the alternative or different types of relief."); s*ee also, e.g.*, *Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100 (N.Y. App. Div. 2010); *Niagara Mohawk Power Corp. v. Freed*, 265 A.D.2d 938, 939 (N.Y. App. Div. 1999). Sustaining a nearly identical claim for unjust enrichment, the court in *In re Bayer Corp. Combination Aspirin* stated:

> [P]lantiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentaions, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim for unjust enrichment.

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F. Supp. 2d 356, 384 (E.D.N.Y. 2010).

Defendants argue that Plaintiffs' unjust enrichment claim is either duplicative of their GBL § 349 claims or fail for the same reasons as the GBL § 349 claim. Plaintiffs are entitled, under Rule 8(d), to plead unjust enrichment as an alternative theory of liability. *See St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d. at 183-84.[9] Moreover, Defendants ignore that

---

[8] *See St. John's Univ. v. Bolton*, 757 F. Supp. 2d. 144, 183 (E.D.N.Y. 2010) ("[D]ismissal of plaintiff's alternative theory of unjust enrichment on motion to dismiss would violate the liberal policy of Rule 8.").
[9] *See also Martorella v. Deutsche Bank Nat'l Trust Co.*, No. 12–80372–CIV, 2013 WL 1137514, at *8 (S.D. Fla. Mar. 18, 2013) (internal quotation marks omitted) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief.").

Plaintiffs may recover for more than just the premium paid under a theory of unjust enrichment, and as such, the claim cannot be viewed as duplicative. In addition, the statute of limitations period for an unjust enrichment claim is longer than for a GBL § 349 claim. *See, e.g.*, *Ferring B.V. v. Allergan, Inc.*, No. 12-2650, 2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013) ("The limitations period for unjust enrichment claims is six years").[10]

If Defendants' conduct was and is indeed misleading and deceptive, the unjust enrichment claim is not duplicative, as it allows for alternative relief as compared to GBL § 349. Because the adequacy of Plaintiffs' remedies at law are still in dispute, it is premature to dismiss Plaintiffs' request for equitable relief at this time, and in any event, the issue is one of fact that is not proper for resolution at this stage of the litigation.

## IV. PLAINTIFFS CAN ALLEGE NEGLIGENT MISREPRESENTATION AND UNJUST ENRICHMENT UNDER THE LAWS OF ALL 50 STATES AND THE DISTRICT OF COLUMBIA

Defendants contend that Plaintiffs cannot bring claims of negligent misrepresentaion and unjust enrichment under the laws of all 50 states and the District of Columbia because there are no allegations showing the connection by Defendants to all of those states. Def. Mem. 21. However, the FAC states as follows:

> Defendants operate as a single integrated and common enterprise. **Together, Defendants manufactured, distributed, advertised, marketed, and sold the**

---

[10] In *US Bank Nat'l Assoc. v. Gestetner*, 103 A.D.3d 962 (N.Y. App. Div. 2013), the complaint sounded in tort, with the plaintiff alleging both fraud and conspiracy claims along with his unjust enrichment claim. Nonetheless, the Appellate Division, Third Department, held that "[t]he limitations period for unjust enrichment claims is six years." *Id.* at 963. Similarly, in *Schandler v. New York Life Ins. Co.*, No. 09-10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011), the plaintiff asserted claims seeking monetary relief including "violation of N.Y. General Business Law, fraudulent misrepresentations, [and] fraudulent concealment," and the court held that the "statute of limitations in New York for a claim of unjust enrichment is six years." *Id.* Likewise, in *Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.*, 33 Misc. 3d 1211(A) (N.Y. Sup. Ct. 2011), an action "to recover monetary damages" that included causes of action for negligence and fraud, the New York Supreme Court held that "the statute of limitations for a cause of action for unjust enrichment is six years."

> **Products under the "Total 0%" product line to hundreds of thousands of consumers nationwide**. (FAC ¶ 32).
>
> As part of their extensive and comprehensive **nationwide** marketing campaign, Defendants actively promote the naturalness and health benefits of their Products and mislead consumers about their yogurt ingredients through the Product packaging, the website www.usa.fage.eu and social media outlets such as Facebook and Twitter. (FAC ¶ 3).
>
> While simultaneously marketing their Products as a healthy alternative, Defendants deceived Plaintiffs and other consumers **nationwide** by mischaracterizing the contents comprising their Products. (FAC ¶ 11).

Given the FAC's allegations regarding Defendants' clear connection to each of the 50 states and the District of Columbia, Defendants' claim that Plaintiffs cannot plead claims of negligent misrepresentation and unjust enrichment are unfounded. Defendants have sufficient minimum contacts with all 50 states and the District of Columbia and/or otherwise have intentionally availed themselves of their markets throughout the United States.

## V. PLAINTIFFS HAVE STATED COGNIZABLE CLAIMS AGAINST ALL DEFENDANTS

Defendants' claim that FAGE USA Holdings, Inc. and FAGE Dairy Processing Industry, S.A. should be dismissed at this stage, is without merit given that the FAC alleges that Defendants operate as a single integrated and common enterprise. *See* FAC at ¶ 32. Moreover, Defendants themselves failed to distinguish between the three corporate entities or to indicate which they loosely referred to as "FAGE" throughout Defendants' Memorandum in Support of Defendants' Motion to Dismiss.[11]

---

[11] If upon discovery, Plaintiffs find that any of the corporate entities has no direct relationship to operations relating to the Products at issue, Plaintiffs do not oppose dismissal of the claims against those particular corporate entities.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.[12]

Dated: December 15, 2014

                                        Respectfully submitted,

                                        **LEE LITIGATION GROUP, PLLC**

                                        /s/ C.K. Lee_____

                                        C.K. Lee (CL 4086)
                                        30 East 39th Street, Second Floor
                                        New York, NY 10016
                                        Tel.: 212-465-1188
                                        Fax: 212-465-1181
                                        *Attorneys for Plaintiffs and the Class*

---

[12] If the Court does not deny Defendant's Motion in its entirety, Plaintiffs hereby respectfully request leave to amend the First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").