UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

BARRY STOLTZ, ALLAN CHANG, ROSALIE
MAYES, REBECCA STARR, TERESA M.
COHEN, KENNETH LEIBOWITZ, GILBERT
MENDEZ, SHARON MANIER, ANDREA NEAL,
BRITTANEE JACKSON, JAMES MANIER,
JOHN DOE (GEORGIA), and JANE DOE
(TEXAS) on behalf of themselves and others
similarly situated,

                Plaintiffs,

       v.

FAGE DAIRY PROCESSING INDUSTRY, S.A.,
FAGE USA DAIRY INDUSTRY, INC., and FAGE
USA HOLDINGS, INC.,

                Defendants.

**MEMORANDUM & ORDER**
14-CV-3826 (MKB)

------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    On September 15, 2014, Plaintiffs in the above-captioned putative class action filed an

Amended Complaint[1] against Defendants Fage Dairy Processing, S.A., Fage USA Dairy

Industry, Inc. and Fage USA Holdings, Inc. alleging: (1) deceptive acts or practices in violation

of the New York General Business Law, N.Y. Gen. Bus. Law § 349; (2) violations of the New

Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; (3) violations of the Pennsylvania

Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.*;

---

    [1] Plaintiffs Barry Stoltz and Allan Chang commenced this action on June 19, 2014 on
behalf of themselves and all others similarly situated. (Compl., Docket Entry No. 1.) On August
11, 2014, Defendants requested a pre-motion conference to move to dismiss Plaintiffs' claims.
(Docket Entry No. 9.) The parties subsequently agreed that Plaintiffs would file an amended
complaint, which Plaintiffs did on September 15, 2014. (Pls. Letter in Resp. to Defs. Pre-Mot.
Conference Req., Aug. 13, 2014, Docket Entry No. 10; Am. Compl., Docket Entry No. 13.)

(4) unlawful business acts and practices in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.; (5) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.; (6) violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq*.; (7) violations of the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq*.; (8) violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq*.; (9) negligent misrepresentation under the laws of all fifty states and the District of Columbia; and (10) unjust enrichment under the laws of all fifty states and the District of Columbia. Plaintiffs seek injunctive relief and monetary damages.

Defendants move to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue to the Northern District of New York pursuant to 28 U.S.C. § 1404(a). By the same motion, Defendants also move to dismiss all claims against Fage Dairy Processing, S.A. and Fage USA Holdings, Inc. for failure to state a claim pursuant to Rule 12(b)(6). For the reasons set forth below, the Court denies Defendants' motion to transfer venue to the Northern District of New York without prejudice to renew and grants in part and denies in part Defendants' motion to dismiss. The Court *sua sponte* dismisses Plaintiffs' claims on behalf of John Doe and Jane Doe as class representatives for Georgia and Texas, respectively. The Court grants Defendants' motion to dismiss: (1) Plaintiffs' negligent misrepresentation and unjust enrichment claims under the laws of the District of Columbia and all states other than New York, New Jersey, Pennsylvania, California, Florida and Michigan; (2) Plaintiffs' negligent misrepresentation claim

under New York law;[2] (3) Plaintiffs' unjust enrichment claim under New York law;[3] and (4) the Amended Complaint as against Defendants Fage Dairy Processing, S.A. and Fage USA Holdings, Inc. The Court denies Defendants' motion to dismiss: (1) Plaintiffs' consumer protection claims under New York, New Jersey, Pennsylvania, California, Florida and Michigan state laws; and (2) Plaintiffs' unjust enrichment claims under Florida and California law. Plaintiffs are granted thirty (30) days' leave to file a second amended complaint as specified in this Memorandum and Order.

## I. Background

### a. Procedural background

On June 19, 2014, Plaintiffs Barry Stoltz and Allan Chang commenced this putative class action, on behalf of themselves and all others similarly situated, against Defendants Fage Dairy Processing, S.A., Fage USA Dairy Industry, Inc. and Fage USA Holdings, Inc. based on Defendants' marketing and packaging of their "Total 0%" line of Greek yogurt products. (Compl. ¶¶ 1–7, Docket Entry No. 1.) Plaintiffs alleged claims of: deceptive acts or practices in the conduct of business, trade or commerce under the New York General Business Law section 349; negligent misrepresentation under the laws of all fifty states and the District of Columbia; breach of express warranties under the laws of all fifty states and the District of Columbia; and unjust enrichment under the laws of all fifty states and the District of Columbia. (*Id.* ¶¶ 50–78.) Plaintiffs also sought an order certifying a nationwide class pursuant to Rule 23 of the Federal

---

[2] As discussed below, *infra* Section III(b), the Court construes Defendants' motion as challenging only Plaintiffs' negligent misrepresentation claim under New York law.

[3] As discussed below, *infra* Section III(e), the Court construes Defendants' motion as challenging only Plaintiffs' unjust enrichment claims under New York, Florida and California laws.

Rules of Civil Procedure and naming Stoltz and Chang as representatives of the class and their attorneys as class counsel. (*Id.* ¶¶ 28–29.)

On September 15, 2014, Plaintiffs Stoltz, Chang, Rosalie Mayes, Rebecca Starr, Teresa M. Cohen, Kenneth Leibowitz, Gilbert Mendez, Sharon Manier, Andrea Neal, Brittanee Jackson, James Manier, John Doe (Georgia) and Jane Doe (Texas) filed an Amended Class Action Complaint on behalf of themselves and all others similarly situated ("Amended Complaint"). (Am. Compl.) The Amended Complaint asserts claims of: (1) deceptive acts or practices in the conduct of business, trade or commerce under the New York General Business Law, N.Y. Gen. Bus. Law § 349, seeking (a) injunctive relief, costs and attorneys' fees and (b) monetary damages; (2) unlawful practices in connection with the sale or advertisement of merchandise under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq*., seeking damages; (3) unfair methods of competition and unfair or deceptive acts or practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq*., seeking compensatory and punitive damages and attorneys' fees; (4) unfair methods of competition and unfair or fraudulent acts or practices under the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*., seeking injunctive relief, compensatory and punitive damages, restitution and attorneys' fees; (5) unfair or deceptive acts or practices in the conduct of trade or commerce under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*., seeking injunctive and declaratory relief, actual damages, attorneys' fees and court costs; (6) unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq*., seeking injunctive relief and disgorgement and restitution; (7) unfair or deceptive acts or practices in the conduct of consumer transactions under the Georgia Fair

Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq.*, seeking injunctive relief, actual damages and restitution; (8) false, misleading or deceptive acts or practices in the conduct of trade or commerce under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*, seeking injunctive relief and compensatory and punitive damages; (9) negligent misrepresentation under the laws of all fifty states and the District of Columbia seeking punitive damages; and (10) unjust enrichment under the laws of all fifty states and the District of Columbia. (Am. Compl. ¶¶ 91–205.)

Plaintiffs bring the claims on behalf of nine purported classes of plaintiffs who purchased Fage Total 0% Greek yogurt products: "[a]ll New York residents who made retail purchases of the Products during the applicable limitations period" (the "New York Class"); "[a]ll New Jersey residents who made retail purchases of the Products during the applicable limitations period" (the "New Jersey Class"); "[a]ll Pennsylvania residents who made retail purchases of the Products during the applicable limitations period" (the "Pennsylvania Class"); "[a]ll California residents who made retail purchases of the Products during the applicable limitations period" (the "California Class"); "[a]ll Florida residents who made retail purchases of the Products during the applicable limitations period" (the "Florida Class"); "[a]ll Michigan residents who made retail purchases of the Products during the applicable limitations period" (the "Michigan Class"); "[a]ll Georgia residents who made retail purchases of the Products during the applicable limitations period" (the "Georgia Class"); "[a]ll Texas residents who made retail purchases of the Products during the applicable limitations period" (the "Texas Class"); and "[a]ll persons or entities in the United States who made retail purchases of the Products during the applicable

limitations period" (the "Nationwide Class").[4]

Defendants move to dismiss the Amended Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure or, in the alternative, to transfer venue to the Northern District of New York pursuant to 28 U.S.C. § 1404(a). (Mot. to Dismiss and, alternatively, to Transfer Venue, Docket Entry No. 19; Defs. Mem. in Support of Mot. to Dismiss and, alternatively, to Transfer Venue ("Defs. Mem."), Docket Entry No. 19-1.) Defendants also move for dismissal of all claims against Fage Dairy Processing, S.A. and Fage USA Holdings, Inc. for failure to state a claim pursuant to Rule 12(b)(6).

### b. Factual background[5]

Fage Dairy Processing Industry, S.A. ("Fage Greece") is a Greek corporation with its principal place of business in Athens, Greece. (Am. Compl. ¶ 31.) Fage Greece has a place of business in the United States located in Johnstown, New York. (*Id.*) Fage USA Dairy Industry, Inc. ("Fage USA") and Fage USA Holdings, Inc. ("Fage Holdings") are both domestic corporations with their principal places of business in Johnstown, New York. (*Id.*) Defendants

---

[4] Each class excludes "current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest" and "the judicial officer to whom this lawsuit is assigned." (Am. Compl. ¶¶ 73−81.) Plaintiffs' state law consumer protection claims are asserted on behalf of the following named Plaintiffs and state subclasses: the New York claims are brought on behalf of Stoltz, Chang and the New York Class; the New Jersey claim is brought on behalf of Mayes and the New Jersey Class; the Pennsylvania claim is brought on behalf of Starr and the Pennsylvania Class; the California claim is brought on behalf of Mendez, Manier, Neal, Jackson and the California Class; the Florida claim is brought on behalf of Cohen, Leibowitz and the Florida Class; the Michigan claim is brought on behalf of Manier and the Michigan Class; the Georgia claim is brought on behalf of John Doe and the Georgia Class; and the Texas claim is brought on behalf of Jane Doe and the Texas Class. The negligent misrepresentation and unjust enrichment claims are brought on behalf of Plaintiffs and the Nationwide Class.

[5] The facts alleged in the Amended Complaint are assumed to be true for purposes of this motion.

operate as a single, integrated and common enterprise. (*Id.* ¶ 32.) Defendants manufacture and sell Fage Total Greek yogurt products and market these products as the "#1 yogurt in Greece." (*Id.* ¶ 1.) Defendants manufacture, market and sell various Greek yogurt products throughout the United States under the brand Fage®, including the products in Defendants' "Total 0%" product line. (*Id.*) The "Total 0%" product line includes a plain variety of yogurt as well as fourteen different fruit-flavor varieties (hereinafter referred to as the "Total 0% Products"). (*Id.* ¶ 38.) The Total 0% Products are distributed to approximately 280 supermarket chains, with approximately 75,000 retail outlets in over thirty-five countries. (*Id.* ¶ 34.)

According to Plaintiffs, Defendants mislead consumers about the Total 0% Products' ingredients through an extensive and comprehensive nationwide marketing campaign that encompasses the Total 0% Products' packaging, Defendants' website, and Defendants' Facebook page and Twitter account. (*Id.* ¶¶ 3, 52, 55.) Defendants misled consumers by prominently displaying the phrase "Total 0%" on the top and front labels of the Total 0% Products without providing any context as to what the "0%" refers to. (*Id.* ¶¶ 3, 36, 39.) Defendants intend for consumers to impute any meaning to the "Total 0%" language that will lead consumers to believe the Total 0% Products are healthy and to purchase the Total 0% Products. (*Id.* ¶¶ 4–5, 8, 36.) Defendants intend for consumers to conclude that the "Total 0%" language indicates that the Total 0% Products lack sugar, carbohydrates, calories, or any other ingredients, nutrients or qualities that a particular consumer believes to be unhealthy. (*Id.*) Plaintiffs allege that Defendants have intentionally modeled their marketing campaign for the Total 0% Products on the campaigns of products like Coke Zero and Pepsi Max which prominently feature "Zero" or "0" on their packaging to signify that these products are sugar, calorie and carbohydrate free. (*Id.* ¶¶ 4, 36, 40.) Plaintiffs further allege that the Total 0% Products typically contain about

sixteen grams of sugar per container. (*Id.* ¶ 4.)

