**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

—————————————————————

| | |
|---|---|
| **ALLAN CHANG, ROSALIE MAYES,** **REBECCA STARR, TERESA M. COHEN,** **KENNETH LEIBOWITZ, GILBERT MENDEZ,** **SHARON MANIER, ANDREA NEAL,** **BRITTANEE JACKSON, and JAMES MANIER,** on behalf of themselves and others similarly situated | Case No.:  14-cv-3826 |
| **Plaintiffs,** | **SECOND AMENDED CLASS** **ACTION COMPLAINT** |
| **v.** | |
| **FAGE USA DAIRY INDUSTRY, INC.,** | <u>**JURY TRIAL DEMANDED**</u> |
| **Defendant.** | |

—————————————————————

This Second Amended Class Action Complaint against Defendant, FAGE USA DAIRY INDUSTRY, INC., a New York corporation, (herein, "Defendant") is brought by consumers residing in New York, New Jersey, Pennsylvania, California, Florida, and Michigan (herein, "Plaintiffs") – individually and on behalf of others similarly situated, alleging violations of the following types in the states in which the named Plaintiffs reside: (1) state consumer protection statutes, (2) negligent misrepresentation, and (3) unjust enrichment claims (collectively, the "Classes"). The allegations in this Complaint are based on the personal knowledge of each of the Plaintiffs as to themselves, and on information and belief as to all other matters.

1

## INTRODUCTION

1.      Product labels have occupied an important role in assisting consumers in making healthy and informed food choices.

2.      Against this backdrop, with consumers demanding healthy options that fit their dietary and nutritional needs, Defendant markets its Fage® Total Greek Yogurt products (herein referred to as the "Products," as such term is defined in Paragraph 28 below) as the "#1 Yogurt in Greece." Defendant manufactures, markets and sells the Products all across the United States. The Products purchased by Plaintiffs are sold under Defendant's "Total 0%" product line and come in various flavors.

3.      As part of its extensive and comprehensive nationwide marketing campaign, Defendant actively promotes the naturalness and health benefits of its Products and misleads consumers about its yogurt ingredients through the Product packaging, the website www.usa.fage.eu  and social media outlets such as Facebook and Twitter. Specifically, Defendant prominently displays the phrase "Total 0%" on the top and front of the Product packaging without providing any context as to what the 0% represents.

4.      Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, cholesterol or any other content which a consumer may believe is unhealthy. Defendant does so by attempting to use similar marketing campaigns as Coke Zero and Pepsi Max, who also display "Zero" or "0" on their Products to indicate that the products are sugar-free or calorie-free. Defendant's Products typically contain about 16 grams of sugar per container, which is equivalent to 4 packets of sugar and is about as healthy as eating a Nestle Fudge ice cream bar, which contains 15 grams of sugar per serving. Defendant's Products do not contain 0% of sugar, the main cause of obesity in America. (*See* Gary Taubes, *Is Sugar Toxic*, New York Times, Apr. 13, 2011,

available at http://www.nytimes.com/2011/04/17/magazine/mag-17Sugar-t.html?pagewanted=all).

5.      Due to Defendant's marketing campaigns, consumers are led to believe that its Products are healthier than cookies when in reality, they contain more sugar than regular cookies (*See* Paragraph 60 below). Defendant purposely misleads the public because it wants the public to think that the "Total 0%" means no sugar or calories when consumers are shopping in supermarket aisles and only see the "Total 0%," and not the fine print that shows how unhealthy and full of sugar the Products are.

6.      Plaintiff and Class members reviewed Defendant's misleading marketing and Product packaging, reasonably relied in substantial part on the labels and were thereby deceived in deciding to purchase the Products for a premium price (as described in Paragraph 62 below).

7.      Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all other similarly situated persons in the states in which Plaintiffs reside, who from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale any of Defendant's Products displaying "Total 0%" on its packaging.

8.      During the Class Period, Defendant manufactured, marketed and sold the Products throughout the United States. Defendant purposefully misrepresented and continues to misrepresent to consumers that the Products are healthier than they are by prominently displaying "Total 0%" on its packaging.

9.      Defendant's actions constitute violations of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(a)(1) (21 U.S.C. 343(a)(1)) and New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well as those similar deceptive and unfair practices and/or consumer protection laws in the states in which Plaintiffs reside.

10.     Defendant violated statutes enacted in New York, New Jersey, Pennsylvania,

California, Florida and Michigan that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

    a)  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
    b)  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
    c)  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.*
    d)  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;* California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
    e)  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;* and
    f)  Michigan Consumer Protection Act, § § 445.901, *et seq.*

11.      Defendant's misbranding is intentional. As a direct result of Defendant's unlawful and deceptive sales practices, the Fage® brand has become one of the best-selling brands of Greek yogurt in the United States with a sales revenue in 2012 of $550 million. Defendant has collected hundreds of millions of dollars from the sale of its Products that it would not have earned if it were not for the "Total 0%" product packaging and marketing campaign. While simultaneously marketing its Products as a healthy alternative, Defendant deceived the Plaintiffs and other consumers nationwide by misrepresenting the 0% on the Products.

## JURISDICTION AND VENUE

12.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13.      The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the Unites States Constitution.

14.      The Court has personal jurisdiction over Defendant because its Products are

advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

15.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff CHANG is a citizen of New York, he resides in this District, and purchased the Products from Defendant in this District. Moreover, Defendant distributed, advertised, and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

### New York Plaintiff

16.    Plaintiff ALLAN CHANG is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Queens County. Within the past year and a half, Plaintiff CHANG has purchased Fage® Total Greek yogurt for personal consumption within the State of New York. Plaintiff CHANG has purchased the Products from stores located in Queens County, New York, including but not limited to Duane Reade, Stop & Shop and Veggie Monster in Queens County, New York. Plaintiff CHANG has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff CHANG purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff CHANG did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or

other content he deemed unhealthy. Plaintiff CHANG would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had he known that Total 0% only referred to fat content. Plaintiff CHANG was reasonably misled by Defendant's mischaracterization of the contents because the "Total 0%" label made the products appear healthier than they were. Plaintiff CHANG suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However, he would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent the price premium, so long as Defendant engages in corrective advertising.

**New Jersey Plaintiff**

17.     Plaintiff ROSALIE MAYES is, and at all times relevant hereto has been, a citizen of the State of New Jersey and resides in Camden County, New Jersey. Within the past two years, Plaintiff MAYES has purchased Fage® Total Greek yogurt for personal consumption within the State of New Jersey. Plaintiff MAYES purchased the Products from stores located throughout New Jersey, including Shoprite and Walmart. Plaintiff MAYES has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff MAYES purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff MAYES did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content she deemed unhealthy. Plaintiff MAYES would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had she known that Total 0% only referred to fat content. Plaintiff MAYES was reasonably misled by Defendant's mischaracterization of the contents because the "Total 0%" label made the products appear healthier than they were. Plaintiff MAYES suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However,

she would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent the price premium, so long as Defendant engages in corrective advertising.

**Pennsylvania Plaintiff**

18.     Plaintiff REBECCA STARR is, and at all times relevant hereto has been, a citizen of the State of Pennsylvania and resides in Allegheny County, Pennsylvania. Plaintiff STARR has purchased Fage® Total Greek yogurt for personal consumption within the State of Pennsylvania during the Class Period. Plaintiff STARR purchased the Products at a premium price from various local stores located throughout Pennsylvania. Plaintiff STARR has purchased the Products in various flavors, sizes and product lines as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff STARR purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff STARR did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content she deemed unhealthy. Plaintiff STARR would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had she known that Total 0% only referred to fat content. Plaintiff STARR was reasonably misled by Defendant's mischaracterization of the contents because the "Total 0%" label made the products appear healthier than they were. Plaintiff STARR suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However, she would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent the price premium, so long as Defendant engages in corrective advertising.