Plaintiffs were exposed to Defendants' marketing campaign for the Total 0% Products, were misled by the "Total 0%" language, and purchased the Total 0% Products for a premium price based on their erroneous beliefs as to the meaning of "Total 0%." (*Id.* ¶¶ 6, 53, 58–59, 64, 67.) Plaintiffs compare the Total 0% Products to those of Defendants' competitors and assert that, while some of Defendants' competitors employ "0%" in the marketing and packaging of their yogurt products, these products and marketing campaigns make clear that the "0%" refers to the products' fat content. (*Id.* ¶¶ 44–45.) Plaintiffs contend that Defendants ensure an unfair advantage over competitors by failing to disclose to consumers in a clear manner whether the Total 0% Products are free of fat, sugar, caffeine, carbohydrates, or calories. (*Id.* ¶ 46.) As a result, reasonable consumers like Plaintiffs are left to impute any meaning to the prominent "0%" on the Total 0% Products' packaging. (*Id.* ¶¶ 40, 46.) Plaintiffs further contend that given that the "0%" is preceded by the word "Total," a reasonable consumer is likely to believe that the Total 0% Products contain no fat, sugar, sodium, cholesterol, carbohydrates, calories, or any other item required to be disclosed on the Total 0% Products' packaging. (*Id.* ¶ 46.)

Plaintiffs acknowledge that the fine print on the Total 0% Products' front and top labels states "All Natural — Nonfat Greek Strained Yogurt," but contend that this disclosure is not placed in close enough proximity to the prominent "Total 0%" claim on the labels, thus making it impossible for the reasonable consumer to deduce that "Total 0%" refers only to fat content. (*Id.* ¶ 47.)

## II. Motion to Transfer Venue

### a. Standard of review

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (noting the district courts' discretionary power to transfer for the convenience of parties and witnesses pursuant to 28 U.S.C. § 1404(a)). Deciding a motion to transfer involves a two-part inquiry: "(1) whether the action could have initially been brought in the transferee court; and (2) whether the interests of justice and convenience of the parties and witnesses will be served by the transfer."[6] *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 398 (E.D.N.Y. 2013); *Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011). The following factors are to be considered in determining whether transfer is warranted under § 1404(a): "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (alteration, citation and internal quotation marks omitted); *see also N.Y. Marine*, 599 F.3d at 112 (listing factors). Courts have also recognized the importance of considering trial efficiency and the "interest of justice," based on the totality of the circumstances.[7] *See Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012) (including these additional factors); *Fellus v. Sterne, Agee &*

---

[6] Plaintiffs do not challenge Defendants' claim that this action could have been brought in the Northern District of New York.

[7] The Second Circuit has yet to adopt these additional factors. *But see N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (recognizing that, in deciding a motion to transfer, a district court will consider, "*inter alia*," factors one through seven).

*Leach, Inc.*, 783 F. Supp. 2d 612, 617–18 (S.D.N.Y. 2011) (same).

It is the burden of the moving party to "mak[e] a strong case for a transfer." *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989) (citation and internal quotation marks omitted); *see also Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (noting that "the burden is on the movant to show that the transfer is justified"). Courts apply the "clear and convincing evidence standard" in determining whether to grant a motion to transfer, *N.Y. Marine*, 599 F.3d at 113–14, and operate with considerable discretion, *see Forjone*, 425 F. App'x at 74 ("The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." (citation and internal quotation marks omitted)).

### b. Application of the factors

Defendants claim transfer to the Northern District of New York is appropriate because the Northern District is the location of Fage's corporate headquarters, Fage employees with relevant knowledge, and Fage's current and historical business records. (Defs. Mem. 24; Defs. Reply Mem. in Support of Mot. to Transfer Venue ("Defs. Venue Transfer Reply Mem.") 3, Docket Entry No. 19-10.) Defendants also claim that Fage makes strategic decisions about the sale, marketing and labeling of the Total 0% Products in the Northern District of New York and that all Fage Total yogurt products are produced and prepared for sale throughout the United States in the Northern District. (Defs. Venue Transfer Reply Mem. 3.) Plaintiffs claim their choice of forum is entitled to deference and argue that Defendants have failed to show by clear and convincing evidence that transfer is justified. (Pls. Opp'n to Mot. to Transfer Venue ("Pls. Venue Transfer Opp'n Mem.") 1, Docket Entry No. 20.) Based on its assessment of the relevant factors, the Court denies Defendants' motion to transfer venue to the Northern District of New

York.

### i. Plaintiffs' choice of forum

The parties disagree about the relative significance of Plaintiffs' choice of forum in this case. Plaintiffs claim their choice of forum is entitled to "great deference." (*Id.*) Defendants counter that Plaintiffs' choice of forum is entitled to "little, if any, deference" because this putative class action now includes named Plaintiffs from New York, New Jersey, Pennsylvania, Florida, California, Michigan, Georgia and Texas, and only one of the thirteen Plaintiffs resides within the Eastern District of New York. (Defs. Mem. 3, 24.) Plaintiffs assert that, while only one Plaintiff resides in this District, three of the named Plaintiffs reside in the New York City area, including the two Plaintiffs who initially brought the action. (Pls. Venue Transfer Opp'n Mem. 1.)

Normally, a plaintiff's choice of forum warrants substantial deference. *See Cosa Xentaur Corp. v. Bow*, No. 13-CV-2912, 2014 WL 1331030, at *13 (E.D.N.Y. Mar. 31, 2014) ("As a general rule, 'a plaintiff's choice of forum is presumptively entitled to substantial deference.'" (quoting *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004))). However, while the Second Circuit "has not definitively answered what effect a plaintiff's representative capacity has on his or her choice of forum," *Gilstrap v. Radianz Ltd.*, 233 F. App'x 83, 85 (2d Cir. 2007), it has acknowledged that a plaintiff's choice of forum is entitled to less deference in the context of national class actions, *see Warrick ex rel. Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("It is true, as the respondents assert, that the plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action." (internal citation omitted)). This is so even where the plaintiff who initiates the putative class action resides in the chosen forum. *See Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 450–51

(E.D.N.Y. 2011) (holding plaintiff's choice of forum entitled to less deference in putative class action notwithstanding that plaintiff was a resident of the chosen forum). Although a plaintiff's choice of forum is given less weight in the class action context, a representative plaintiff's choice is still entitled to some deference. *See Sebrow v. Zucker, Goldberg & Ackerman, LLC*, No. 10-CV-4767, 2012 WL 911552, at *4 (E.D.N.Y. Mar. 16, 2012). Therefore, although less significant than it would be in an individual action, Plaintiffs' choice of the Eastern District of New York weighs in favor of Plaintiffs.

### ii. Convenience of witnesses

Defendants claim the convenience of witnesses weighs in favor of transfer because Fage's corporate headquarters are located in the Northern District and, as such, Fage employees who are knowledgeable about the production and marketing of Fage Total yogurt are located in the Northern District. (Defs. Venue Transfer Reply Mem. 3.) Defendants specifically identify three Fage employees who live and work in the Northern District of New York and "will be critical witnesses in any trial of this case:" Chief Financial Officer Robert Shea; Executive Vice President for Production, Research & Development, and Quality Assurance Spyros Gianpapas; and Chief Executive Officer Athanassios Filippou. (*Id.* at 3–4.) Plaintiffs assert that this factor weighs against transfer because Plaintiffs' non-party, expert witnesses "are based in or regularly do business in the Eastern District." (Pls. Venue Transfer Opp'n Mem. 2.) In response, Defendants argue that the convenience of expert witnesses is not relevant for purposes of assessing a motion to transfer. (Defs. Venue Transfer Reply Mem. 5.)

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 29–30 (E.D.N.Y. 2014) (quoting *Fuji Photo Film Co., Ltd. v. Lexar*

*Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)); *see also EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 350 (E.D.N.Y. 2012) (collecting cases). "[T]he weight given to the convenience of witnesses depends upon whether the party seeking transfer has described the witnesses' testimony so the court can qualitatively evaluate its materiality." *Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13-CV-05390, 2014 WL 652357, at *3 (E.D.N.Y. Feb. 19, 2014). "Generally, the moving party submits an affidavit explaining why the transferee forum is more convenient, which includes the potential principal witnesses expected to be called and the substance of their testimony." *EasyWeb*, 888 F. Supp. 2d at 350 (citation and internal quotation marks omitted). However, the convenience of expert witnesses is of little to no relevance in deciding whether to transfer venue. *JetBlue Airways*, 960 F. Supp. 2d at 398; *In re McDermott Int'l, Inc. Sec. Litig.*, Nos. 08-CV-9943, 08-CV-10615, 09-CV-570, 2009 WL 1010039, at *4 (S.D.N.Y. Apr. 13, 2009) ("Expert witnesses are generally excluded from the analysis of the convenience of the witnesses."); *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006) ("[I]t is well settled that the location of expert witnesses is irrelevant to a transfer decision." (quoting *Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 269 (S.D.N.Y. 2001))).

Here, although Defendants have identified three likely witnesses, Defendants have not provided any information as to the likely substance of the witnesses' testimony. While it is logical to assume the specified witnesses may offer some degree of relevant testimony on the nationwide marketing campaign and product packaging at issue, the Court is unable to gauge the relative relevance of such testimony without more detail. Therefore, this factor weighs only slightly in favor of Defendants.

### iii. Location of relevant documents and relative ease of access to sources of proof

Defendants claim that the location of relevant documents weighs in favor of transfer because documents about Fage's adoption and marketing of the Total 0% Products are located at Fage's corporate headquarters and production facility in the Northern District of New York. (Defs. Venue Transfer Reply Mem. 3.) Defendants also assert that Fage's current and historical business records "are maintained mostly in Johnstown." (*Id.* at 4.) Plaintiffs claim that this factor does not support transfer because Defendants have not established or even alleged that their documents could not easily be copied and transported to the Eastern District of New York. (Pls. Venue Transfer Opp'n Mem. 2.)

"In an era of electronic documents, easy copying and overnight shipping, . . . [the location of relevant documents] assumes much less importance than it did formerly." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008). However, although this factor is less important, "it nonetheless retains some relevance to the venue inquiry." *Price v. Stossel*, No. 07-CV-11364, 2008 WL 2434137, at *5 (S.D.N.Y. June 4, 2008). It is not sufficient for the moving party to assert merely that relevant documents are located in the proposed transferee forum, rather the moving party must establish that it would be unable to move or copy the documents easily. *See Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02-CV-2612, 2002 WL 31385815, at *6 (S.D.N.Y. Oct. 22, 2002) ("[A] defendant's assertion that documents are located in the proposed transferee forum is entitled to little weight unless the defendant makes a detailed showing as to the burden it would incur absent transfer.").

Because Defendants have failed to demonstrate that it would be burdensome to transport the business records and marketing-related documents located in the Northern District of New York, this factor is neutral.

### iv.    Convenience of the parties

Defendants assert that the Northern District of New York is a more convenient forum for Defendants because Fage's corporate headquarters, employees and documents are all located in the Northern District.  (Defs. Mem. 24; Defs. Venue Transfer Reply Mem. 3–4.)  Plaintiffs claim that transferring this case to the Northern District would merely shift the inconvenience that Defendants claim as a result of the current forum to Plaintiffs such that transfer is not appropriate.  (Pls. Venue Transfer Opp'n Mem. 2.)

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  *SBAV LP v. Porter Bancorp, Inc.*, No. 13-CV-372, 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013) (internal quotation marks omitted) (quoting 15 Charles Alan Wright *et al*., *Federal Practice and Procedure* § 3849 (3d ed. 2007)); *see also Liberty Mut. Ins. Co. v. Fairbanks Co.*, No. 13-CV-3755, 2014 WL 1796005, at *11 (S.D.N.Y. May 5, 2014) ("The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant.").  "[W]here transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed."  *Mazuma Holding Corp.*, 1 F. Supp. 3d at 31 (alteration, citation and internal quotation marks omitted).

While Defendants claim that litigating in the Northern District of New York would be more convenient for Defendants, they do not expressly address the relative inconvenience to Plaintiffs in the event of transfer.  Ostensibly, Defendants' position is that, because only Stoltz and Chang reside in New York, and only Chang resides in the Eastern District, the majority of Plaintiffs will have to travel to the forum regardless of whether this case is tried in the Eastern or

Northern District of New York such that the Northern District would not be any less convenient for most Plaintiffs. Plaintiffs claim, however, that for several Plaintiffs, airfare to the Northern District is nearly twice the cost of flying to the New York City area. (Pls. Venue Transfer Opp'n Mem. 3.) While the Court notes that Plaintiffs offer no data in support of their claim about the relative cost of airfare to the Eastern District of New York versus the Northern District of New York, the convenience of the parties is a neutral factor given Defendants' failure to address the extent to which Plaintiffs would be inconvenienced if this case was transferred to the Northern District of New York.