**Florida Plaintiffs**

19.     Plaintiff TERESA M. COHEN is, and at all times relevant hereto has been, a citizen of the State of Florida and resides in Palm Beach County, Florida. Within the past two years, Plaintiff COHEN has purchased Fage® Total Greek yogurt for personal consumption within

the State of Florida. Plaintiff COHEN purchased the Products from stores located throughout Florida such as Publix and Sam's Club. Plaintiff COHEN has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff COHEN purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff COHEN did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content she deemed unhealthy. Plaintiff COHEN would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had she known that Total 0% only referred to fat content. Plaintiff COHEN was reasonably misled by Defendant's mischaracterization of the contents because the "Total 0%" label made the products appear healthier than they were. Plaintiff COHEN suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However, she would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent the price premium, so long as Defendant engages in corrective advertising.

20.     Plaintiff KENNETH LEIBOWITZ is, and at all times relevant hereto has been, a citizen of the State of Florida and resides in Broward County, Florida. Plaintiff LEIBOWITZ has purchased Fage® Total Greek yogurt for personal consumption within the State of Florida during the Class Period. Plaintiff LEIBOWITZ purchased the Products from various stores located throughout Florida, including Publix, Winn-Dixie and Albertson's. Plaintiff LEIBOWITZ has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff LEIBOWITZ purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff LEIBOWITZ did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content he deemed unhealthy. Plaintiff

8

LEIBOWITZ would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had he known that Total 0% only referred to fat content. Plaintiff LEIBOWITZ was reasonably misled by Defendant's mischaracterization of the contents because the "Total 0%" label made the products appear healthier than they were. Plaintiff LEIBOWITZ suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. Plaintiff LEIBOWITZ particularly relied on Defendant's false and misleading representations regarding the Total 0% claims on the Products as he is diabetic.

**California Plaintiffs**

23. Plaintiff GILBERT MENDEZ is, and at all times relevant hereto has been, a citizen of the State of California and resides in Ventura County, California. Plaintiff MENDEZ has purchased Fage® Total Greek yogurt for personal consumption within the State of California during the Class Period. Plaintiff MENDEZ purchased the products from stores located throughout California, including Von's Grocery and Ralphs Grocery in Ventura County. Plaintiff MENDEZ has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff MENDEZ purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff MENDEZ did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content he deemed unhealthy. Plaintiff MENDEZ would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had he known that Total 0% only referred to fat content. Plaintiff MENDEZ was reasonably misled by Defendant's mischaracterization of the contents because the "Total 0%" label made the products appear healthier than they were. Plaintiff MENDEZ suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. Plaintiff MENDEZ particularly relied on Defendant's

false and misleading representations regarding the Total 0% claims on the Products as he is diabetic.

24.     Plaintiff SHARON MANIER is, and at all times relevant hereto has been, a citizen of the State of California and resides in Riverside County, California. Within the past two years, Plaintiff MANIER has purchased Fage® Total Greek yogurt for personal consumption within the State of California. Plaintiff MANIER purchased the Products from stores located throughout California, including Costco in Moreno Valley. Plaintiff MANIER has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff MANIER purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff MANIER did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content she deemed unhealthy. Plaintiff MANIER would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had she known that Total 0% only referred to fat content. Plaintiff MANIER was reasonably misled by Defendant's mischaracterization of the contents, as the "Total 0%" label made the products appear healthier than they were. Plaintiff MANIER suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However, she would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent the price premium, so long as Defendant engages in corrective advertising.

25.     Plaintiff ANDREA NEAL is, and at all times relevant hereto has been, a citizen of the State of California and resides in Riverside County, California. Since January 2014, Plaintiff NEAL has purchased Fage® Total Greek yogurt for personal consumption within the State of California. Plaintiff NEAL purchased the Products from stores located throughout California,

including the Stater Brothers supermarket in Riverside County. Plaintiff NEAL has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff NEAL purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff NEAL did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content she deemed unhealthy. Plaintiff NEAL would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had she known that Total 0% only referred to fat content. Plaintiff NEAL was reasonably misled by Defendant's mischaracterization of the contents, as the "Total 0%" label made the products appear healthier than they were. Plaintiff NEAL suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However, she would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent the price premium, so long as Defendant engages in corrective advertising.

26.     Plaintiff BRITTANEE JACKSON is, and at all times relevant hereto has been, a citizen of the State of California and resides in Riverside County, California. Within the past two years, Plaintiff JACKSON has purchased Fage® Total Greek yogurt for personal consumption within the State of California. Plaintiff JACKSON purchased the Products from stores located throughout California, including Costco in Moreno Valley. Plaintiff JACKSON has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff JACKSON purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff JACKSON did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content she deemed unhealthy. Plaintiff

11

JACKSON would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had she known that Total 0% only referred to fat content. Plaintiff JACKSON was reasonably misled by Defendant's mischaracterization of the contents because the "Total 0%" label made the products appear healthier than they were. Plaintiff JACKSON suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However, she would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent the price premium, so long as Defendant engages in corrective advertising.

**Michigan Plaintiff**

27.     Plaintiff JAMES MANIER is, and at all times relevant hereto has been, a citizen of the State of Michigan and resides in Wayne County, Michigan. Since February 2014, Plaintiff MANIER has purchased Fage® Total Greek yogurt for personal consumption within the State of Michigan. Plaintiff JAMES MANIER purchased the Products from stores located throughout Michigan including Walmart in Belleville. Plaintiff JAMES MANIER has purchased the Products in various flavors and sizes as they have become available. The purchase price ranged from $1.79 (or more) for a 5.3 oz. container to $7.99 for a 35.3 oz. container. Plaintiff MANIER purchased Fage® Greek yogurt relying on the "Total 0%" claim on its packaging. At the time of purchase, Plaintiff MANIER did not know that the term "Total 0%" did not refer to sugar, caloric content, carbohydrates, sodium or other content he deemed unhealthy. Plaintiff MANIER would not have purchased Fage® Total 0% Greek yogurt, or would have paid significantly less for the product, had he known that Total 0% only referred to fat content. Plaintiff MANIER was reasonably misled by Defendant's mischaracterization of the contents, as the "Total 0%" label made the products appear healthier than they were. Plaintiff MANIER suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein. However, he

12

would still be willing to purchase the current formulation of Fage® Total 0% Greek yogurt, absent

the price premium, so long as Defendant engages in corrective advertising.

28.      Plaintiffs have purchased Fage® Total Greek yogurt in the flavors listed below

(together, the "Products"):

| Fage Total 0% Products | Sugar Content (in grams) |
|---|---|
| Plain | 7 |
| Apple Cinnamon Raisins | 16 |
| Apple Cranberry | 17 |
| Blueberry Acai | 16 |
| Blueberry | 16 |
| Cherry Pomegranate | 16 |
| Cherry | 16 |
| Honey | 29 |
| Mango Guanabana | 17 |
| Orange Cinnamon | 17 |
| Passion Fruit Clementine | 15 |
| Peach | 16 |
| Raspberry | 16 |
| Strawberry | 16 |
| Strawberry Goji | 16 |

**Defendant**

29.      Defendant FAGE USA DAIRY INDUSTRY, INC., is a domestic corporation with

its principal place of business located at 1 Opportunity Drive, Johnstown Industrial Park,

Johnstown, NY 12095.