### v. **Locus of operative facts**

Defendants claim the locus of operative facts is in the Northern District because that is where: (1) Fage's corporate headquarters are located; (2) Fage's executives made strategic decisions about the sale, marketing and labeling of the Total 0% Products; (3) Fage Total yogurt products are all produced and prepared for sale throughout the United States; and (4) Fage evaluates the nutritional content of its products as stated on the nutrition facts. (Defs. Venue Transfer Reply Mem. 3, 5.) Defendants assert that, in contrast to the Northern District of New York, there is no particular nexus between this case and the Eastern District of New York because only one of the thirteen named Plaintiffs resides in and is alleged to have purchased the Total 0% Products from stores located within the Eastern District of New York. (Defs. Mem. 22.) Defendants also claim that the Northern District is the locus of operative facts because it is where the alleged misrepresentations were made. (Defs. Venue Transfer Reply Mem. 5–6.)

Plaintiffs argue that this factor weighs against transfer because the location where the Total 0% Products' labels were made is irrelevant to Plaintiffs' claim that the labels are deceptive and misleading. (Pls. Venue Transfer Opp'n Mem. 3.) Plaintiffs claim the events

giving rise to their claims can be said to have occurred in the Eastern District because the Total

0% Products were sold in this District and the Total 0% Products continue to be sold in this

District such that the Eastern District is the situs of the harm giving rise to Plaintiffs' damages.

(*Id.*)

"The location of the operative events is a 'primary factor' in determining a § 1404(a)

motion to transfer." *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002)

(quoting *ZPC 2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000)). "To

ascertain the locus of operative facts, courts look to 'the site of the events from which the claim

arises.'" *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 460 (E.D.N.Y. 2013) (quoting *800–Flowers, Inc.*

*v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994)).

Here, the site at which Defendants created the Total 0% Products and the sites at which

Plaintiffs purchased the Total 0% Products are all relevant. While Plaintiffs claim that the place

where the labels were made is not relevant to the claims, the allegations in the Amended

Complaint suggest the process by which the labels were designed and evaluated will be, at least

to some degree, relevant in the event of a trial. For example, in support of the state law

consumer fraud and deceptive trade practices claims under the laws of at least three states, the

Amended Complaint alleges that Defendants engaged in fraudulent and intentional misconduct.[8]

Therefore, the Northern District is likely to be the locus of many, though certainly not all,

operative facts. *See CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012) (noting, in

context of considering motion to transfer venue, that plaintiff "has alleged willfulness which will

presumably turn, in large part, on facts regarding the design and development of the accused

---

[8]  The Amended Complaint alleges fraudulent or intentional misconduct in support of the
state law consumer fraud and deceptive trade practices claims asserted on behalf of the putative
New Jersey, (Am. Compl. ¶ 118), Michigan, (*id.* ¶ 156), and Georgia classes, (*id.* ¶ 169).

products and packaging and the knowledge of the employees involved in that process"). Plaintiffs are correct that the places at which they purchased the Total 0% Products and incurred the alleged harm are also relevant to the claims. However, while the loci of the operative facts involving Plaintiffs are spread across at least eight states and, allegedly, all fifty states, the main locus of operative facts as to Defendants is the Northern District of New York. Accordingly, this factor weighs in favor of Defendants. *See Horanzy v. Vemma Nutrition Co.*, No. 14-CV-1296, 2015 WL 728379, at *6 (N.D.N.Y. Feb. 18, 2015); *CYI, Inc.*, 913 F. Supp. 2d at 19–22; *Glass*, 456 F. Supp. 2d at 503.

### vi. Availability of process to compel attendance of unwilling witnesses

As the parties have not alleged their expected non-party witnesses would be unwilling to testify in either the Eastern or Northern Districts of New York, this factor has no bearing on the analysis and is neutral. *See, e.g.*, *Seltzer v. Omni Hotels*, No. 09-CV-9115, 2010 WL 3910597, at *4 (S.D.N.Y. Sept. 30, 2010).

### vii. Relative means of the parties

Plaintiffs claim the relative means of the parties weighs against transfer because, "given Plaintiffs' limited financial resources," transfer would adversely affect their ability to prosecute this case. (Pls. Venue Transfer Opp'n Mem. 2.) As noted in the above discussion of the convenience of the parties factor, Plaintiffs claim the cost of airfare for flights to the Northern District of New York is twice that of flights to the Eastern District of New York. (*Id.* at 3.) Plaintiffs also claim they have to bear the costs of counsel's travel to and from the Northern District of New York and of counsel's living expenses during appearances. (*Id.* at 2–3.) Plaintiffs assert that "Defendants are in a much better position than Plaintiffs financially and thus are more capable of bearing any financial inconvenience" if this case remains in the Eastern

District of New York. (*Id.* at 3.) Defendants argue that this factor is neutral because Plaintiffs have not offered any evidence to support their claims as to the relative means of the parties. (Defs. Venue Transfer Reply Mem. 6.) The Court agrees with Defendants; Plaintiffs have not established that this factor weighs against transfer because Plaintiffs fail to offer any evidence as to their financial condition. *See Cosa Xentaur*, 2014 WL 1331030, at *15 (finding this factor to weigh in favor of the defendant (individual) over the plaintiff (corporation) in light of the defendant's presentation of his financial condition via sworn declaration); *Mazuma Holding Corp.*, 1 F. Supp. 3d at 31–32 (finding this factor to be neutral absent any evidence of the parties' finances); *see also It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) ("[A] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." (alteration, citation and internal quotation marks omitted)). *But see Chong v. Healthtronics, Inc.*, No. 06-CV-1287, 2007 WL 1836831, at *13 (E.D.N.Y. June 20, 2007) ("Since plaintiff is an individual and defendant is a corporation, the 'relative means of the parties' factor weighs in favor of plaintiff.").

### viii.  Trial efficiency and the interests of justice

Plaintiffs argue that trial efficiency weighs against transfer because the Northern District of New York is more congested than the Eastern District of New York. (Pls. Venue Transfer Opp'n Mem. 3–4.) Plaintiffs claim, based on data from the past five years, that the median times from filing to disposition and from filing to trial in each district support their contention. (*Id.*) Defendants claim that Plaintiffs overstate and skew the figures. (Defs. Venue Transfer Reply Mem. 6.) "Although docket congestion is insufficient on its own to support a transfer motion, it is a proper factor for the Court to consider and is accorded some weight." *In re Hanger*

*Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006) (internal citations and quotation marks omitted). For the twelve-month period ending March 31, 2015, the median disposition time for a civil case was 9.5 months in the Eastern District of New York and 10.8 months in the Northern District of New York. *See* Admin. Office of the U.S. Courts, *U.S. District Courts — Combined Civil and Criminal Federal Court Management Statistics* (March 31, 2015), *available at* http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. Given the marginal difference in disposition time, this factor weighs only slightly in favor of Plaintiffs and is due minimal weight. *See Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13-CV-5390, 2014 WL 652357, at *5 (E.D.N.Y. Feb. 19, 2014); *Hanger*, 418 F. Supp. 2d at 171.

Having considered Defendants' arguments and each of the relevant factors, the Court finds that the interests of justice only slightly favor transfer. As discussed above, two factors — the convenience of witnesses and the locus of operative facts — favor transfer, and the convenience of witnesses only slightly favors transfer. Two factors — Plaintiffs' choice of forum and trial efficiency — each weigh slightly against transfer. The remaining factors are neutral. Accordingly, the Defendants have failed to meet their burden of showing by clear and convincing evidence that transfer is justified. Defendants' motion to transfer venue to the Northern District of New York is therefore denied without prejudice.

### III. Motion to Dismiss

#### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131

F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011)

(quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*

*Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  Although all allegations

contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions"

or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." *Iqbal*, 556 U.S. at 678.[9]

### b.  Standing

#### i.  Standing of John Doe and Jane Doe — Georgia and Texas

Plaintiffs assert a claim under Georgia state law on behalf of a Georgia class purportedly

represented by "John Doe." (Am. Compl. ¶¶ 28, 80, 163–172.)  Similarly, Plaintiffs assert a

claim under Texas State law on behalf of a Texas class purportedly represented by "Jane Doe."

(*Id.* ¶¶ 29, 81, 173–186.)  There is, however, no indication in the parties' submissions, in

connection with the instant motion or otherwise, that John Doe and Jane Doe are actual people or

that either "John Doe" or "Jane Doe" are used in any sense other than as placeholder names for

---

[9]  When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint, as well as (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) any documents deemed integral to the complaint, and (4) public records. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint).

parties whose true identity is unknown.  Defendants raise this issue in passing in a footnote in their memorandum of law in support of their motion to dismiss.  (Defs. Mem. 24 n.10 ("For unstated reasons, the Amended Complaint identifies the class representatives from Georgia and Texas anonymously.  No valid justification could exist for why these class plaintiffs should not be named in the Amended Complaint.").)  Plaintiffs' do not address this issue in their opposition, or otherwise, and the Court is, therefore, left to conclude that "John Doe" and "Jane Doe" are used as placeholders for plaintiffs who do not exist.  As such, the Court must *sua sponte* address the threshold issue of standing as to the claims brought on behalf of these two Plaintiffs to determine whether the Court has the requisite jurisdiction to consider the sufficiency of these claims.

Article III of the Constitution limits the jurisdiction of federal courts to the resolution of actual "cases" and "controversies."  U.S. Const. art. III, § 2.  "To have such Article III standing, the plaintiff [must have] alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).  Whether a Plaintiff has Article III standing is a threshold question in every federal case that "determine[s] the power of the court to entertain the suit." *Warth*, 422 U.S. at 498.  "To satisfy the irreducible constitutional minimum of [Article III] standing, a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citations and internal quotation marks omitted). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their

claim." *Id.* (citations and internal quotation marks omitted).

Standing is required regardless of whether a case is brought on behalf of an individual or as a putative class action. In the case of a class action, there must be "a named plaintiff sufficient to establish jurisdiction over each claim advanced." *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013). As such, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Mahon*, 683 F.3d at 64 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations, internal quotation marks, and alterations omitted)).

While "Article III standing is generally a prerequisite to class certification,"[10] *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, No. 11-CV-8066, 2013 WL 6508843, at *5 n.3 (S.D.N.Y. Dec. 12, 2013), "[a]t this preliminary stage of the litigation, the only relevant standing inquiry is that of the named plaintiffs," *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010).

Here, Plaintiffs have not responded to the footnote in Defendants memorandum regarding Plaintiffs John Doe and Jane Doe. As such, the Court has no basis to conclude that either John

---

[10] In *Ortiz v. Fibreboard Corp.*, the Supreme Court recognized an exception to this general rule where class certification is "logically antecedent" to the determination of standing such that courts may decline to dismiss on the basis of lack of standing before class certification. 527 U.S. 815, 831 (1999). The Second Circuit has subsequently made clear, however, that logical antecedence is only a narrow "exception" to the rule that Article III standing is a prerequisite to class certification. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012). The exception applies in cases in which "the Article III concerns would arise only if the Court affirmed class certification." *Id.*; *see also Ortiz*, 527 U.S. at 825–26, 830–31 (holding that it was unnecessary to determine whether "exposure-only" claimants had standing prior to deciding whether a class involving claimants with asbestos-related diseases and "exposure-only" claimants who had yet to manifest injury should be certified because, absent class certification, "exposure only" claimants would not be in the case). Here, there is no indication that Plaintiffs are attempting to invoke this exception.