30.      Defendant manufactured, distributed, advertised, marketed, and sold the Products

under the "Total 0%" product line to hundreds of thousands of consumers nationwide.

## FACTUAL ALLEGATIONS

31.      Food manufacturers are required to comply with federal and state laws and

regulations that govern the labeling of food products. These regulations include the FDCA and its

labeling regulations, particularly those set forth in 21 C.F.R. § 101. In addition to these federal

requirements, states have enacted a number of state and local laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.

32.     Defendant manufactures, markets and sells various Greek yogurt products throughout the United States under the brand Fage®, including the Products in the "Total 0%" product line. The Products are distributed to approximately 280 supermarket chains, with approximately 75,000 retail outlets in over 35 countries. They are also sold to bakeries, confectionaries, dairy stores and other convenience stores. Specifically, the Products are available at most supermarket chains and other retail outlets throughout the United States, including but not limited to Walmart, Costco, Target, Shoprite, Pathmark, Walgreens, and Duane Reade.

### Defendant Makes Unlawful Total 0% Claims

33.     Defendant deceptively packages, advertises and markets its Products (as defined in Paragraph 28 above) using the term "Total 0%," a term that is false and misleading given its vagueness.

34.     Defendant purposefully uses marketing campaigns similar to those used by Coke Zero and Pepsi Max, who display "Zero" and "0," respectively, on their Products to indicate that they are sugar-free or calorie-free. Defendant prominently displays "Total 0%" on the top and front of the Product packaging without providing any context as to what the 0% represents. Defendant intends to create consumer confusion by causing consumers to impute any meaning to the 0%, including but not limited to the representation that the Products lack sugar, calories, carbohydrates, cholesterol, etc. As such, the labeling of "Total 0%" on the packaging, without additional immediate context, is false and misleading. Defendant purposely misleads the public because it willfully wants the public to think the 0% means no sugar, calories, or carbohydrates when consumers are shopping in supermarket aisles and only see the prominent "Total 0%" phrase, and not the fine print that shows how unhealthy and full of sugar the Products are.

14

35.     Defendant uses the term "Total 0%" on its Product packaging to make its Products appear healthier than other products and to increase sales and charge a premium.

36.     Defendant sells the Products using the false and deceptive claim "Total 0%," including but not limited to the following Products:

**Fage Greek Yogurt – Total 0%**

| Product | Label Violation/Misrepresentation |
|---|---|
| Plain | http://products.usa.fage.eu/fage-total-0-greek-yogurt-6-oz |
| Raspberry | http://products.usa.fage.eu/fage-total-0-raspberry-53-oz |
| Strawberry | http://products.usa.fage.eu/fage-total-0-strawberry-53-oz |
| Peach | http://products.usa.fage.eu/fage-total-0-peach-53-oz |
| Cherry | http://products.usa.fage.eu/fage-total-0-cherry-53-oz |
| Cherry pomegranate | http://products.usa.fage.eu/fage-total-0-cherry-pomegranate-53-oz |
| Blueberry | http://products.usa.fage.eu/fage-total-0-blueberry-53-oz |
| Honey | http://products.usa.fage.eu/fage-total-0-honey-53-oz |
| Blueberry Acai | http://products.usa.fage.eu/fage-total-0-blueberry-acai-53-oz. |
| Mango Guanabana | http://products.usa.fage.eu/fage-total-0-mango-guanabana-53-oz |
| Strawberry Goji | http://products.usa.fage.eu/fage-total-0-strawberry-goji-53-oz. |
| Apple Cinnamon Raisins | http://products.usa.fage.eu/fage-total-0-apple-cinnamon-raisins |
| Passion Fruit Clementine | http://products.usa.fage.eu/fage-total-0-passion-fruit-clementine |
| Apple Cranberry | http://products.usa.fage.eu/fage-total-0-apple-cranberry-53oz |

37.     Defendant prominently displays the number zero as a percentage (shown as "0%") on the top and front of its Product packaging without any indication as to what the value pertains to. See exemplar labels below:









38.     As shown above, Plaintiffs and the Classes are left to guess the meaning of the

"0%" since Defendant intentionally fails to provide any context.

39.     It is unclear what the number zero on the front label of Defendant's Product

packaging refers to, as it could be imputed to refer to any of the nutrients, and reasonable consumers may attach any desirable meaning, or combination thereof, to the number zero, as reasonable consumers do with the number zero on other food and beverage products. For instance, the number zero similarly appears on popular beverage products such as Pepsi Max to indicate that the product contains no calories, carbohydrates or sugar. See exemplar label below:



40.     Similarly, Coca Cola prominently displays "**Zer**0" on the front label of its Coca Cola Zero product to indicate that it lacks calories or sugar. See exemplar label below:



41.     Plaintiffs and Class members have been exposed to numerous products which use a "0"/"Zero" marketing campaign to target health conscious consumers. These campaigns typically highlight that the products lack a substance that consumers would prefer to avoid such as added sugar, calories, or carbohydrates, among other things. (*See* **EXHIBIT A**, listing products seen by Plaintiffs that are marketed with similar "0"/"Zero" labeling where "0"/"Zero" refers to various qualities of a product.) Perhaps most similar to Defendant's labeling is that of RedBull® "Total Zero" energy drink. RedBull® labels its product "Total Zero" to indicate to consumers that the product contains no calories or carbohydrates. (*See* **EXHIBIT A**).

42.     Defendant is intentionally piggy-backing off of the "0"/"Zero" advertising campaigns which highlight the lack of calories, carbohydrates or sugar in products even though Defendant's Products, in fact, are packed with sugars and unhealthy calories and carbohydrates.

43.     Even though there have been yogurt competitors who previously used a vague 0% reference on their product packaging, such competitors have since revised their labeling to ensure that the 0% reference only relates to 0% milkfat.  For example, Chobani® previously marketed their Greek yogurts similarly to Fage:

 

44.    After Chobani® became aware that their vague "0%" caused confusion among consumers, they changed their product packaging to the following:





45.    As can be seen, Chobani® correctly ascertained that "0%," without context, caused confusion and immediately changed their packaging to minimize consumer confusion.  Such revision is best practices and a reasonable response of a responsible corporate citizen. Fage®, unfortunately, has refused to adapt, and continues to willfully cause confusion among consumers, thereby imposing a health risk to individuals who may be diabetic and believe

20

that the "0%" on Fage® yogurt containers means "0%" sugar.

46.     Defendant's other competitors also use a "0%" on their packaging but make clear that the value pertains to their products' fat content. See exemplar labels below:







47.     Particularly appropriate is that Stonyfield specifies that the 0% only relates to fat, but also concurrently discloses its caloric content up front so as not to avoid misleading consumers into believing that the "0%" could relate to calorie count. This disclosure fully informs the consumers so as to not cause them to believe they can eat as much yogurt as possible without the caloric debt.

48.     Defendant ensures an unfair advantage over competitors by failing to disclose to consumers in a clear manner whether its Products with a "0%" are free of fat, sugar, cholesterol, carbohydrates, and/or calories. Reasonable consumers are left to impute any meaning to the prominent "0%" on the Products. Further, given that the "0%" is preceded by the word "Total," a reasonable consumer is likely to believe that the Products contain neither fat, sugar, sodium, cholesterol, carbohydrates, calories or any other item required to be disclosed on the Product packaging.