Doe or Jane Doe are actual people whom Plaintiffs have elected to name anonymously, and instead concludes that neither John Doe nor Jane Doe exists. Indeed, Black's Law Dictionary defines "John Doe" as "[a] fictitious name used in a legal proceeding to designate a person whose identity is unknown, to protect a person's known identity, or to indicate that a true defendant does not exist." *John Doe*, *Black's Law Dictionary* (10th ed. 2009). Similarly, "Jane Doe" is defined as "[a] fictitious name for a female party to a legal proceeding, used because the party's true identity is unknown or because her real name is being withheld." *Id.* at *Jane Doe*. If John Doe and Jane Doe do not exist, there are no parties before the Court who have alleged standing to assert claims under Georgia or Texas state law requiring dismissal of these claims. *See In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49–50 (E.D.N.Y.) ("In this case, the Court finds that the Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state."), *on reconsideration*, 14 F. Supp. 3d 99 (E.D.N.Y. 2014); *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 230 (S.D.N.Y. 2012) (holding named plaintiffs in putative securities class action only had standing to assert claims relating to funds in which they had purchased shares, plaintiffs could not allege an injury traceable to funds in which they did not personally invest).

Therefore, the Court *sua sponte* dismisses Plaintiffs' claims on behalf of John Doe and Jane Doe as class representatives for Georgia and Texas, respectively. Plaintiffs are granted thirty (30) days' leave to file an amended complaint alleging that John Doe or Jane Doe exists or that there is some other basis for this Court's jurisdiction to consider the claims under Georgia and Texas state law.

### ii.    Negligent misrepresentation and unjust enrichment claims

Defendants move to dismiss Plaintiffs' negligent misrepresentation and unjust enrichment claims under the laws of states other than New York, New Jersey, Pennsylvania,

California, Florida and Michigan. (Defs. Mem. 21.) Defendants assert that Plaintiffs cannot assert claims under the laws of states that are not the subject of any particularized allegations that support a connection and the requisite standing as to each state. (*Id.*) Plaintiffs' response, which is limited to a single paragraph in their opposition, asserts that Plaintiffs are entitled to assert claims under the laws of all fifty states and the District of Columbia because Plaintiffs have alleged that Defendants marketed and sold the Total 0% Products to "hundreds of thousands of customers nationwide," engaged in a nationwide marketing campaign, and deceived Plaintiffs "and other consumers nationwide." (Pls. Opp'n to Mot. to Dismiss ("Pls. Opp'n Mem.") 23–24, Docket Entry No. 19-3.) For the reasons discussed as to the lack of Plaintiffs' standing to bring claims under Georgia and Texas state law, the Court agrees with Defendants that Plaintiffs cannot assert claims under the laws of states for which they have not established standing. *Mahon*, 683 F.3d at 64 ("It is well established that 'a plaintiff must demonstrate standing for each claim [s]he seeks to press.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006))). Plaintiffs' negligent misrepresentation and unjust enrichment claims under the laws of the District of Columbia and all states other than New York, New Jersey, Pennsylvania, California, Florida and Michigan are dismissed without prejudice. Plaintiffs are granted thirty (30) days to amend and may assert negligent misrepresentation or unjust enrichment claims under these state laws provided that Plaintiffs can allege standing as to each claim.[11]

> ### c.  State law consumer protection claims

Plaintiffs assert consumer protection claims under the laws of New York, New Jersey, Pennsylvania, California, Florida and Michigan. (Am. Compl. ¶¶ 91–162.) Defendants move to

---

[11] Defendants have also moved to dismiss the negligent misrepresentation and unjust enrichment claims under the laws of New York, New Jersey, Pennsylvania, California, Florida and Michigan. Defendants' motion to dismiss these claims is addressed below.

dismiss Plaintiffs' state law consumer protection claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[12]  Defendants argue that Plaintiffs' state law consumer protection claims must be dismissed because the allegations do not establish a plausible basis to conclude that a reasonable consumer would likely be misled by the alleged misrepresentations, as is required to state a claim under the relevant New York, New Jersey, Pennsylvania, California, Florida and Michigan laws.  (Defs. Mem. 6–16.)  Defendants assert that Plaintiffs' claims are also subject to dismissal because Plaintiffs fail to allege damages and causation in support of these claims.  (*Id.* at 16–17.)

In order to state a claim under the relevant New Jersey, California and Florida laws, a plaintiff must allege the following elements, with some variations in the particular formulation applicable in each state: (1) a deceptive act or practice, (2) causation, and (3) actual damages.[13] To state a claim under the relevant Pennsylvania law, a plaintiff must allege "(1) a deceptive act; (2) justifiable reliance; and (3) ascertainable loss caused by that reliance." *DuMont v. Litton*

---

[12]  Defendants moved to dismiss each of the state law consumer protection claims asserted in the Amended Complaint.  Having determined that Plaintiffs lack standing to assert consumer protection claims under Georgia and Texas state law, the Court only considers the sufficiency of the allegations in support of Plaintiffs' consumer protection claims under New York, New Jersey, Pennsylvania, California, Florida and Michigan state laws.

[13]  *See, e.g.*, California: *Bower v. AT & T Mobility, LLC*, 127 Cal. Rptr. 3d 569, 578 (Ct. App. 2011) ("An individual seeking to recover damages under the [California Consumers Legal Remedies Act] . . . [must show (1)] a misrepresentation[,] . . . [(2)] actual injury[,] . . . . [and (3)] . . . that the [defendant's deceptive conduct] . . . caused them harm."); Florida: *Lustig v. Bear Stearns Residential Mortg. Corp.*, 411 F. App'x 224, 225 (11th Cir. 2011) ("A consumer claim for damages under [the Florida Deceptive and Unfair Trade Practices Act] has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." (quoting *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008))); New Jersey: *Zaman v. Felton*, 98 A.3d 503, 516 (N.J. 2014) (In order to state a claim pursuant to the New Jersey Consumer Fraud Act under N.J. Stat. Ann. § 56:8-2, "a plaintiff must establish three elements: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." (internal quotation marks omitted)).

*Loan Servicing, LP*, No. 12-CV-2677, 2015 WL 1061138, at *11 (S.D.N.Y. Mar. 11, 2015)

(quoting *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)). To state

a claim under the relevant New York law a plaintiff must allege, "(1) that the act, practice, or

advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading

in a material respect, and (3) that the plaintiff was thereby injured." *See Stutman v. Chem. Bank*,

95 N.Y.2d 24, 29 (2000). Finally, to state a claim under the relevant Michigan law a plaintiff

must allege "[(1)] that the defendant made a material misrepresentation that was false; [(2)] the

defendant knowingly made the false representation with the intent that the plaintiff would act

upon it; [(3)] that the plaintiff acted in reliance upon it; and [(4)] resulting damages." *In re

OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (internal citations and quotation

marks omitted) (stating that "The provisions of the [Michigan Consumer Protection Act] are to

be construed with reference to the common-law tort of fraud."). The Court considers the

sufficiency of the allegations as to each of the elements.

### i. Deceptive act or practice

In each of the states, in order to satisfy the first element, a plaintiff must establish that a

reasonable consumer would likely be misled by the alleged misrepresentation or omission. The

same standard — that the alleged misrepresentation or omission would likely mislead a

reasonable consumer acting reasonably under the circumstances — is applicable in each state.[14]

---

[14]  *See, e.g.*, California: *McKinniss v. Sunny Delight Beverages Co.*, No. 07-CV-02034, 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) ("California courts have defined the 'reasonable consumer' as an ordinary member of the consuming public who acts reasonably under all of the circumstances."); *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 46 (Ct. App. 2006) (noting that "standard[] for determining whether a representation is misleading" for claim under CLRA § 1770(a) is whether alleged misrepresentation is "likely to mislead a reasonable consumer"); Florida: *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (considering claim under Fla. Stat. Ann. § 501.204(1) and stating, "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's

Because this element is common to all of Plaintiffs' state law consumer protection claims, the Court simultaneously addresses this element as to all claims.

Defendants contend that the allegations are insufficient to satisfy the reasonable consumer prong for a number of reasons, which reasons fall into two categories: (1) arguments based on the broader context of the "Total 0%" language in light of the entire label on the Total 0% Products and the other representations set forth on the label, and (2) arguments based on what Defendants claim is the background knowledge, experience and understanding of any reasonable consumer.

As to the entire context of the Total 0% Products' label, Defendants make two arguments.

---

detriment.'" (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003))); Michigan: Mich. Comp. Laws Ann. § 445.903(1)(bb) ("Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" includes "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."); Mich. Comp. Laws Ann. § 445.903(1)(s) ("Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" also includes omissions: "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."); *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999) ("Subsection 3(1)(s) [of the MCPA] prohibits making an omission that tends to mislead or deceive any consumer, but only if the omitted fact could not be reasonably known by that consumer. Thus, the issue is not whether the omission is misleading to a reasonable consumer but whether the consumer could reasonably be expected to discover the omission at issue."); New Jersey: *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014) (noting that in order to state a claim under N.J.S.A. 56:8-2 "a plaintiff must allege that a misrepresentation induced an objectively reasonable expectation about a product and that this expectation was not met"); New York: *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (adopting an "objective definition of deceptive acts and practices" for purposes of establishing a claim under N.Y. Gen. Bus. Law § 349, representations or omissions must be "likely to mislead a reasonable consumer acting reasonably under the circumstances"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting reasonably under the circumstances.'"); Pennsylvania: *Prukala v. Elle*, 11 F. Supp. 3d 443, 447 (M.D. Pa. 2014) (In order to state a claim under 73 Pa. Stat. § 201–2(4)(xxi) a "plaintiff must allege facts showing a 'deceptive act,' that is, 'conduct that is likely to deceive a consumer acting reasonably under similar circumstances.'").

First, Defendants claim the "Nutrition Facts" label appears "mere *centimeters*" from the "Total 0%" language and provides accurate information as to the Total 0% Products' calorie, fat, carbohydrate and sugar content.[15]  (Defs. Mem. 9–10.)  Defendants assert that the inclusion of the information listed on the "Nutrition Facts" label, in particular, "prohibits as a matter of law any claim that consumers could be misled."  (*Id.* at 9.)  Second, Defendants argue that it would be clear to any reasonable consumer that "Total 0%" only refers to fat content because "nonfat" appears in close proximity to the "Total 0%" language on the front and top label of each container.  (*Id.* at 8–9.)

As to the background knowledge, experience and understanding of a reasonable consumer, Defendants make three arguments.  First, Defendants argue that consumers are accustomed to the use of percentages — like 0% and 2% — to denote the fat content of dairy products, and nothing else, such that a reasonable consumer would not likely believe that "Total

---

[15]  Under federal law, the packaging of food products must include a "Nutrition Facts" label setting forth certain nutritional information.  *See* 21 U.S.C. § 343(q) (providing that "food intended for human consumption" and "offered for sale" is "misbranded" unless packaging includes label providing the requisite nutrition information); 21 C.F.R. § 101.9 (providing that "[n]utrition information relating to food shall be provided for all products intended for human consumption and offered for sale unless an exemption is provided" and setting forth requirements for "Nutrition Facts" label).  The impetus for the "Nutrition Facts" label requirement was the 1990 enactment of the Nutrition Labeling and Education Act ("NLEA"), which was intended "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods."  *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009).  As a result of the NLEA, "specific, uniform disclosures . . . must be made on food labels" via "the ubiquitous 'Nutrition Facts' panel on packaged foods . . . set[ting] forth calories per serving, as well as the amount or percentage of fat, cholesterol, sodium, carbohydrates, protein, and select vitamins and minerals."  *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, No. 08-CV-1000, 2008 WL 1752455, at *2 (S.D.N.Y. Apr. 16, 2008), *aff'd*, 556 F.3d 114 (2d Cir. 2009).

0%" referred to anything other than fat content.[16]  (*Id.* at 1, 10.)  Second, Defendants claim no reasonable consumer would believe "Total 0%" refers to anything other than fat because there is no yogurt or dairy product of any kind in existence that is entirely devoid of calories.  (*Id.* at 1–2, 11.)  Defendants argue that "such a product would defy the laws of chemistry and nutrition" and could not possibly exist because "[a]ll pasteurized milk products contain naturally-occurring proteins and sugar (lactose) and, therefore, calories."  (*Id.* at 2.)  Third, Defendants argue that, because sugar and carbohydrates are measured in grams and calories are measured numerically, and not as percentages, no reasonable consumer would conclude the "Total 0%" language referred to sugar, carbohydrates or calories and indicated that the Total 0% Products contained "0% sugar," "0% carbohydrates" or "0% calories."[17]

In response, Plaintiffs assert that the likelihood that a reasonable consumer would be misled and interpret the "Total 0%" language as an indication that the Total 0% Products contained no calories, carbohydrates, or sugar presents an issue of fact that cannot be determined as a matter of law.  (Pls. Opp'n Mem. 5–7.)  Plaintiffs challenge Defendants' argument that percentages are typically used to denote the fat content of dairy products as missing the point because it ignores the fact that "Total" modifies "0%" in the language at issue.  (*Id.* at 7.)