49.     Although the fine print on the front and top label of the Products state "All Natural – Nonfat Greek Strained Yogurt," the disclosure is not placed in close enough proximity to the prominent "Total 0%" claim on the label, thus making it impossible for the reasonable

consumer to deduce that "Total 0%" refers only to the fat content in the Products. It is particularly difficult for consumers to reach this conclusion given that there are multiple 0%'s on the "Nutrition Facts" label of the Products. See exemplar label below:



50.      Looking at the Nutrition Facts label does not provide clarity because, as shown above, the Products contain various 0%'s on the Nutrition Facts panel. From Defendant's own detailed Product label in the 'Nutrition Facts" section of the Blueberry yogurt, there are 0  calories from fat, 0 grams of trans fat, 0% saturated fat, 0% total fat, 0% fiber, 0% cholesterol, 0% vitamin A and 0% iron. Without adding a qualifier to "Total 0%," Defendant is causing consumers to have to guess what exactly the term refers to.

51.      Based on Plaintiffs' consumer survey investigations conducted in 2015,

approximately 60% of the consumer pool tested believed that the phrase "Total 0%" suggested yogurt contained something other than solely 0% milkfat. Such high percentage of confused consumers demonstrates that Defendant's packaging is misleading to a reasonable consumer.

52.     Under the Federal Food Drug and Cosmetic Act (herein "FDCA"), the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

53.     Defendant's labeling, marketing and advertising of the Products violates various state laws. The following states' laws broadly prohibit the misbranding of food in language identical to that found in regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"):

a) <u>New York</u>: Pursuant to N.Y. AGM. LAW § 201, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular."

b) <u>New Jersey</u>: N.J.S.A. 24:5-17 provides in pertinent part that "a food shall…be deemed misbranded…[i]f its labeling is false or misleading in any particular."

c) <u>Pennsylvania</u>: Section 5729 of Pennsylvania's Food Safety Act states that "[a] food shall be misbranded: (1) If its labeling is false or misleading in any way."

d) <u>California</u>: California's Sherman, Food, Drug, and Cosmetic Law (the "Sherman Law"), Health & Saf. Code § 109875 *et seq.* provides that food is misbranded "if its

labeling is false or misleading in any particular." *Id.* at § 110660.

e) <u>Florida</u>: Under Fla. Stat. § 500.11 "[a] food is deemed to be misbranded: (a) [i]f its labeling is false or misleading in any particular…"

f) <u>Michigan</u>: "A person shall not…manufacture, sell, deliver, hold or offer for sale adulterated or misbranded food." Michigan Food Law, 289.5101.

54.     As Defendant's Products are unlawfully misbranded and sold pursuant to unfair and deceptive business practices, and there is no market value for an unlawful product, Plaintiffs and other similarly situated state Class members are entitled to seek damages equal to the aggregate purchase price paid for the Products during the Class period.

55.     Moreover, and in alternative, Defendant misled consumers into paying a premium price for Products that do not satisfy the minimum standards established by federal or state laws for those products and for inferior or undesirable ingredients or for products that contain ingredients not of the nature and quality represented. As a result, Plaintiffs and other members of the state Classes are entitled to damages in the amount of the difference between the premium purchase price charged for the Products and the true market value of the Products without the false and misleading "Total 0%" representation.

**<u>Defendant Makes Misrepresentations in Social Media</u>**

56.     In furtherance of its efforts to deceive consumers as to the contents of its Products, Defendant posted the following on its Facebook page along with a message stating "Tip the scales in your favor with FAGE Total 0%":



(*See* Facebook Timeline Photos at https://www.facebook.com/photo.php?fbid=10152536176366521&set=a.189004861520. 153045.82643606520&type=1&theater, as appeared on 5/29/14).

57.     The statements and images above mislead consumers into believing that Defendant's Products are healthier than other products. The Products do not "tip the scales" in the consumers' favor as Defendant claims. The Products will not cause consumers to lose weight given that they are high in sugar and caloric content. Had Plaintiffs known that the representations they relied on herein were false, misleading, deceptive and unfair, they would not have purchased the Products nor paid the premium price Defendant charged and continues to charge for them.

58.     Defendant is contributing to America's obesity problem when half of all Americans are overweight. If a consumer ate as much of the Products as they liked, they would likely become obese. See sugar content of the Products below:

| Fage Total 0% Products | Sugar Content (in grams) |
|---|---|
| Plain | 7 |
| Apple Cinnamon Raisins | 16 |
| Apple Cranberry | 17 |
| Blueberry Acai | 16 |
| Blueberry | 16 |
| Cherry Pomegranate | 16 |
| Cherry | 16 |
| Honey | 29 |
| Mango Guanabana | 17 |
| Orange Cinnamon | 17 |
| Passion Fruit Clementine | 15 |
| Peach | 16 |
| Raspberry | 16 |
| Strawberry | 16 |
| Strawberry Goji | 16 |

Except for the plain yogurt, all of the Products have more sugar than that in a Nestle Fudge ice cream bar (which has 15 grams of sugar). Eating a Fage® yogurt is no different (in fact, may be many times worse) than eating ice cream because its sugar content may be higher. The grams of sugar in an individual serving size of Defendant's Total 0% Honey yogurt is equal to approximately 7 or 8 packets of table sugar.

59.     A Twitter post by Defendant states "Leave those holiday cookies in the dust" and displays the following:



**FAGE** @FAGEUSA · Jan 2
Leave those holiday cookies in the dust & get 2014 off to a tasty start. bit.ly/FAGE
pic.twitter.com/5LNMfY5cC0
↩ Reply   ⇄ Retweet   ★ Favorite                                                    Flag

(*See* Twitter Photo at https://twitter.com/FAGEUSA/status/418819017986420736, as appeared on 5/29/14).

60.     The statements and images above mislead consumers into believing that the

Products are healthy and nutritious when the Products are not. One container of Defendant's

Honey flavored Total 0% Greek yogurt has more than twice as much sugar in a serving as Chips

Ahoy cookies or Oreo cookies. Except for the plain yogurt, all Products have more sugar than any

of the cookies listed below:

| | |
|---|---|
| Fage Total 0% Greek Yogurt – Honey | 29 |
| Nabisco Oreo Sandwich Cookies | 14 |

28

| | |
|---|---|
| Nabisco Oreo Double Stuf Cookies | 13 |
| Nabisco Chips Ahoy Cookies - Original | 11 |

61.     Consumption of the Products is not part of a healthier lifestyle as the Products have no health benefits and are comparable to eating junk food.

62.     Plaintiffs and the Class paid a premium price for Defendant's Products as follows:

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Total 0% | 5.3 oz. | $1.79 (or more) | $0.34 per oz. |
| Total 0% | 35.3 oz. | $7.99 | $0.23 per oz. |

Similar products (i.e., Greek-strained but no "Total 0%" claims) made by Defendant's competitor Dannon are sold at Shoprite as follows:

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Dannon Light & Fit – Greek Yogurt | 5.3 oz. | 10 for $10.00 | $0.19 per oz. |
| Dannon Light & Fit – Greek Yogurt | 32 oz. | $4.99 | $0.16 per oz. |

Similar products (i.e., Greek-strained but no "Total 0%" claims) made by Defendant's competitor Yoplait are sold at Shoprite as follows:

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Yoplait Fat Free – Greek Yogurt | 5.3 oz. | 10 for $10.00 | $0.19 per oz. |
| Yoplait Fat Free – Greek Yogurt | 32 oz. | $5.29 | $0.17 per oz. |

63.     Through the deceptive practice of marketing and selling its Products displaying "Total 0%", Defendant has been able to command a premium price by deceiving consumers about the attributes of its yogurt and distinguishing themselves from similar products. For example,

Defendant's Products command a 325% price premium per fluid ounce, over Dannon's Light and Fit yogurt, a competing brand. Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products, thereby increasing its own profits.