---

[16]  On this point, Defendants assert that the pictures of other brands of yogurt included in the Amended Complaint, (*see* Am. Compl. 20–21), bolster Defendants argument that "0%" is commonly used to signify the fat content of yogurt products.  (Defs' Mem. 9 n.6.)

[17]  Defendants also contend that Plaintiffs take the erroneous position that their state law consumer protection claims are, categorically, not subject to dismissal because all such claims necessarily present fact issues.  (Defs. Mem. 2.)  Irrespective of whether Defendants' characterization of Plaintiffs' position is an accurate one, it is well-settled that, depending upon the particular allegations in each case, the reasonable consumer prong may either present fact issues or it may be capable of resolution as a matter of law.  *See Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26 ("[W]hether representations or omissions [are] . . . likely to mislead a reasonable consumer acting reasonably under the circumstances . . . may be determined as a matter of law or fact (as individual cases require).").

Plaintiffs also argue that, although Defendants claim it is clear from "obvious signals on the container" that "Total 0%" refers to the "nonfat" language, Defendants fail to identify these "obvious signals" or to explain how a reasonable consumer would be able to infer the connection between "Total 0%" and "nonfat" "without any statement or symbol on the packaging linking" these representations. (*Id.* at 8.) Plaintiffs further contend that Defendants' reliance on the Nutrition Facts set forth in the Total 0% Products' label is misplaced and amounts to an attempt by Defendants to "disclaim what their Products promise on the front label by the ingredient list on the back." (*Id.*) Plaintiffs also argue that, notwithstanding Defendants' claim that the Nutrition Facts label "prohibits as a matter of law any claim that consumers could be misled," (Defs. Mem. 9), the law is, in fact, "well-settled that small print and back-of-the-label disclosures do not insulate defendants from liability stemming from otherwise misleading affirmative statements because reasonable consumers should not be expected to scour a label to be sure prominent representations are not false," (Pls. Opp'n Mem. 15). The Court addresses Defendants' arguments as categorized above.

### 1.  Context of the "Total 0%" language

In assessing the likelihood that a reasonable consumer would be misled, it is necessary to consider not only the allegedly misleading statement but also the surrounding context based on the content of the entire label or advertisement at issue. The Second Circuit has recognized that, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial" and, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (considering both large and small print in advertisement in dismissing consumer protection

claims).

However, the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478–481 (S.D.N.Y. 2014) (holding that, where defendant's trademark and advertising "exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the products' back label did not, as a matter of law, preclude a reasonable consumer from being misled); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 463–65 (E.D.N.Y. 2013) (denying dismissal of claims against vitamin manufacturer and its corporate parent based on allegedly misleading statements that plaintiffs claimed created expectation that products were an immune system defense because, "[a]t this early stage of the litigation, it cannot be determined whether a disclaimer on the back of . . . [the] products, stating that it is 'not intended to diagnose, treat, or prevent any disease,' eliminates the possibility of a reasonable consumer being misled into thinking . . . [the allegedly misleading statements] signified a cold or flu prevention product").

Rather, the significance of a disclaimer depends upon factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement. *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287–88 (S.D.N.Y. 2014) (holding that disclosure did not, as a matter of law, cure alleged misrepresentation because "a reasonable consumer might . . . focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega–3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label"); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *9

(E.D.N.Y. Sept. 24, 2014) (holding that disclosures were "not conspicuous or prominent enough to necessarily cure" alleged misrepresentation and declining to grant dismissal on basis of reasonable consumer prong); *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (App. Div. 2008) (denying motion to dismiss deceptive business practices claim under N.Y. Gen. Bus. Law § 349 based on "the inadequate font size in which the [gift card's] dormancy fee provision was printed").

### A.   Nutrition Facts label

"[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [the defendant]'s labeling and marketing." *Ackerman v. Coca-Cola Co.*, No. 09- CV-0395, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010).   In *Ackerman*, the court denied the defendants' motion to dismiss a putative consumer class action complaint asserting claims under California, New York and New Jersey consumer protection laws where the plaintiffs alleged, *inter alia*, that the labeling and marketing of the beverage "vitaminwater" was misleading because it "bombard[s] consumers with a message of purported benefits, and draw[s] consumer attention away from the significant amount of sugar in the product" and "suggests that vitaminwater contains nothing but vitamins and water." *Id.* at *1–2, 5–6.   The defendants in *Ackerman* argued that no reasonable consumer could have been misled because the Nutrition Facts included on each bottle of vitaminwater provided accurate sugar-content information. *Id.* at *16.   In rejecting this argument, the court concluded that "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product [did] not eliminate the possibility that reasonable consumers may be misled" into believing that vitaminwater consisted solely of vitamins and water. *Id.*   In so holding, the court relied on a Ninth Circuit decision regarding the

allegedly deceptive packaging of food manufacturer Gerber's "Fruit Juice Snacks." *Id.* (citing

and discussing *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)). In *Williams*, the

district court granted the defendants' motion to dismiss on the grounds that no reasonable

consumer could be misled due to the inclusion of Nutrition Facts on the fruit snacks' label.

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937–39 (9th Cir. 2008). The Ninth Circuit

reversed and held that:

> Reasonable consumers should [not] be expected to look beyond
> misleading representations on the front of the box to discover the
> truth from the ingredient list in small print on the side of the box. . . .
> We do not think that the FDA requires an ingredient list so that
> manufacturers can mislead consumers and then rely on the
> ingredient list to correct those misinterpretations and provide a
> shield for liability for the deception. Instead, reasonable consumers
> expect that the ingredient list contains more detailed information
> about the product that confirms other representations on the
> packaging.

*Id.* at 939–40.

Here, although Defendants claim the Nutrition Facts "prohibit[] as a matter of law any

claim that consumers could be misled," (Defs. Mem. 9), the Court is persuaded by *Ackerman* and

*Williams* and agrees with Plaintiffs that the Nutrition Facts do not, as a matter of law, foreclose

the possibility that a reasonable consumer would likely be misled by Defendants' Total 0%

Products.[18]

---

[18] Defendants claim their position is not inconsistent with the relevant precedent
regarding the significance of Nutrition Facts information in the context of misbranded food
claims. (Defs. Reply Mem. in Support of Mot. to Dismiss ("Defs. Reply Mem.") 3–4, Docket
Entry No. 19-9.) Defendants claim this precedent stands for the proposition that a "nutritional
label cannot 'correct' flat-out misstatements elsewhere on the product." (*Id.* at 4.) Defendants
argue such is not the case here because they have not made a misrepresentation on one side of
the package that is corrected on the opposite side because "'FAGE Total 0%' is flanked by the
term 'nonfat,' and the non-fat quality of the product is *confirmed* by the nutritional facts." (*Id.* at
3.) Defendants claim that, because the "Total 0%" representation was in accordance with the
meaning Defendants claim a reasonable consumer would ascribe to it and was, therefore, literally
true, cases that stand for "the proposition that a manufacturer cannot use an ingredients list to

## B.    Proximity of clarifying language

Similarly, the Court cannot conclude, as a matter of law, that a reasonable consumer would not likely be misled based on the inclusion of clarifying language on the Total 0% Products' labels in proximity to the "Total 0%" representation.  Defendants argue that a reasonable consumer could not fail to appreciate that the "Total 0%" language was qualified by the "nonfat" language also included on the label.  The Court is not persuaded by Defendants' argument.

The Court finds the decision in *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) (hereinafter "*In re Frito-Lay*"), instructive. In *In re Frito-Lay*, the court considered the defendants' motion to dismiss misbranded food claims based on an allegedly misleading "All Natural" label on products containing genetically modified organisms ("GMOs").  *Id.* at *1, 13.  The defendants argued that no reasonable consumer would be misled by the "Made with ALL NATURAL ingredients" language on the packaging because this text was surrounded by an explanatory-ring of text stating "No MSG — No Preservatives — No Artificial Flavors."  *Id.* at *16.  Although the court determined that "these additional representations give context to the label's center pronouncement," the court nevertheless concluded that it could not "hold as a matter of law that they show no reasonable consumer would be deceived into believing the product is GMO-free . . . ."  *Id.*  Defendants' argument based on the "nonfat" language is strikingly similar to that of the defendants in *In re Frito-Lay* and the Court concludes it is similarly unavailing.

Defendants rely on a number of cases in which the reasonable consumer prong is

---

correct a flat-out misrepresentation" are distinguishable and do not apply here.  (*Id.* at 3–4.)  This argument, however, assumes the central issue — whether the "Total 0%" language is misleading — and is therefore not persuasive.

determined as a matter of law on the basis of context and the presence of a disclaimer or qualifying language. However, the Court does not find these cases persuasive since they are factually distinguishable. *See Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013); *Milich v. State Farm Fire & Cas. Co.*, 513 F. App'x 97 (2d Cir. 2013); *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279 (S.D.N.Y. 2011), *aff'd*, 714 F.3d 739 (2d Cir. 2013).

Defendants rely on *Fink* for the proposition that the context of the entire label warrants dismissal of the claims in this case. (Defs. Mem. 11–12.) *Fink* involved a deceptive sales practices claim under New York General Business Law section 349 brought by subscribers to the defendant's "Road Runner High Speed Online" Internet service. *Fink*, 837 F. Supp. 2d at 280. The plaintiffs' claim was based on statements in the defendant's advertisements that their high-speed internet service provided (1) an "always-on connection," (2) at a "blazing speed," (3) that was "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up," and (4) the "fastest, easiest way to get online." *Id.* at 283. The district court held that the "blazing fast" and "fastest, easiest way to get online" representations were non-actionable puffery. *Id.* As to the remaining representations, the plaintiffs alleged these statements were deceptive because the plaintiffs were blocked from using certain Internet applications and because the speed of their connections was slower than promised when they used certain applications. *Id.* The district court dismissed the claim based on these statements because, based on plaintiffs' allegations, the actual nature of the service was not contrary to the plaintiffs' alleged expectation. *Id.* at 283–84. That is, the allegations were not contrary to the "always-on connection" representation because the plaintiffs did "not allege . . . that their Internet connections as a whole were blocked" but only that certain applications were blocked and, similarly, plaintiffs' allegations about the speed of their connection were not "about the speed of

their *overall* Internet connections," rather plaintiffs "allege[d] only that their connection speeds were subpar with respect to a narrow subset of applications." *Id.* The court also concluded that the "representations as to the speed of [defendant's] Internet service are qualified by the phrase 'up to,' which would lead a reasonable consumer to expect that speeds could be less than the advertised '3x faster' and '100x faster' speeds." *Id.*

On appeal, the Second Circuit upheld the district court's dismissal and noted that one of the challenged advertisements contained "multiple disclaimers and explanatory language, including the statement, '[a]ctual speeds may vary.'" *Fink*, 714 F.3d at 741 n.2. The Second Circuit also noted that the "[p]laintiffs themselves concede that a promise to provide 'up to' a certain speed is not a guarantee that that speed will be achieved." *Id.* at 742 n.3. Unlike *Fink*, Plaintiffs here allege that their expectation as to the nature of the Total 0% Products is inconsistent with the actual nature of the Total 0% Products; Plaintiffs allege that they believed the Total 0% Products contained, *inter alia*, no sugar or calories, whereas the Total 0% Products did, in fact, contain both calories and sugar. While Defendants may take issue with whether the expectation Plaintiffs allege is one a reasonable consumer would likely share, the issue here, unlike in *Fink*, is not whether Plaintiffs' alleged expectation is actually inconsistent with the reality.