64.     The types of misrepresentations made herein would be considered by a reasonable consumer when deciding to purchase the Products.

65.     Plaintiffs did not know, and had no reason to know, that Defendant's Products were misbranded, and bore deceptive and misleading claims.

66.     For these reasons, Defendant's claims at issue in this Complaint are misleading and in violation of FDA guidelines and consumer protection laws of each of the states in which Plaintiffs reside, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States.

**Plaintiffs Were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

67.     Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the Products at issue. Defendant's misrepresentations are part of its systematic labeling practice.

68.     Plaintiffs and Class members were exposed to Defendant's extensive marketing campaign, including misrepresentations made via social media as stated herein. At the time of purchase, Plaintiffs and Class members read the labels on Defendant's Products, including labels with the "Total 0%" misbranding.

69.     Defendant's labeling claims was a material factor in Plaintiffs and Class members' decisions to purchase the Products. Based on Defendant's claims, Plaintiffs and Class members believed that the Products were a better and healthier choice than other available yogurt products.

70.     Plaintiffs and Class members did not know that the term "Total 0%" did not refer to sugar, calories, carbohydrates, sodium or other content deemed unhealthy by reasonable

30

consumers. Plaintiffs and Class members would not have bought the purchased Products had they known that the term "Total 0%" referred to fat content alone.

71.     Due to Defendant's failure to explicitly state what the "0%" on the front and top labels of its Products (as defined in Paragraph 28), Plaintiffs and Class members imputed several meanings to the representation including that the Products lacked sugar, calories, carbohydrates and/or fat. Plaintiffs and Class members were exposed to these misrepresentations prior to purchase and relied on them. As a result of such reliance, Plaintiffs and Class members thought that the Products were preferable to other similar products lacking such false and misleading statements. Plaintiffs and Class members would not have bought the purchased products had they not been misled by the "Total 0%" representation into believing that the Products were healthier than they were.

72.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that Defendant's Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

73.     Reasonable consumers would be, and were, misled in the same manner as Plaintiffs in that a reasonable consumer would not recognize that the term "Total 0%" in actuality referred exclusively to the fat content of the Product.

74.     As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States, including New York, New Jersey, Pennsylvania, California, Florida, and Michigan purchased the Products.

75.     Defendant's labeling, advertising, and marketing as alleged herein is false and misleading and designed to increase sales of the Products. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's representations in determining whether to purchase the Products

at issue. Plaintiffs and Class members would not have purchased Defendant's misbranded products had they known they were misbranded.

76.     Plaintiffs and the Class have been damaged by Defendant's deceptive and unfair conduct in that they purchased misbranded Products or paid prices they otherwise would not have paid had Defendant not misrepresented its Products' content.

## CLASS ACTION ALLEGATIONS

### The New York Class

77.     Plaintiff ALLAN CHANG seeks to represent a class consisting of the following Class (the "New York Class"):

> All New York residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

### The New Jersey Class

78.     Plaintiff ROSALIE MAYES seeks to represent a class consisting of the following Class (the "New Jersey Class"):

> All New Jersey residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

### The Pennsylvania Class

79.     Plaintiff STARR seeks to represent a class consisting of the following Class

(the "Pennsylvania Class"):

> All Pennsylvania residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

**The California Class**

80. Plaintiffs GILBERT MENDEZ, SHARON MANIER, ANDREA NEAL and BRITTANEE JACKSON, seek to represent a class consisting of the following Class (the "California Class"):

> All California residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

**The Florida Class**

81. Plaintiff TERESA M. COHEN and KENNETH LEIBOWITZ seek to represent a class consisting of the following Class (the "Florida Class"):

> All Florida residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

**The Michigan Class**

82.     Plaintiff JAMES MANIER seeks to represent a class consisting of the following

Class (the "Michigan Class"):

> All Michigan residents who made retail purchases of the
> Products during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate. Excluded from
> the Class are current and former officers and directors of
> Defendant, members of the immediate families of the officers
> and directors of Defendant, Defendant's legal representatives,
> heirs, successors, assigns, and any entity in which it has or has
> had a controlling interest. Also excluded from the Class is the
> judicial officer to whom this lawsuit is assigned.

83.     Plaintiffs reserve the right to revise the Class definition based on facts learned in

the course of litigating this matter.

84.     <u>Numerosity</u>: This action has been brought and may properly be maintained as a

class action against Defendant under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil

Procedure. While the exact number and identities of other Class members are unknown to

Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of

members in the New York Class, New Jersey Class, Pennsylvania Class, California Class, Florida

Class, and Michigan Class. Based on sales of the Products, it is estimated that each state Class is

composed of more than 10,000 persons. Furthermore, even if subclasses need to be created for

these consumers, it is estimated that each subclass would have thousands of members. The persons

in each of the state Classes are so numerous that joinder of all such persons is impracticable and

the disposition of their claims in a class action rather than in individual actions will benefit the

parties and the courts.

85.     <u>Common Questions Predominate</u>: Questions of law and fact arise from

Defendant's conduct described herein. Such questions are common to all Classes because each

34

Class member's claim derives from the same false, misleading and deceptive misconduct. The common questions of law and fact involved predominate over any questions affecting only Plaintiffs or individual Class members. Thus, proof of a common or single set of facts will establish the right of each member of the Classes to recover. Among the questions of law and fact common to the Classes are:

      a.  whether displaying "Total 0%" on the top and front label of the Products without additional context is deceptive and/or misleading as alleged herein;

      b.  whether labeling the Products with "Total 0%" renders the Products at issue misbranded under applicable law;

      c.  whether Defendant engaged in a marketing practice intended to deceive consumers by advertising its Products as "Total 0%";

      d.  whether Defendant engaged in a marketing practice intended to deceive consumers by advertising its Products as healthy and conducive to weight loss when they are full of sugar and calories;

      e.  whether Plaintiffs and other members of the state Classes are entitled to actual, statutory, or other forms of damages, and other monetary relief;

      f.  whether Defendant has been unjustly enriched at the expense of Plaintiffs and the other Class members by its misconduct;

      g.  whether Defendant must disgorge any and all profits t made as a result of its misconduct; and

      h.  whether Defendant should be barred from marketing its Products as "Total 0%," without a qualifier.

      86.    <u>Typicality</u>: Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful

conduct, as detailed herein. Plaintiffs purchased the Products during the Class Period and sustained similar injuries arising out of Defendant's conduct in violation of the consumer protection laws of each of the states in which Plaintiffs reside. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

87.     Adequacy: Plaintiffs will fairly and adequately represent and pursue the   interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

88.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid

the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

89.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

90.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

91.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions. Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**
**(Brought on Behalf of the New York Class)**

92.     Plaintiff CHANG realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

93.     Plaintiff CHANG brings this claim individually and on behalf of the other

similarly situated members of the New York Class for an injunction for violations of New York's

Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

94.     NY GBL § 349 provides that deceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state are unlawful.

95.     Any person who has been injured by reason of any violation of the NY GBL may

bring an action in his own name to enjoin such unlawful act or practice, an action to recover his

actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its

discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the defendant willfully or knowingly

violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

96.     Defendant has made and continues to make deceptive, false and misleading

statements concerning the health and nutritional value of its Products, namely manufacturing,

selling, marketing, packaging and advertising the Products with false and misleading statements

concerning the nature and quality of its content as alleged herein. Defendant prominently displays

a "Total 0%" on the front label of its Products without providing any context as to what the value

pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any

meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates,

calories, or any other content which a consumer may believe is unhealthy.