Defendants also rely on *Milich v. State Farm Fire & Cas. Co.*, where the Second Circuit upheld dismissal of the plaintiff's claim under New York General Business Law section 349 for failure to state a claim based on a workers' compensation endorsement to the plaintiff's homeowners' insurance policy. *Milich*, 513 F. App'x at 98–99. In *Milich*, the challenged endorsement stated that it covered "residence employees" who were defined, in part, as employees for whom workers' compensation benefits are required under the New York Workers'

Compensation Law. *Id.* at 98. The plaintiff claimed the endorsement was misleading on the basis of his ignorance of New York Workers' Compensation Law and the Second Circuit rejected this argument and dismissed the claim because "[a] policyholder who declines to read the readily accessible provisions referred to cannot claim to have been misled." *Id.* at 99. The alleged facts and circumstances of the transaction that formed the basis of the plaintiff's claim in *Milich* are distinguishable from the transaction at issue here for a variety of reasons. Primarily, whereas *Milich* involved a contract with patent disclaimers that the plaintiff contemplated in the context of purchasing insurance coverage, the instant case involves representations set forth on food product labels presented to consumers like Plaintiffs in grocery store aisles in order to induce food shoppers to buy yogurt. Given the many differences between the nature and circumstances of these transaction — and, consequently, the relative amount of time, research and deliberation a consumer is likely to invest prior to the point of sale in each case — a reasonable consumer would presumably approach these transactions quite differently.

## 2. Background knowledge, experience and understanding of reasonable consumers

The Court is also not convinced on the basis of Defendants' second category of arguments — those based on what Defendants claim are the background knowledge, experience and understanding of reasonable consumers — that these issues can be resolved as a matter of law at this juncture.

While Defendants' arguments — that consumers are accustomed to the use of percentages to denote the fat content of dairy products, are cognizant of the "laws of chemistry and nutrition" as they pertain to lactose, and are aware that calories, carbohydrates, and sugar are not typically reported as a percentage — may ultimately prevail, the allegations in this case do not present the type of patently implausible claim that warrants dismissal as a matter of law

based on the reasonable consumer prong. *Cf. McKinnis v. Kellogg USA*, No. 07-CV-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (dismissing misbranded food claim because plaintiffs' allegations were "not rational, let alone reasonable").

In *Kellogg USA*, the court dismissed claims pursuant to, *inter alia*, the California Consumers Legal Remedies Act alleging the packaging for the defendant's "Froot Loops" cereal was likely to mislead consumers into believing the cereal contained actual fruit. *Kellogg USA*, 2007 WL 4766060 at *1. The plaintiffs In *Kellogg USA* claimed that the "Froot Loops" box was likely to mislead consumers given: "(1) the use of the word 'Froot' in the name; (2) the depiction of brightly colored rings of cereal that [the] [p]laintiffs claim[ed] resemble[d] fruit; and (3) the depiction of illustrate[d] fruit around a banner stating "NATURAL FRUIT FLAVORS," which the plaintiffs claimed was in "disproportionately small type." *Id.* at *1. The court explained the basis for dismissal stating:

> First, the product's name is spelled F-R-O-O-T, and while this might be a fanciful take on the word F-R-U-I-T, it appears in the trademarked name of the cereal, not on its own or as a description of the actual ingredients of the cereal itself. No reasonable consumer would view the trademark "FROOT LOOPS" name as describing the ingredients of the cereal. Second, Plaintiffs' allegation that the cereal pieces themselves resemble fruit is not rational, let alone reasonable. The cereal pieces are brightly colored rings, which in no way resemble any currently known fruit. As a matter of law, no reasonable consumer would view them as depicting any fruit.

*Id.* at *4; *See also McKinniss v. Gen. Mills, Inc.*, No. 07-CV-2521, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) (dismissing similar claims brought by the same plaintiffs based on products including the cereals Berry Berry Kix, Trix and Fruity Cheerios because, among other things, "a reasonable consumer would be expected to note, upon pouring the contents of the packaging into a cereal bowl, that the product contained no actual fruit").

As the Honorable Jack Weinstein has recognized, at least in some cases, "[a] federal trial

judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled. *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world").

The Court declines to dismiss the Amended Complaint on the basis of the reasonable consumer prong.

### ii. Causation and damages elements[19]

Defendants assert that Plaintiffs' state law consumer fraud and deceptive trade practices claims should also be dismissed for failure to allege causation and damages. (Defs. Mem. 16–17.)

Defendants contend that Plaintiffs have not alleged causation because they have not established any connection between the "Total 0%" language, Plaintiffs' interpretation of that

---

[19] Although Defendants claim they are moving as to each state consumer protection claim on the basis of failure to allege causation and damages, (Defs. Mem. 3), Defendants have only cited to New York cases, applying New York law as to causation and damages, and have not cited any cases construing the consumer protection laws of the other five states under which Plaintiffs assert claims, (*id.* at 16–17). As a result, the Court construes Defendants' motion as challenging only the claims brought under New York state law on the basis of failure to allege causation and damages. The Court notes that, unlike the first prong — likelihood that reasonable consumers would be misled — where the laws of the states are similar, the relevant laws as to causation and damages are not the same in each of the six states. For example, while claims under New York General Business Law section 349 are governed by the pleading standard under Rule 8(a), *see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005), New Jersey Consumer Fraud Act claims are categorically governed by the heightened-pleading standard under Rule 9(b), *see Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007), and claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") may be subject to either Rule 8(a) or 9(b) depending on whether fraud is alleged, *see Laskowski v. Brown Shoe Co.*, No. 14-CV-1812, 2015 WL 1286164, at *7 (M.D. Pa. Mar. 20, 2015). Moreover, while reliance is not a required element of a section 349 claim under New York law, *Pelman*, 396 F.3d at 511, "justifiable reliance" is a required element of UTPCPL claims under Pennsylvania law, *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009).

language, and Plaintiffs' decision to purchase the Total 0% Products. (*Id.* at 17.) Plaintiffs assert causation is sufficiently pled because the Amended Complaint alleges, (1) that Plaintiffs would not have purchased the Total 0% Products had they been accurately labeled, and (2) that Plaintiffs paid a premium price for the Total 0% Products as a result of the misrepresentations on their labels, which led Plaintiffs to believe the Total 0% Products were preferable to other similar products. (Pls. Opp'n Mem. 17–18.)

Defendants assert that Plaintiffs have failed to allege damages because Plaintiffs' claimed damages are based on having paid a premium price for the Total 0% Products as a result of the "Total 0%" language and Defendants' related deceptive conduct. (Defs. Mem. 16.) Defendants contend that Plaintiffs' premium-price theory of damages is not cognizable and cannot form the basis of claims for consumer fraud and deceptive trade practices. (*Id.*) Defendants argue Plaintiffs' premium-price theory is also invalid because Plaintiffs allege a premium on the basis of the difference between the prices of the Total 0% Products — which Defendants claim are "high end" — and the prices of other, non-comparable yogurt products. (*Id.*)

In response, Plaintiffs argue that the premium-price allegations are sufficient to allege injury for purposes of Plaintiffs' claim under New York law. (Pls. Opp'n Mem. 16.) Plaintiffs assert that, because the less-onerous pleading standard under Rule 8(a) governs their section 349 claim, the premium-price allegations, in fact, surpass what is required. (*Id.* at 17.) Plaintiffs also contend that the alleged premium is based on comparisons between the Total 0% Products and other comparable, substantially similar yogurt products and that Plaintiffs are, in any event, not required to allege the exact amount of the premium at this stage. (*Id.*)

In order to state a claim for deceptive acts or practices under New York General Business Law section 349, a plaintiff must sufficiently allege: (1) that the act, practice, or advertisement

was consumer-oriented, (2) that the act, practice, or advertisement was misleading in a material respect, and (3) that the plaintiff was thereby injured. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000); N.Y. Gen. Bus. Law § 349. A plaintiff is not required to establish intent to mislead or justifiable reliance. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (stating § 349 does not require "that a plaintiff establish the defendant's intent to defraud or mislead" or "proof of justifiable reliance"). "[B]ecause § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices" and "does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), . . . ." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)); *see also Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (considering case law and discerning a categorical rule that New York General Business Law section 349 claims, "regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b)").

While "reliance is not an element of a section 349 claim," a plaintiff "must show that the defendant's 'material deceptive act' caused the injury." *Stutman*, 95 N.Y.2d at 29. Causation is adequately pled where a plaintiff alleges that the defendant's material deception caused the plaintiff to suffer a monetary loss. *See id.* ("[P]laintiffs allege that because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required. In other words, plaintiffs allege that defendant's material deception caused them to suffer a $275 loss. This allegation satisfies the causation requirement."). In the context of

claims involving consumable goods, "[t]o properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg*, 8 F. Supp. 3d at 480 (holding plaintiff adequately pled causation where complaint alleged plaintiff saw the alleged misrepresentations on the defendant's website and Facebook page and "was thus deceived into purchasing the products in question"); *cf. Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (App. Div. 2004) (dismissing section 349 claim brought by plaintiff who alleged he purchased hard drive based on manufacturer's misleading statements; complaint did not allege plaintiff saw the manufacturer's statements before he purchased hard drive and thus failed to plead causation).

The Amended Complaint alleges that Plaintiffs were exposed to Defendants' marketing campaign, that Plaintiffs read the Total 0% representation on the Total 0% Products' labels, and that Plaintiffs purchased the Total 0% Products at a premium price as a result of the misleading Total 0% representation. (Am. Compl. ¶¶ 64–67.) These allegations are sufficient to allege that Defendants' deceptive acts or practices caused Plaintiffs' injury. *See Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 169–70 (S.D.N.Y. 2014) (holding plaintiffs who brought section 349 claim based on their purchase of premium subscription to defendant's website sufficiently alleged that deceptive practices caused their injury because plaintiffs claimed they purchased defendant's services and incurred expenses as a result of having seen misleading statements on defendant's website); *see also Goldemberg*, 8 F. Supp. 3d at 480; *Stutman*, 95 N.Y.2d at 29.

The injury prong of a GBL section 349 claim is satisfied "by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman*, 2010 WL 2925955 at *23. In *Ackerman*, the court rejected the same argument — that premium-price allegations are insufficient to allege injury — that Defendants make in this case. *Id.* As here, the

defendants in *Ackerman* relied on *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593 (App. Div. 1998), and the court in *Ackerman* held that injury was adequately pled based on the allegation that "[d]efendants command a premium price for vitaminwater by distinguishing it from soft drinks (including their own), and by marketing and advertising it as a fortified beverage, a dietary supplement in liquid form." *Ackerman*, 2010 WL 2925955 at *23; *see also Orlander v. Staples, Inc.*, --- F.3d ---, 2015 WL 5438783, at *9 (2d Cir. Sept. 16, 2015) (noting that payment of "price premium" is relevant to section 349 claims because "it show[s] that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers").

Here, Plaintiffs allege that "[t]hrough the deceptive practice of marketing and selling their Products displaying 'Total 0%', Defendants have been able to command a premium price by deceiving consumers about the attributes of their yogurt and distinguishing themselves from similar products." (Am. Compl. ¶ 59.) The premium-price allegations in the Amended Complaint are therefore sufficient to allege injury under New York General Business Law section 349.

The Court, therefore denies Defendants' motion to dismiss as to Plaintiffs' consumer protection claims under New York law because Plaintiffs' allegations are sufficient to state a claim. The Court also denies Defendants' motion to dismiss as to Plaintiffs' consumer protection claims under New Jersey, Pennsylvania, California, Florida and Michigan state law because Plaintiffs have alleged a deceptive act or practice and Defendants failed to challenge causation or damages as to these claims.

#### d. Negligent misrepresentation under New York law[20]

Defendants argue that Plaintiffs fail to state a claim for negligent misrepresentation because no "special relationship" exists between the parties and, as such, Defendants did not owe Plaintiffs a duty of care. (Defs. Mem. 17–18.) Defendants also argue that Plaintiffs' negligent misrepresentation claim is subject to dismissal on the basis of Plaintiffs' failure to allege reliance. (*Id.* at 18–19.) Defendants argue further that Plaintiffs' negligent misrepresentation claim must be dismissed pursuant to the "economic loss doctrine" which, Defendants claim, precludes Plaintiffs from asserting a tort claim because Plaintiffs allege only economic loss and not personal injury or property injury.[21] (Defs. Mem. 19–20.) In response, Plaintiffs contend the allegations set forth in the Amended Complaint establish that, through the use of marketing, Defendants "sought to get Plaintiffs to rely on [Defendants'] unique and specialized knowledge of the [Total 0% Products] and their purported effect on health," and, Plaintiffs claim, this is

---

[20] Defendants claim they are moving as to Plaintiffs' negligent misrepresentation "claim." (Defs. Mem. 3, 17–20.) The Amended Complaint, however, asserts negligent misrepresentation claims under the laws of "[a]ll [s]tates and the District of Columbia." (Am. Compl. 55.) Because, as discussed above, Plaintiffs lack standing to assert negligent misrepresentation claims under the laws of all but six states, six negligent misrepresentations claims — under the laws of New York, New Jersey, Pennsylvania, California, Florida and Michigan — remain. Defendants have only cited to New York, Pennsylvania and California cases applying the laws of New York, Pennsylvania and California, respectively. (Defs. Mem. 17–20; Defs. Reply Mem. 7–8.) In fact, Defendants only cite to a single Pennsylvania case, (Defs. Mem. 19 (citing *Hunt v. U.S. Tobacco* Co., 538 F.3d 217 (3d Cir. 2008))), and a single California case, (*id.* (citing *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120 (N.D. Cal. 2014))), and neither decision involves, analyzes or even mentions a negligent representation claim. As a result, the Court construes Defendants' motion as challenging only the negligent misrepresentation claim under New York law.