97.     The practices employed by Defendant, whereby Defendant advertised, promoted,

and marketed its Products using the term "Total 0%" are unfair, deceptive, and misleading and are

in violation of the N.Y. Agric. and Markets Law § 201 in that said Products are misbranded.

98.     That Defendant's Products include accurate statements on the ingredient list on a

different part of the label does not mean that the products are not misbranded, or that reasonable

consumers will not be misled.  *See Ackerman v. Coca-Cola*, No. 09-0395, 2010 WL 2925955   at

*16 (E.D.N.Y. July 21, 2010).

99.     The foregoing deceptive acts and practices were directed at consumers.

100.    Defendant should be enjoined from marketing its Products with the term "Total 0%" without a qualifier and should be enjoined from displaying a "0%" on the top and front label Product packaging and as part of its marketing campaigns without additional context as described above pursuant to NY GBL § 349.

101.    Plaintiff CHANG, individually and on behalf of all others similarly situated members of the New York Class, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
### (Brought on Behalf of the New York Class)

102.    Plaintiff CHANG realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

103.    Plaintiff CHANG brings this claim individually and on behalf of the other members of the New York Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349.

104.    Defendant has made and continues to make deceptive, false and misleading statements concerning the health and nutritional value of its Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning the nature and quality of its content as alleged herein. Defendant prominently displays a "Total 0%" on the front label of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any

39

meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, sodium or any other content which a consumer may believe is unhealthy.

105.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding its Products with "Total 0%" claims.

106.     The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed its Products using the term "Total 0%" are unfair, deceptive, and misleading and are in violation of the N.Y. Agric. and Markets Law § 201 in that said Products are misbranded.

107.     That Defendant's Products include accurate statements on the ingredient list on a different part of the label does not mean that the products are not misbranded, or that reasonable consumers will not be misled.  *See Ackerman v. Coca-Cola*, No. 09-0395, 2010 WL 2925955   at *16 (E.D.N.Y. July 21, 2010).

108.     The foregoing deceptive acts and practices were directed at consumers.

109.     Plaintiffs and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiffs and the other Class members suffered monetary losses associated with the purchase of the Products with a "Total 0%" on the top and front label Product packaging, *i.e.*, the purchase price of the Product and/or the premium paid by Plaintiffs and the Class for the Products.

## COUNT III

### NEW JERSEY CONSUMER FRAUD ACT,
### N.J.S.A.  56:8-1, *et seq.*
### (Brought on Behalf of the New Jersey Class)

110.     Plaintiff ROSALIE MAYES realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

111.     Plaintiff MAYES brings this claim individually and on behalf of the other

members of the New Jersey Class for violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

112. At all relevant times, Defendant was and is a "person[]," as defined by N.J.S.A. 56:8-1(d).

113. At all relevant times, Defendant's Products constituted "merchandise," as defined by N.J.S.A. 56:8-1(c).

114. At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "advertisement" set forth by N.J.S.A. 56:8-1(a).

115. At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

116. N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, …is declared to be an unlawful practice…"

117. Defendant has made and continues to make deceptive, false and misleading statements concerning the health and nutritional value of its Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its content as alleged herein. Defendant prominently displays a "0%" on the front label of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a consumer may believe is unhealthy.

118.     As described in detail above, Defendant uniformly misrepresented to Plaintiff MAYES and each member of the New Jersey Class, by means of its advertising, marketing and other promotional materials, and on the Products' labeling and packaging, the Products' nutritional content and dietary benefits.

119.     Defendant has therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in its manufacturing, advertising, marketing, selling and distribution of the Products. Defendant has therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

120.     As a direct and proximate result of Defendant's improper conduct, Plaintiff MAYES and other members of the New Jersey Class have suffered damages and ascertainable losses of moneys and/or property, by paying more for the Products than they would have, and/or by purchasing the Products which they would not have purchased, if the benefits of taking such Products had not been misrepresented, in amounts to be determined at trial.

## COUNT IV

**PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW,
73 Penn. Stat. Ann. § 201-1, *et seq.*
(Brought on Behalf of the Pennsylvania Class)**

121.     Plaintiff STARR realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

122.     Plaintiff STARR brings this claim individually and on behalf of the Pennsylvania Class.

123.     This is a claim for violation of the Pennsylvania Unfair Trade Practices and

Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(xxi).

124.     At all relevant times material hereto, Defendant conducted trade and commerce within the meaning of the UTPCPL.

125.     Plaintiff STARR and the Pennsylvania Class are "persons" as defined and construed under the UTPCPL.

126.     Defendant has made and continues to make deceptive, false and misleading statements concerning the health and nutritional value of its Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its content as alleged herein. Defendant prominently displays a "0%" on the front label of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a consumer may believe is unhealthy.

127.     Defendant's conduct as set forth herein constitutes and   unconscionable commercial practice  comprised of deceptive  acts  or practices  in  violation of the  UTPCPL, 73 P.S. § 201-2(xxi), including its practice of misleading consumers in the promotion, marketing, advertising, packaging and labeling of its Products as described herein. Specifically, Defendant is misbranding its Products by labeling them "Total 0%" without sufficient context.

128.     Defendant's conduct as set forth herein has been unfair in violation of the CFA because the acts or practices violate established public policy, and because the harm it causes to consumers in Pennsylvania greatly outweighs any benefits associated with those practices.

129.     As a direct and proximate result of Defendant's statutory violations, Plaintiff STARR and the Pennsylvania Class members have been injured and suffered actual and ascertainable losses of money as a result of Defendant's unconscionable, deceptive, and/or unfair

trade practices.

130.    As a result of the harm caused by Defendant's violation of Pennsylvania consumer protection law, Plaintiff STARR and Pennsylvania Class members are entitled to recover compensatory damages, punitive damages, and attorneys' fees as set forth below.

## COUNT V

**CONSUMER LEGAL REMEDIES ACT,**
**Cal. Civ. Code § 1750, *et seq.***
**(Brought on Behalf of the California Class)**

131.    Plaintiffs MENDEZ, MANIER, NEAL and JACKSON reallege and incorporate herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

132.    Plaintiffs MENDEZ, MANIER, NEAL and JACKSON bring this claim individually and on behalf of the other members of the California Class.

133.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

134.    Defendant's actions, representations and conduct has violated, and continues to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of lease of goods or services to consumers.

135.    Plaintiffs MENDEZ, MANIER, NEAL and JACKSON and the other California Class Members are "consumers" as that term is defined by the CLRA in Cal, Civ. Code § 1761(d).

136.    The Products that Plaintiffs MENDEZ, MANIER, NEAL and JACKSON and other members of the California Class purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

137.    Defendant has made and continues to make deceptive, false and misleading statements concerning the health and nutritional value of its Products, namely manufacturing,

selling, marketing, packaging and advertising the Products with false and misleading statements concerning its content as alleged herein. Defendant prominently displays a "0%" on the front label of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a consumer may believe is unhealthy.