[21] Defendants also argue Plaintiffs' negligent misrepresentation claim is subject to dismissal because Plaintiffs have not alleged a misrepresentation by Defendants. (Defs. Mem. 17.) Having determined the allegations are sufficient to satisfy the reasonable consumer element of Plaintiffs' consumer fraud and deceptive trade practices claims, the Court rejects this argument.

sufficient to give rise to a special relationship between Defendants and consumers including Plaintiffs.  (Pls. Opp'n Mem. 18–19.)  Specifically, Plaintiffs claim Defendants do not "passively sell food products by way of retailers and distributors," rather social media assumes a "pivotal role" in Defendants' marketing efforts and Defendants post advertisements that "actively encourage consumers to rely on Defendants' reputation and skill in warranting the quality of the Products."  (*Id.* at 18.)

To state a claim for negligent misrepresentation under New York law a plaintiff must allege that:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Hydro Inv'rs v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). Negligent misrepresentation claims are subject to the heightened pleading standard under Rule 9(b).  *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (stating negligent misrepresentation claims under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)"); *see also Schwartzco Enters.*, 60 F. Supp. 3d at 350 (noting that Second Circuit resolved issue of whether negligent misrepresentation claims are subject to 9(b) in *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005)). Because, as discussed below, Plaintiffs have not alleged a special relationship, the Court declines to address any of the other elements of Plaintiffs' negligent misrepresentation claims.

Under the "duty" element, "New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as

to approach that of privity.'" *Anschutz Corp.*, 690 F.3d at 114 (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993)). "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996). In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the "existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.* at 264. *Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.*; *see also Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (citing *Kimmell* for relevant factors).

Defendants argue that the parties were involved in nothing more than an arms-length commercial transaction, and there is no special, privity-like relationship between the parties capable of giving rise to a duty of care. (Defs. Mem. 17–18.) Plaintiffs argue that the Amended Complaint sufficiently alleges a special relationship between Defendants and Plaintiffs on the basis of an advertisement for the Total 0% Products that, according to Plaintiffs, was posted on Defendants' Facebook page. (Pls. Opp'n Mem. 19.) The specific advertisement that is the focal point of Plaintiffs' argument is alleged to depict a scale and, Plaintiffs argue "[t]he fact that Defendants used a scale, a well-known symbol of justice, underscores their intent to lure consumers to trust their Product claims. As such, a special relationship existed between the parties." (*Id.*)

Plaintiffs do not cite any cases in support of the proposition that a special relationship may be based on an advertisement directed at consumers and intended to induce reliance and courts have consistently held that advertisements alone are not sufficient. *See M&T Bank Corp. v. McGraw Hill Cos.*, 126 A.D.3d 1414, 1415, 1417–18 (N.Y. App. Div. 2015) (holding plaintiff failed to state a claim for negligent misrepresentation based on credit ratings issued by defendant, Moody's Investors Services, regarding creditworthiness of investment products purchased by plaintiffs, that ratings were included in materials used to market investment products to allegedly small group of potential investors was not sufficient to establish requisite special relationship); *McGill v. Gen. Motors Corp.*, 647 N.Y.S.2d 209, 210 (App. Div. 1996) (dismissing negligent misrepresentation claim for failure to allege special relationship; car manufacturer's allegedly deceptive statements in advertisements were not sufficient because "this kind of mass communication cannot establish 'privity' with unidentified members of the public"); *Austin v. Albany Law Sch. of Union Univ.*, 957 N.Y.S.2d 833, 844–45 (Sup. Ct. 2013) (dismissing negligent misrepresentation claim brought by graduates against law school based on alleged misrepresentations posted on defendant's website and included in its marketing materials used to attract prospective students because defendant "presented material to prospective students in a broad, generalized format, and there are no allegations that [defendant] fostered a special relationship with plaintiffs or provided them with personalized information"); *see also DeBlasio v. Merrill Lynch & Co.*, No. 07-CV-318, 2009 WL 2242605, at *5, 33 (S.D.N.Y. July 27, 2009) (dismissing negligent misrepresentation claim because allegedly misleading statements made on defendants' websites and in their advertisements did not give rise to special relationship).

In the Amended Complaint, Plaintiffs also allege a special relationship on the basis of

Defendants' unique expertise as the manufacturer of the Total 0% Products. The Amended Complaint states, "[a]s the sole manufacturer of their products, Defendants' are in the unique position of being able to provide accurate information about their products. Therefore there is a special and privity-like relationship between Defendants and Plaintiffs and other consumers." (Am. Compl. ¶ 193.) The requisite special relationship may not, however, be based solely on Defendants' status as the manufacturer of the Total 0% Products because, if this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case. *See Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at *1, 14 (S.D.N.Y. May 7, 2015) (dismissing negligent misrepresentation claim under New York law brought by purchasers of allegedly misbranded food, body care and home care products because plaintiffs failed to plead any cognizable special relationship with defendant manufacturer, stating defendant's "obligation to label products truthfully does not arise from any special relationship" and "[t]here is nothing approximating privity between the parties"); *cf. Hughes*, 930 F. Supp. 2d at 475 (denying motion to dismiss negligent misrepresentation claim and holding plaintiffs sufficiently alleged special relationship between consumers and vitamin manufacturer defendants because defendants' marketing held defendants out as having "special expertise regarding the purported health benefits" of supplement; labeling on supplement contained language suggesting medical or scientific backing for claims and defendants' website included section purportedly written by "expert" recommending daily use of supplement "because it is gentler on the stomach and because of all the clinical research that supports the use of this product"). Therefore, Plaintiffs' allegations are not sufficient to establish a special relationship between Plaintiffs and Defendants.

Plaintiffs' negligent misrepresentation claim under New York law is dismissed without prejudice. Plaintiffs are granted thirty (30) days to file an amended complaint.

### e. Unjust enrichment[22]

Defendants argue that Plaintiffs' unjust enrichment claim must be dismissed because such claims are only viable where no adequate legal remedy exists which is not the case here. (Defs. Mem. 20–21.) Defendants assert that Plaintiffs' unjust enrichment claim is based on the same allegations as those set forth in support of Plaintiffs' other claims and, as such, the unjust enrichment claim should be dismissed as duplicative of Plaintiffs' other claims. (*Id.* at 20.) Defendants also assert that, even if Plaintiffs were entitled to pursue an unjust enrichment claim, Plaintiffs fail to state such a claim because the allegations are insufficient to establish "an equitable obligation running from FAGE to Plaintiffs" or that Defendants have been unjustly enriched. (*Id.*)

In response, Plaintiffs argue that the allegations are sufficient to state a claim for unjust enrichment because the Amended Complaint alleges Defendants were enriched by their receipt of the monies Plaintiffs paid for the Total 0% Products, Plaintiffs made these purchases as a result of Defendants' deceptive conduct, and it would, therefore, be unjust to permit Defendants to retain such funds. (Pls. Opp'n Mem. 21–22.) Plaintiffs also argue that, under New York law, they are entitled to plead unjust enrichment as an alternative theory of liability. (*Id.* at 22–23.)

### i. Unjust enrichment under New York law

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1)

---

[22] Defendants claim they are moving as to Plaintiffs' unjust enrichment "claim." (Defs. Mem. 20–21.) However, while the Amended Complaint asserts unjust enrichment claims under the laws of "[a]ll [s]tates and the District of Columbia," (Am. Compl. 57), and six such claims remain, Defendants only cite to New York, Florida and California cases applying the laws of New York, Florida and California, respectively, in support of their motion as to the unjust enrichment claims. (Defs. Mem. 20–21.) Defendants offer no explanation for their failure to address New Jersey, Pennsylvania and Michigan cases. As a result, the Court construes Defendants' motion as challenging the unjust enrichment claims under New York, Florida and California laws only.

that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good

conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of

N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d

Cir. 2000)).  Where an unjust enrichment claim is premised on allegations of fraud, the

heightened pleading standard under Rule 9(b) applies.  *Silverman Partners, L.P. v. First Bank*,

687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) ("[U]njust enrichment must be pled with specificity

when the underlying acts are allegedly fraudulent.").  An unjust enrichment claim may, however,

be premised on deceptive conduct.  *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div.

2004) ("[P]laintiffs' allegations that Microsoft's deceptive practices caused them to pay

artificially inflated prices for its products state a cause of action for unjust enrichment.").

    Under New York law, "unjust enrichment is not a catchall cause of action to be used

when others fail . . . [and] [a]n unjust enrichment claim is not available where it simply

duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18

N.Y.3d 777, 790 (2012).  Rather, unjust enrichment is available:

> only in unusual situations when, though the defendant has not
> breached a contract nor committed a recognized tort, circumstances
> create an equitable obligation running from the defendant to the
> plaintiff.  Typical cases are those in which the defendant, though
> guilty of no wrongdoing, has received money to which he or she is
> not entitled.

*Id.* (dismissing unjust enrichment claim where it was based on same allegations as inverse

takings claim grounded in trespass).  Here, Plaintiffs have asserted a negligent misrepresentation

claim under New York law and Plaintiffs' unjust enrichment claim is based on the same

allegations as those set forth in support of the negligent misrepresentation claim.  (Am. Compl.

¶¶ 187–200, 201–205.)  Accordingly, because Plaintiffs' negligent misrepresentation and unjust

enrichment claims under New York law are based on the same allegations and Plaintiffs have not

shown how their unjust enrichment claim differs from their negligent misrepresentation claim, Plaintiffs' unjust enrichment claim under New York law is dismissed without prejudice. *See Weisblum v. Prophase Labs, Inc.*, No. 14-CV-3587, 2015 WL 738112, at *11 (S.D.N.Y. Feb. 20, 2015) (dismissing plaintiff's unjust enrichment claim under New York law as duplicative of negligent misrepresentation and fraud claims); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim as duplicative of, *inter alia*, negligent misrepresentation claim).

Plaintiffs' unjust enrichment claim under New York law is dismissed without prejudice. Plaintiffs are granted thirty (30) days to file an amended complaint.

### ii.   Unjust enrichment under Florida law

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). The Eleventh Circuit has held that, while "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist . . . that rule does not apply to unjust enrichment claims." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) (internal citation omitted), *rev'd in part on other grounds sub nom.*, *State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665 (11th Cir. 2014). The Eleventh Circuit explained that "[i]t is only upon a showing that an express contract exists [between the parties] that the unjust enrichment . . . count fails." *Id.* (quoting *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998)).

Therefore, because an express contract between the parties is not alleged, Plaintiffs are

not precluded from asserting a claim for unjust enrichment under Florida law and the unjust enrichment claim is not subject to dismissal as duplicative of Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").[23]  *See Mazzeo v. Nature's Bounty, Inc.*, No. 14-CV-60580, 2015 WL 1268271, at *5 (S.D. Fla. Mar. 19, 2015) (denying motion to dismiss unjust enrichment claim because "[t]he availability of Plaintiff's FDUTPA claim does not require dismissal of its unjust enrichment claim"); *Marty v. Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333, 1349 (S.D. Fla. 2014) (denying motion to dismiss unjust enrichment claim and rejecting argument that unjust enrichment claim was duplicative of state law consumer protection claims on basis of Eleventh Circuit holding in *State Farm*); *State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., Inc.*, No. 14-CV-2381, 2014 WL 7070832, at *2–3 (M.D. Fla. Dec. 15, 2014) (denying motion to dismiss unjust enrichment claim as duplicative of state law consumer protection claim).