138.    By engaging in the actions, misrepresentations and misconduct set forth in this First Amended Class Action Complaint, Defendant has violated, and continues to violate § 1770(a)(7) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(7), Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods by misbranding its Products labeled "Total 0%" without additional context.

139.    By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, §1770(a)(16) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(16), Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied on accordance with a previous representation when they have not.

140.    Plaintiffs MENDEZ, MANIER, NEAL and JACKSON request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and other members of the Class will continue to suffer harm.

141.    Pursuant to Cal. Civ. Code § 1782(a)(3), Plaintiffs MENDEZ, MANIER, NEAL

45

and JACKSON on behalf of themselves and all other members of the Class, seeks compensatory

damages, punitive damages and restitution of any ill-gotten due to Defendant's acts and  practices.

142. Plaintiffs MENDEZ, MANIER, NEAL and JACKSON also request on  their

behalf and the rest of the Class's behalf that this Court award them and reasonable attorneys'  fees

pursuant to Cal. Civ. Code § 1780(d).

143. Plaintiffs MENDEZ, MANIER, NEAL and JACKSON pray for relief as set forth

below.

## COUNT VI

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,,
Cal. Bus. Prof. Code § 17200, *et seq.*
(Brought on Behalf of the California Class)

144. Plaintiffs MENDEZ, MANIER, NEAL and JACKSON reallege and incorporate

herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as

if fully set forth herein.

145. Plaintiffs MENDEZ, MANIER, NEAL and JACKSON bring this claim

individually and on behalf of the other members of the California Class.

146. This cause of action is brought pursuant California's Unfair Competition Law,

Cal. Bus. & Prof. Code §§ 17200, *et seq*.

147. The UCL provides, in pertinent part: "Unfair competition shall mean and include

unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading

advertising …."

148. Defendant has made and continues to make deceptive, false and misleading

statements concerning the health and nutritional value of its Products, namely manufacturing,

selling, marketing, packaging and advertising the Products with false and misleading statements

concerning its content as alleged herein. Defendant prominently displays a "0%" on the front label

46

of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a consumer may believe is unhealthy.

149.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343(r)(1)(a), California Health & Safety Code § 110670, the CLRA, and other applicable law as described herein.

150.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers, and its failure to comply with the FDCA and parallel California labeling requirements and deceptive advertising concerning the nature and effectiveness of the Products offends the public policy advanced by the FDCA "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

151.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiffs MENDEZ, MANIER, NEAL and JACKSON and the California Class to believe that the Products were healthier than they were and that by way of the Total 0% claim, the Products were of a nature and quality which they were not. Defendant's packaging and marketing caused Plaintiffs to believe that its Total 0% claim was lawful, true and not intended to deceive or mislead the consumers.

152.    Plaintiffs MENDEZ, MANIER, NEAL and JACKSON and the California Class members are not sophisticated experts about the nature and quality of the ingredients in the Products. Plaintiffs MENDEZ, MANIER, NEAL and JACKSON and the California Class acted

reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

153.     Plaintiffs MENDEZ, MANIER, NEAL and JACKSON and the California Class lost money or property as a result of Defendants' UCL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations and deceptive Total 0% claims; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

## COUNT VII

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
### Fla. Stat. Ann. § 501.201, *et seq.*
### (Brought on Behalf of the Florida Class)

154.     Plaintiffs COHEN and LEIBOWITZ reallege and incorporate herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

155.     Plaintiffs COHEN and LEIBOWITZ brings this claim individually and on behalf of the Florida Class.

156.     Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes "unfair or deceptive acts or practices in the conduct or any trade or commerce" in Florida unlawful.

157.     Throughout the Class Period, by advertising, marketing, distributing, and/or selling the Products "Total 0%" to Plaintiff COHEN and LEIBOWITZ and other Florida Class members, Defendant violated the FDUTPA by engaging in false advertising concerning the composition of the Products.

158.     Defendant has made and continues to make deceptive, false and misleading

statements concerning the health and nutritional value of its Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its content as alleged herein. Defendant prominently displays a "0%" on the front label of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a consumer may believe is unhealthy.

159.    Plaintiffs COHEN and LEIBOWITZ and other Florida Class members seek to enjoin such unlawful acts and practices as described above. Each of the Florida Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that they will continue to be unable to rely on Defendant's representations as to "Total 0%".

160.    Had Plaintiffs COHEN and LEIBOWITZ and the Florida Class members known the misleading and/or deceptive nature of Defendant's claims, they would not have purchased the Products.

161.    Plaintiffs COHEN and LEIBOWITZ and the Florida Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as containing "Total 0%". Plaintiffs COHEN and LEIBOWITZ and the Florida Class members paid for Defendant's premium priced Products, but received Products that were worth less than the Products for which they paid.

162.    Plaintiffs COHEN and LEIBOWITZ and the Florida Class seek declaratory relief, enjoining Defendant from continuing to disseminate its false and misleading statements, actual damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

## COUNT VIII

### Michigan Consumer Protection Act, MCL §§ 445.901. *et seq.*
### (Brought on Behalf of the Michigan Class)

163.    Plaintiff JAMES MANIER realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

164.    Plaintiff MANIER brings this claim individually and on behalf of the Michigan Class.

165.    This cause of action is brought under the Michigan Consumer Protection Act, MCL §§ 445.901. *et seq.* (the "Michigan Act").

166.    Defendant's actions constitute unlawful, unfair, deceptive and fraudulent actions/practices as defined by the Consumer Protection Act, MCL §445.901, *et seq.* or the MCPA, as they occurred in the course of trade or commerce.

167.    As part of its fraudulent marketing practices Defendant engaged in a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce reliance by Plaintiff MANIER and the members of the Class. These false representations and omissions were uniform and identical in nature, and include, mislabeling its Products "Total 0%".

168.    Defendant has made and continues to make deceptive, false and misleading statements concerning the health and nutritional value of its Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its content as alleged herein. Defendant prominently displays a "0%" on the front label of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a

50

consumer may believe is unhealthy.

169. Had Plaintiff MANIER and the Michigan Class known the misleading and/or deceptive nature of Defendant's claims, they would not have purchased the Products. Defendant's acts, practices and omissions, therefore, were material to Plaintiffs' decision to purchase the Products at a premium price, and were justifiably relied upon by Plaintiffs.

170. The unfair and deceptive trade acts and practices have directly, foreseeably and proximately caused damage to Plaintiff MANIER and other members of the Michigan Class.

171. Defendant's practices, in addition, are unfair and deceptive because they have caused Plaintiff MANIER and the Class substantial harm, which is not outweighed by any countervailing benefits to consumers or competition, and is not an injury consumers themselves could have reasonably avoided.

172. Defendant's acts and practices have misled and deceived the general public in the past, and will continue to mislead and deceive the general public into the future, by, among other things, causing them to purchase Products with false and misleading statements concerning its content at a premium price.

173. Plaintiff MANIER and the Michigan Class are entitled to preliminary and permanent injunctive relief ordering Defendant to immediately cease these unfair business practices, as well as disgorgement and restitution to Plaintiff MANIER and the Michigan Class of all revenue associated with its unfair practices, or such revenues as the Court may find equitable and just.

## COUNT IX

### NEGLIGENT MISREPRESENTATION
**(Brought on Behalf of the California Class, New Jersey Class,
Pennsylvania Class, and Florida Class)**

174.    Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN
and LEIBOWITZ reallege and incorporate herein by reference the allegations contained in all the
preceding paragraphs of this Complaint, as if fully set forth herein.