---

[23]  Defendants rely on *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012), for the proposition that Plaintiffs' unjust enrichment claim must fail because Plaintiffs have an adequate remedy at law.  (Defs. Mem. 20.)  While there is conflicting precedent on the issue of whether the existence of an adequate legal remedy precludes a claim for unjust enrichment, the majority of decisions that post-date *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714 (11th Cir. 2011), construe the Eleventh Circuit's *State Farm* decision as settling the issue and establishing that unjust enrichment claims are available notwithstanding the existence of adequate legal remedies.  *See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013) (noting disagreement among Florida courts as to whether unjust enrichment claim may be asserted where adequate legal remedies exist and stating "[t]he Eleventh Circuit recently addressed this issue" in *State Farm* and established that only showing of express contract precludes unjust enrichment claim).  Indeed, Judge James Cohn, who issued the decision in *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012) on which Defendants rely, has since departed from the holding in *Guerrero* on the basis of *State Farm.  See Reilly v. Amy's Kitchen, Inc.*, No. 13-CV-21525, 2013 WL 9638985, at *7 (S.D. Fla. Dec. 9, 2013) (holding that Eleventh Circuit *State Farm* decision was controlling for purposes of motion to dismiss unjust enrichment claim as duplicative of claims under Florida Deceptive and Unfair Trade Practices Act, noting that, although holding was inconsistent with holding in *Guerrero v. Target Corp.*, neither party in *Guerrero* brought *State Farm* decision to court's attention).

Plaintiffs allege that Defendants' marketing and packaging of the Total 0% Products is deceptive and misleading as to the health and nutritional benefits of the Total 0% Products, and that Plaintiffs paid a premium price for the Total 0% Products as a result of Defendants' misleading and deceptive conduct.  (Am. Compl. ¶¶ 149–150, 201–205.)  Plaintiffs' allegations are sufficient to state a claim for unjust enrichment under Florida law.  *See Romano v. Motorola, Inc.*, No. 07-CV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (denying motion to dismiss putative consumer class action asserting FDUTPA and unjust enrichment claims, allegations that defendant engaged in deceptive conduct in designing and marketing Razr cellular phones were sufficient to state a claim for unjust enrichment, plaintiffs sufficiently alleged that they conferred a direct benefit on defendant notwithstanding that plaintiffs purchased phones from third-party retailers, defendant marketed phones directly to consumers and was directly benefitted by profits earned from sale of phones); *see also Marty*, 43 F. Supp. 3d at 1350–51 (holding allegations were sufficient to state a claim for unjust enrichment in putative consumer class action against brewer of domestic beer alleging beer's packaging contained misrepresentations that led consumers to believe beer was brewed in Germany and to pay premium price).  Therefore, Defendants' motion to dismiss the unjust enrichment claim under Florida law is denied.

### iii.   Unjust enrichment under California law

The elements of an unjust enrichment claim under California law are "receipt of a benefit and unjust retention of the benefit at the expense of another."  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (quoting *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881, 883 (Ct. App. 2000)).  California courts are divided as to the viability of unjust enrichment claims under California law.  *See, e.g.*, *Anderson v. U.S. Bank, N.A.*, No. 13-CV-636, 2014 WL

47087, at *8 (N.D. Cal. Jan. 6, 2014) ("Both California and federal courts of this district are divided as to whether there is an independent cause of action for restitution/unjust enrichment — some courts have declined to recognize such a cause of action, holding that it is merely a remedy that rests on a separate claim, while others have permitted it to proceed independently." (quoting *Park v. Welch Foods, Inc.*, No. 12-CV-06449, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26, 2013))); *see also* 55 Cal. Jur. 3d Restitution § 2: Unjust Enrichment ("While it is said that there is no separate cause of action in this state for unjust enrichment, that unjust enrichment is not a cause of action, just a restitution claim, some courts in this state have suggested the existence of a separate cause of action for unjust enrichment and . . . . [o]ther courts also refer to the 'unjust enrichment cause of action' in certain contexts.").  The California Supreme Court does not appear to have squarely addressed the issue of if and when an unjust enrichment claim is viable under California law and while some decisions dismiss unjust enrichment claims as duplicative of other statutory or common law claims or as invalid under California law, other decisions decline to dismiss unjust enrichment claims on these bases.[24]

---

[24]  *Compare In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014) (affirming dismissal of unjust enrichment claim because "[i]n light of the adequate legal remedies available, Plaintiffs cannot state a claim for unjust enrichment"), *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, No. 14-CV-02006, 2015 WL 510919, at *10 (N.D. Cal. Feb. 5, 2015) (dismissing unjust enrichment claim as duplicative), *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014) (dismissing unjust enrichment claim "[b]ecause it is, in fact, not a claim at all"), *and In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing unjust enrichment claim as duplicative), *with Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (setting forth elements of unjust enrichment claim, holding plaintiff's unjust enrichment claim was not susceptible to class treatment), *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1006 n.25 (9th Cir. 2013) ("The Supreme Court of California and California Courts of Appeal have recognized actions for relief under the equitable doctrine of unjust enrichment."), *Waldrup v. Countrywide Fin. Corp.*, No. 13-CV-8833, 2014 WL 4978437, at *5–6 (C.D. Cal. Oct. 6, 2014) (denying motion to dismiss unjust enrichment claim because plaintiff sufficiently alleged elements as delineated by Ninth Circuit in *Berger*), *Imber-Gluck v. Google, Inc.*, No. 14-CV-1070, 2014 WL 3600506, at *7–8 (N.D. Cal. July 21, 2014) (denying dismissal of unjust enrichment claim on

Given that the law is unsettled and because Defendants only cite to a single case on this issue, (Defs. Mem. 20 (citing *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070 (N.D. Cal. 2011))), and Plaintiffs do not cite any cases or otherwise address this issue, (Pls. Opp'n Mem. 21–23), the Court declines to dismiss Plaintiffs' unjust enrichment claim under California law. *See Cortina v. Goya Foods, Inc.*, No. 14-CV-169, 2015 WL 1411336, at *16–17 (S.D. Cal. Mar. 19, 2015) (noting "division in the law on the question of unjust enrichment" and denying motion to dismiss unjust enrichment claim because, "[g]iven this conflict [in the law], the Court declines to conclude that this claim is legally incognizable"). Defendants' motion to dismiss Plaintiffs' unjust enrichment claim under California law is therefore denied.

### f.  Defendants Fage Holdings and Fage Greece

Defendants have moved to dismiss the Amended Complaint as against Defendants Fage Holdings and Fage Greece for failure to state a cognizable claim as to these corporate entities. Defendants assert that the Amended Complaint refers to all three Defendants collectively using "group pleading" and fails to allege any particularized basis for naming either Fage Holdings or Fage Greece as Defendants. (Defs. Mem. 21–22.)  Defendants assert that Fage USA is the main United-States-based operating entity responsible for the manufacture and sale of Fage Total Greek yogurt in the United States.  (*Id.*)  Defendants also assert that Fage Holdings is a holding company for the stock of Fage's United-States-based subsidiaries and Fage Greece is a corporate subsidiary of Fage's global corporate parent and is responsible only for the manufacture and sale

---

basis of, *inter alia*, Ninth Circuit's analysis in *Berger v. Home Depot USA, Inc.*), *and In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042–43 (N.D. Cal. 2012) (denying motion to dismiss unjust enrichment claim because "a claim for unjust enrichment exists under California law when there is no contractual relationship between the parties").

of Fage products in Greece.[25]  (*Id.* at 21–22, 22 n.9.)  According to Defendants, Fage Greece has

no direct relationship with Fage USA and does not operate in the United States.  (*Id.* at 22.)

Defendants claim neither Fage Holdings nor Fage Greece has any responsibility for

manufacturing, marketing, promotion or sale of Fage Total yogurt.  (*Id.*)

Plaintiffs argue that dismissal of Fage Greece and Fage Holdings is not warranted

because the Amended Complaint alleges Defendants "operate as a single integrated and common

enterprise."  (Pls. Opp'n Mem. 24; Am. Compl. ¶ 32.)  Plaintiffs also assert that Defendants

have, themselves, failed to distinguish between each corporate entity and instead refer to

themselves collectively as "Fage" throughout Defendants' memorandum in support of the

motion to dismiss.[26]  (Pls. Opp'n Mem. 24.)

In order to state a plausible claim that a parent company may be held directly liable for

the acts of its subsidiary, a plaintiff must allege facts supporting an inference that the parent

company engaged in the conduct at issue, and general, conclusory allegations are not sufficient.

*See Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2014 WL 815244, at *18–19

(S.D.N.Y. Mar. 3, 2014) (granting corporate parent company's motion to dismiss state law

consumer protection claims where parent company's liability was "premised on indirect conduct

taken through its subsidiary" and complaint "merely offers general, conclusory allegations about

---

[25]  The Fage corporate structure according to Defendants, and as the Court understands it based on Defendants' various submissions, is as follows: Fage USA is the wholly-owned subsidiary of Fage Holdings which is, in turn, the wholly-owned subsidiary of Fage Luxembourg S.A. (Defs. Rule 7.1 Corp. Disclosure Statement, Docket Entry No. 7; Defs. Mem. 21–22.) Prior to a corporate restructuring that began in 2012, Fage Greece was the Fage global corporate parent. (Defs. Mem. 22 n.9.)  Since this restructuring, Fage Greece is a subsidiary of Fage International S.A.  (*Id.*)

[26]  Plaintiffs state that if, upon discovery, they determine any of the corporate Defendants has no direct relationship to operations relating to the Total 0% Products at issue, Plaintiffs will not oppose dismissal of those Defendants.  (Pls. Opp'n Mem. 24 n.11.)

[parent's] involvement" in challenged conduct); *In re Frito-Lay*, 2013 WL 4647512 at *5–6 (granting corporate parent's motion to dismiss for failure to state a claim in context of putative class action based on allegedly misleading marketing and packaging of food products manufactured and sold by parent company's wholly-owned subsidiary, although plaintiffs alleged that parent company "market[ed], advertise[d] and distribute[d]" the products at issue, no specific facts were plead in support of this allegation); *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) ("Although Plaintiffs argue that they alleged that the Parent Companies were directly involved in the alleged conspiracy, a reading of the complaint indicates otherwise. The complaint alleges direct involvement of the Parent Companies by way of generic references to 'defendants.'  This approach is insufficient." (internal citations omitted)).

Here, Plaintiffs have alleged only that Fage USA, Fage Greece and Fage Holdings "operate as a single integrated and common enterprise" without setting forth any specific facts to support this allegation.  (Am. Compl. ¶ 32.)  Plaintiffs have, therefore, failed to state a claim against Fage Greece and Fage Holdings.  *Dumont*, 2014 WL 815244 at *18–19; *In re Frito-Lay*, 2013 WL 4647512 at *5–6.

Defendants' motion to dismiss the Amended Complaint as against Defendants Fage Holdings and Fage Greece is granted.  Plaintiffs are granted thirty (30) days' leave to file an amended complaint alleging facts sufficient to state a claim against Fage Greece or Fage Holdings.

## IV.  Conclusion

For the foregoing reasons, the Court denies Defendants' motion to transfer venue to the Northern District of New York and grants in part and denies in part Defendants' motion to

dismiss. The Court *sua sponte* dismisses Plaintiffs' claims on behalf of John Doe and Jane Doe as class representatives for Georgia and Texas, respectively. The Court grants Defendants' motion to dismiss: (1) Plaintiffs' negligent misrepresentation and unjust enrichment claims under the laws of the District of Columbia and all states other than New York, New Jersey, Pennsylvania, California, Florida and Michigan; (2) Plaintiffs' negligent misrepresentation claim under New York law; (3) Plaintiffs' unjust enrichment claim under New York law; and (4) the Amended Complaint as against Defendants Fage Holdings and Fage Greece. The Court denies Defendants' motion to dismiss: (1) Plaintiffs' consumer protection claims under New York, New Jersey, Pennsylvania, California, Florida and Michigan state laws and (2) Plaintiffs' unjust enrichment claims under Florida and California law. Plaintiffs are granted thirty (30) days' leave to file an amended complaint as specified in this Memorandum and Order.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 22, 2015
Brooklyn, New York