175.    At all relevant times during the applicable Class Period, Defendant designed,
manufactured, produced, marketed, and/or sold Fage® Total 0% Greek yogurt Products.

176.    The Products are marketed directly to consumers by Defendant, come in sealed
packages, and do not change from the time they leave Defendant's possession until they arrive in
stores to be sold to consumers.

177.    Defendant, directly or through its agents and employees, misrepresented a material
fact to the public, made false representations, concealments, and nondisclosures to Plaintiffs
MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and
members of the California, New Jersey, Pennsylvania, and Florida Classes (referred to below as
the "State Classes with Negligent Misrepresentation Claims" for ease of reference).

178.    Defendant, through its labeling, advertising and marketing of its Fage® Total 0%
Greek yogurt Products, makes uniform representations regarding the Products. Defendant
conspicuously displays the term "Total 0%" without specification as to what 0% refers to. The
labeling is deceptive and misleading because a reasonable consumer looking at the label is likely
to believe that the Products contain 0 calories, 0% sugar, 0% carbohydrates, or may impute any
other nutrient content meaning rather than just milkfat, as is the case with the Products.

179.    Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN
and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims

reasonably relied on Defendant's representations as to the quality and nature of the Products, as alleged herein.

180.     In making the representations of fact to Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims described herein, Defendant has failed to fulfill its duty to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

181.     Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. The Products do not lack sugar, carbohydrates, calories, or other content which a reasonable consumer may believe is unhealthy, such as sodium or cholesterol.

182.     Defendant's omission of the qualifier "fat" or "milkfat" next to the "Total 0%" materially affected Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims' decisions to purchase the Products. In reliance on the omission, Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims', purchased the Products under the reasonable expectation that they were healthier than other Greek yogurt Products.

183.     Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims

184.     Without knowledge, Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims acted on the false, misleading and deceptive "Total 0%" claim.

185.     Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims would have acted differently had they not been misled – i.e., they would not have paid money for the Products in the first place.

186.     Defendant has a duty to correct the misinformation it disseminated through its advertising of the Products. By not informing Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims, Defendant breached its duty.  Defendant also gained financially from and as a result of this breach.

187.     By and through such deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims to alter their position to their detriment. Plaintiffs and other members of the Unjust Enrichment State Classes relied upon these false representations and nondisclosures by Defendant when purchasing the Products displaying "Total 0%" on the top and front label Product packaging and as part of Defendant's marketing campaign.

188.     The reliance by Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and other consumers was reasonably foreseeable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies. Moreover, as the sole manufacturer of its Products, Defendant was (and is) in the unique position of being able to provide accurate information about its Products.

189.     Plaintiffs and other consumers have been deprived of the benefit of their bargain in that they bought Products that were not what they were represented to be.

190.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ and members of the State Classes with Negligent Misrepresentation Claims have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Fage® Total 0% Greek yogurt Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

191.     Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

192.     Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, MAYES, STARR, COHEN and LEIBOWITZ are entitled to, and hereby seek recovery of a large portion of their purchase monies, plus prejudgment interest, and reasonable attorneys' fees and costs as will be determined at the time of trial.

**COUNT X**

**UNJUST ENRICHMENT**
**(Brought on Behalf of the California Class, Florida Class, and Michigan Class)**

193.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

194.     Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, COHEN, LEIBOWITZ and MANIER bring Count IX individually and on behalf of all others who purchased the Products displaying "Total 0%" on the Product packaging and reside in the same states as those Plaintiffs: the California Class, Florida Class, and Michigan Class (referred to below as the "State Classes with Unjust Enrichment Claims or Remedies" for ease of reference).

195.     At all relevant times during the applicable Class Period, Defendant designed,

55

manufactured, produced, marketed, and/or sold Fage® Total 0% Greek yogurt Products.

196.    The Products are marketed directly to consumers by Defendant, come in sealed packages, and do not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

197.    Defendant has made and continues to make deceptive, false and misleading statements concerning the health and nutritional value of its Products, namely packaging the Products with false and misleading statements concerning its content as alleged herein. Defendant prominently displays a "0%" on the front label of its Products without providing any context as to what the value pertains to. Defendant intends to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a consumer may believe is unhealthy.

198.    As a result of Defendant's uniform deceptive marketing, fraudulent and misleading labeling of its Products with a "Total 0%" on the top and front label Product packaging and as part of its marketing campaigns,  Defendant was enriched, at the expense of the Plaintiffs and other members of the State Classes with Unjust Enrichment Claims or Remedies.

199.    Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, COHEN, LEIBOWITZ and MANIER and other members of the State Classes with Unjust Enrichment Claims or Remedies conferred non-gratuitous benefits upon Defendant by buying and paying the purchase price for Defendant's Products. Defendant accepted or retained such non-gratuitous benefits with full knowledge that Plaintiffs and other members of the State Classes with Unjust Enrichment Claims or Remedies were not receiving products of the nature and quality that Defendant represented.

200.    By virtue of the unlawful conduct described herein, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and other consumers.

201.    Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, COHEN, LEIBOWITZ and MANIER have standing to pursue this claim as they have suffered an injury in fact and have lost money as a result of Defendant's actions, as set forth herein.

202.    Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, COHEN, LEIBOWITZ and MANIER and other members of the State Classes with Unjust Enrichment Claims or Remedies do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

203.    Retention of the benefits conferred is unjust and inequitable because Defendant's misrepresentations caused injuries to Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, COHEN, LEIBOWITZ and MANIER and other members of the State Classes with Unjust Enrichment Claims or Remedies, whom would not have purchased the Products if they knew its true nature and quality. Accordingly, the Products are valueless such that Plaintiffs MENDEZ, MANIER, NEAL, JACKSON, COHEN, LEIBOWITZ and MANIER and other members of the State Classes with Unjust Enrichment Claims or Remedies are entitled to disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendants in a manner established by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated members of the Classes, seek judgment against Defendant and respectfully request the following:

A.  An order certifying the New York Class, appointing Plaintiff CHANG representative of the New York Class, and designating his counsel as counsel for the New York Class;

B.  An order certifying the New Jersey Class, appointing Plaintiff MAYES representatives of the New Jersey Class, and designating her counsel as counsel for

the New Jersey Class;

C. An order certifying the Pennsylvania Class, appointing Plaintiff STARR representative of the Pennsylvania Class, and designating her counsel as counsel for the Pennsylvania Class;

D. An order certifying the California Class, appointing Plaintiffs MENDEZ, MANIER, NEAL and JACKSON representatives of the California Class, and designating their counsel as counsel for the California Class;

E. An order certifying the Florida Class, appointing Plaintiffs COHEN and LEIBOWITZ representatives of the Florida Class, and designating their counsel  as counsel for the Florida Class;

F. An order certifying the Michigan Class, appointing Plaintiff JAMES MANIER representative of the Michigan Class, and designating his counsel as counsel for the Michigan Class;

G. An order declaring Defendant's conduct violates the statutes referenced herein;

H. An order finding in favor of Plaintiffs and each state-law Class;

I. Compensatory and punitive damages in amounts to be determined by the Court and/or jury;

J. Prejudgment interest on all amounts awarded;

K. An order of restitution and all other forms of equitable monetary relief;

L. Injunctive relief as pleaded or as the Court may deem proper;

M. An order awarding Plaintiffs and each state class their reasonable attorneys' fees and expenses and costs of suit; and

N. Any other relief the Court may deem appropriate.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims in this Complaint so triable.

Dated: November 5, 2015

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*


By:___/s/ C.K. Lee_____
       C.K. Lee, Esq.

59