UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

ALLAN CHANG, ROSALIE MAYES, REBECCA
STARR, TERESA M. COHEN, KENNETH
LEIBOWITZ, GILBERT MENDEZ, SHARON
MANIER, ANDREA NEAL, BRITTANEE
JACKSON and JAMES MANIER, *on behalf of
themselves and others similarly situated*,

                      Plaintiffs,

        v.

FAGE USA DAIRY INDUSTRY, INC.,

                      Defendant.

--------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CV-3826 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs commenced this putative class action on June 19, 2014 and filed an Amended

Complaint on September 15, 2014 against Defendants Fage Dairy Processing, S.A., Fage USA

Dairy Industry, Inc. and Fage USA Holdings, Inc. alleging violations of consumer laws of New

York, New Jersey, Pennsylvania, California, Florida, Michigan, Georgia and Texas.[1]  (Am.

Compl., Docket Entry No. 13.)  Plaintiffs also alleged negligent misrepresentation and unjust

enrichment claims under the laws of all fifty states and the District of Columbia.  (*Id.* ¶¶ 187–

205.)  Defendants moved to dismiss the Amended Complaint.  (Docket Entry No. 19.)  By

Memorandum and Order dated September 22, 2015, the Court granted the motion in part and

denied it in part (the "September 2015 Decision").  *Stoltz v. Fage Dairy Processing Indus., S.A.*,

No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015).  Plaintiffs filed a Second

--------

[1]  The Amended Complaint also named Plaintiff Barry Stoltz who is not named in the
Second Amended Complaint.

Amended Complaint (the "SAC") against Defendant Fage USA Dairy Industry, Inc. on November 15, 2015, alleging: (1) violations of the New York General Business Law, N.Y. Gen. Bus. Law § 349; (2) violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; (3) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.*; (4) violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"); (5) violations of the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200 *et seq.* (the "CUCL"); (6) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*; (7) violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*; (8) negligent misrepresentation under the laws of California, New Jersey, Pennsylvania and Florida; and (9) unjust enrichment under the laws of California, Florida and Michigan.  (SAC, Docket Entry No. 30.)  Plaintiffs seek compensatory and punitive damages, restitution and injunctive relief. (*Id.* at 58.)

Defendant asserts that Plaintiffs lack Article III standing to seek injunctive relief and moves to dismiss Plaintiffs' claims under the CUCL, the CLRA and Plaintiffs' negligent misrepresentation claims.  (Def. Partial Mot. to Dismiss ("Def. Mot."), Docket Entry No. 38; Def. Mem. of Law in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 38-1; Def. Reply in Supp. of Def. Mot. ("Def. Reply"), Docket Entry No. 38-3.)  For the reasons set forth below, the Court finds that Plaintiffs do not have standing to seek injunctive relief.  The Court grants Defendant's motion to dismiss Plaintiffs' negligent misrepresentation claims and denies Defendant's motion to dismiss Plaintiffs' CUCL and CLRA claims.

### I.   Background

The Court assumes familiarity with the facts as set forth more fully in the September 2015 Decision, *Stoltz*, 2015 WL 5579872, at *3–4, and provides a summary of the pertinent

facts.  For the purposes of deciding Defendant's motion, the Court assumes the truth of the allegations in the SAC.

Defendant manufactures, markets and sells various Greek yogurt products throughout the United States under the brand Fage®, including Defendant's "Total 0%" products.  (SAC ¶ 2.) The "Total 0%" products include a plain variety of yogurt as well as fourteen different fruit-flavor varieties (the "Total 0% Products").  (*Id.* ¶ 28.)  The Total 0% Products "are available at most supermarket chains and other retail outlets throughout the United States, including but not limited to Walmart, Costco, Target, Shoprite, Pathmark, Walgreens, and Duane Reade."  (*Id.* ¶ 32.)

According to Plaintiffs, Defendant misleads consumers about the ingredients in the Total 0% Products through a nationwide marketing campaign, including the packaging of the Total 0% Products and Defendant's website, Facebook page and Twitter account.  (*Id.* ¶¶ 3, 56–59.) Plaintiffs specifically allege that Defendant misleads consumers by prominently displaying the phrase "Total 0%" on the top and front labels of the Total 0% Products without providing any context as to the meaning of "0%," (*id.* ¶¶ 3, 39, 48); that Defendant modeled its marketing campaign for the Total 0% Products on the marketing campaigns of products such as Coke Zero and Pepsi Max, which prominently feature "Zero" or "0" on their packaging to signify that these products are free of sugar, calories and carbohydrates, (*id.* ¶¶ 4, 39–42); and that Defendant intends for consumers to conclude that "Total 0%" means that the Total 0% Products are healthy and lack sugar, carbohydrates, calories, or any other ingredients, nutrients or qualities that a particular consumer believes to be unhealthy, when instead, the Total 0% Products typically contain approximately sixteen grams of sugar per container, (*id.* ¶¶ 4, 34, 38–39, 48).

3

Plaintiffs contend that they were misled by the use of "Total 0%" in Defendant's marketing campaign for the Total 0% Products and purchased the Total 0% Products for a premium price based on their erroneous belief as to the meaning of "Total 0%."  (*Id.* ¶¶ 6, 55, 63, 66, 68–70.)  Plaintiffs compare the Total 0% Products to other yogurt products sold by Defendant's competitors and assert that, while some of Defendant's competitors employ the phrase "0%" in the marketing and packaging of their yogurt products, these products and marketing campaigns make clear that the "0%" refers only to those yogurts' fat content.  (*Id.* ¶¶ 43–47.)  Plaintiffs allege that by failing to disclose to consumers in a clear manner whether the Total 0% Products are free of fat, sugar, cholesterol, carbohydrates or calories, Defendant has an unfair advantage over its competitors.  (*Id.* ¶ 48.)  As a result of Defendant's failure to clarify what the "0%" refers to, reasonable consumers like Plaintiffs are left to impute meaning to the prominent "0%" on the package of the Total 0% Products.  (*Id.* ¶¶ 39, 48.)  Plaintiffs also allege that because the "0%" is preceded by the word "Total," a reasonable consumer is likely to believe that the Total 0% Products contain no fat, sugar, sodium, cholesterol, carbohydrates, calories, or any other item required to be disclosed on the Total 0% Products' packaging.  (*Id.* ¶ 48.)

Plaintiffs acknowledge that the fine print on the front and top labels of the Total 0% Products states "All Natural — Nonfat Greek Strained Yogurt," but contend that this disclosure is not placed in sufficiently close proximity to the prominent "Total 0%" claim on the labels, making it impossible for the reasonable consumer to deduce that "Total 0%" refers only to fat content.  (*Id.* ¶ 49.)

4

Plaintiffs bring claims on behalf of six purported classes of plaintiffs who purchased the Total 0% Products in New York, New Jersey, Pennsylvania, California, Florida and Michigan. (SAC ¶¶ 77–82); *Stoltz*, 2015 WL 5579872, at *3.

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013)  Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

### b.   Standing

Defendant asserts in its reply brief that Plaintiffs lack standing to seek injunctive relief because they fail to allege a likelihood of continuing or future injury.[2]  (Defs. Reply 8, Docket Entry No. 38-3.)  Defendant argues that because Plaintiffs "*now* unquestionably know what [the Total 0% Products'] packaging refers to," Plaintiffs "cannot show that they are realistically threatened by a repetition of the alleged violation."  (*Id.*)

When seeking injunctive relief, "a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  "[T]o meet the constitutional minimum of standing" for injunctive relief, a plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *Lyons*, 461 U.S. at 101–102); *see also Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016) ("Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." (first

---

[2]  Although courts "generally do not consider issues raised in a reply brief for the first time," *United States v. Pepin*, 514 F.3d 193, 203 n.13 (2d Cir. 2008), standing is a prerequisite to invoking the Court's jurisdiction, *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016); *see also Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (noting that if the plaintiff lacks standing to seek injunctive relief, then the court "lack subject matter jurisdiction to entertain a request for such relief" (citing *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990))). Therefore, the Court has a duty to consider standing *sua sponte*.  *See Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (stating that courts are "required to raise" threshold jurisdictional issues "*sua sponte*" (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006))); *Poindexter v. Nash*, 333 F.3d 372, 383 (2d Cir. 2003) ("Indeed, if the parties do not call a jurisdictional defect to the attention of the court, the court has the duty to raise it *sua sponte*." (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)); *Simmonds v. I.N.S.*, 326 F.3d 351, 358 n.8 (2d Cir. 2003) ("Article III ripeness is a constitutionally mandated jurisdictional prerequisite, and so its absence must be noted by a court *sua sponte* . . . ." (citing *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998))).

citing *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Pungitore v.*

*Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the

plaintiff must prove the likelihood of *future* or *continuing* harm.").  The alleged injury "must be

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife*

*Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. ---, ---, 134 S. Ct. 2334, 2341 (2014)); *Am. Civil Liberties Union v. Clapper*,

785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that

"threatened injury must be *certainly impending* to constitute injury in fact," and that

"[a]llegations of *possible* future injury" are not sufficient.'" (alteration in original) (quoting

*Clapper v. Amnesty Int'l USA*, 568 U.S. ---, --- 133 S. Ct. 1138, 1147 (2013))).

    A plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a

likelihood that he . . . will be injured in the future." *Shain*, 356 F.3d at 215; *see also Nicosia*, ---

F.3d at ---, 2016 WL 4473225, at *12 (stating that past injuries do not confer standing to seek

injunctive relief); *Pungitore*, 506 F. App'x at 42 (stating that, while past wrongs may be

"evidence bearing on 'whether there is a real and immediate threat of repeated injury,' such

evidence 'does not in itself show a present case or controversy regarding injunctive relief . . . if

unaccompanied by any continuing, present adverse effects'" (quoting *Lyons*, 461 U.S. at 102)).

"In establishing a certainly impending future injury, . . . the plaintiff must establish how he or

she will be injured prospectively and that the injury would be prevented by the equitable relief

sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (collecting cases).

"[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must

the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003)

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The Second Circuit has not directly addressed whether plaintiffs alleging claims of false or misleading advertising have standing to seek injunctive relief where the action the plaintiffs seek to enjoin is still ongoing.[3]  *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 444 (E.D.N.Y. 2015) ("The Court of Appeals for the Second Circuit has apparently not yet directly addressed the issue of whether a plaintiff, with no claim of probable future injury, may pursue an injunction under state consumer protection statutes.").  Nevertheless, some district courts in the Second Circuit have concluded that consumer plaintiffs asserting deceptive advertising claims do not have standing to seek injunctive relief because of insufficient allegations of future injury.[4]

---

[3]  The Second Circuit recently held that a plaintiff alleging false or misleading advertising claims lacks standing to seek injunctive relief where the defendant has stopped selling the product in question.  *Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016).  However, there are no allegations that Defendant no longer sells the Total 0% Products.

[4]  Other district courts in the Second Circuit have held otherwise and "have declined to follow *Lyons* in consumer protection cases."  *Nicosia*, 84 F. Supp. 3d at 157; *see Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (holding that the plaintiff had standing to seek injunctive relief even though the plaintiff alleged that he would not purchase the deceptive product again); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (same); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (same).  Some of these courts have determined that, because a consumer cannot seek to enjoin deceptive conduct until they become aware of the conduct by suffering an injury, holding that a consumer does not have standing to seek injunctive relief would effectively bar consumers from ever being able to seek injunctions in false advertising cases.  *See Belfiore*, 94 F. Supp. 3d at 445 (holding that the plaintiffs had standing to seek injunctive relief based on their false advertising claims "because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'" (quoting *Ackerman*, 2013 WL 7044866, at *15 n.23)); *Ackerman*, 2013 WL 7044866, at *15 (noting that if standing for injunctive relief were denied because a plaintiff had become aware of an allegedly deception, then "injunctive relief would never be available in false advertising cases, a wholly unrealistic result" (citation omitted)).  These courts have also held that because the plaintiffs are still exposed to the allegedly deceptive statements, their injury is ongoing.  *See Delgado*, 2014 WL 4773991, at *14 (finding that the plaintiffs had standing to seek injunctive relief because the plaintiffs would be "expos[ed]" to the allegedly ongoing and misleading statements in the future); *Ackerman*, 2013 WL 7044866, at *15 n.23 ("Plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that

*See Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams & Products Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that because the plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"), *appeal withdrawn* (Nov. 10, 2015); *Elkind v. Revlon Consumer Products Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (holding that the plaintiffs did not have standing to seek injunctive relief because they were "aware of the alleged misrepresentations that they challenge[d], so there [wa]s no danger that they will again be deceived by them"); *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (holding that the plaintiffs did not have standing to seek injunctive relief because the plaintiffs alleged that the products at issue had been deceptively advertised and that they would not have bought the products "absent the allegedly misleading advertisements").  These courts have held that because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm.  *See Albert*, 151 F. Supp. 3d at 417 ("Plaintiffs have not alleged that they will purchase [the deceptive products] in the future. . . .  Since Plaintiffs have not alleged any future injury, they do not have standing to seek injunctive relief on behalf of themselves or a class."); *Avon*, 2015 WL 5730022, at *8 (explaining that because "[e]ach Plaintiff states that, if she had been aware of the alleged truth about Avon's products, she would not have bought class products," and therefore failed to allege a risk of future harm, "they

---

they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful.  This is the harm New York's and California's consumer protection statutes are designed to redress.").

lack[ed] standing to seek a forward-looking injunction"); *Elkind*, 2015 WL 2344134, at *3

("[The] [p]laintiffs are now aware of the alleged misrepresentations . . . , so there is no danger

that they will again be deceived by them.").[5]

Despite the absence of Supreme Court or Second Circuit law applying this standard to

consumer plaintiffs seeking injunctive relief, the requirement that a plaintiff allege a risk of

future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs

must satisfy. *See Lyons*, 461 U.S. at 102 (stating that in order to "satisfy the threshold

requirement imposed by Article III" a plaintiff seeking injunctive relief must demonstrate a

likelihood of future injury); *Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12 (noting that

"Article III limits federal judicial power" and that plaintiffs "lack standing to pursue injunctive

relief where they are unable to establish a 'real or immediate threat' of injury" (first quoting

*Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Shain*, 356 F.3d at 215

(noting that "[i]n order to meet the constitutional minimum of standing to seek injunctive relief,"

a plaintiff must "show a likelihood that he will be injured in the future" (alteration and internal

quotation marks omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d

Cir. 1998))); *Albert*, 151 F. Supp. 3d at 418 (declining to follow *Ackerman* because "binding

Supreme Court and Second Circuit precedent" requires that in order "[f]or a plaintiff to have

---

[5]  Where the named plaintiffs do not have standing to seek an injunction, the putative
class also lacks standing to seek injunctive relief.  *Albert v. Blue Diamond Growers*, 151
F. Supp. 3d 412, 417 (S.D.N.Y. 2015) (noting that "the named plaintiffs must have standing in
order to seek injunctive relief on behalf of the class" (citing *Dodge v. Cty. of Orange*, 103
F. App'x 688, 690 (2d Cir. 2004))); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158
(E.D.N.Y. 2015) (holding that the named plaintiff lacked standing to pursue injunctive relief on
behalf of a putative class because the named plaintiff "must personally have standing to secure
prospective relief on behalf of a class" and the named plaintiff lacked personal standing
(collecting cases)), *aff'd in relevant part, vacated on other grounds*, --- F. 3d ---, ---, 2016 WL
4473225 (2d Cir. Aug. 25, 2016).

individual standing to seek injunctive relief, he or she must demonstrate a likelihood of future injury" (first citing *Lyons*, 461 U.S. at 102; and then citing *Shain*, 356 F.3d at 215)).

Here, Plaintiffs allege that they were injured when they reviewed the Total 0% Products' "marketing and [p]roduct packaging, reasonably relied in substantial part on the labels and were thereby deceived in deciding to purchase the [Total 0% Products] for a premium price." (SAC ¶¶ 6, 16–27, 68–76.) Although Plaintiffs allege that Defendant's misleading conduct continues, they have not alleged that they will purchase the Total 0% Products in the future. These allegations are insufficient to establish a likelihood of future injury because Plaintiffs cannot rely on past injury. *See Tomasino*, 44 F. Supp. 3d at 256 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))). Moreover, in order to be injured by an allegedly deceptive misrepresentation, Plaintiffs must actually be personally deceived by the misrepresentation. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004) (stating that, without reliance, "misrepresentations standing alone have little legal significance"); *LaCourte v. JP Morgan Chase & Co.*, No. 12-CV-9453, 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013) (noting that "numerous courts have held that in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived" (first citing *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (App. Div. 2004); and then citing *Mascoll v. Strumpf*, No. 05-CV-667, 2006 WL 2795175 (E.D.N.Y. Sept. 26, 2006))). Because Plaintiffs have failed to allege a risk of future injury, they lack standing to seek injunctive relief individually and on behalf of a class.

### c.   California Unfair Competition claim

Defendant contends that Plaintiffs fail to state a claim under the CUCL because they have not adequately alleged "unlawful, unfair, or fraudulent conduct" or actual reliance. (Def. Mem.

4–5.)  Defendant argues that the nutrition facts on the label of the Total 0% Products accurately

disclose the caloric content of the Total 0% Products, and therefore only a least sophisticated

consumer could be deceived by the "Total 0%" phrase, which California courts generally do not

find to be sufficient to allege deceptive advertising claims.  (*Id.* at 6–7.)  Defendant also argues

that Plaintiffs have not alleged that they purchased the Total 0% Products because they believed

that the Total 0% Products contained zero calories, therefore they have failed to plead actual

reliance on the "Total 0%" phrase.  (Def. Reply 6.)

Plaintiffs assert that they have adequately pled all of the elements of a CUCL claim and

that Defendant has "recycled the same arguments from its previous Motion."  (Pls. Opp'n 5–9.)

Plaintiffs argue that they have stated a claim under the unfair and fraudulent prongs of the CUCL

because, as the Court held in the September 2015 Decision, the SAC sufficiently alleges

misleading advertising on the part of Defendant.  (*Id.* at 7, 9.)  Plaintiffs also argue that they have

adequately pled reliance because they have alleged that they would not have purchased the Total

0% Products had they known that "Total 0%" referred only to the fat content of the Total 0%

Products.  (*Id.* at 6–7.)

### i.   Plaintiffs have sufficiently alleged unfair competition

"The [C]UCL prohibits, and provides civil remedies for, unfair competition, which it

defines as 'any unlawful, unfair or fraudulent business act or practice.'"  *Kwikset Corp. v.*

*Superior Court*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200); *see also*

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) ("The [C]UCL is a broad

California statute that prohibits business practices that constitute 'unfair competition' . . . ."

(quoting Cal. Bus. & Prof. Code § 17200)), *as amended on denial of reh'g and reh'g en banc*

(July 8, 2013); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) ("The

[C]UCL prohibits 'unfair competition,' which is broadly defined to include 'three varieties of

unfair competition — acts or practices which are unlawful, or unfair, or fraudulent.'" (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999))).  Only one of the three types of unfair competition is required to state a claim.  *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 690 (Ct. App. 2010) ("Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition."); *see also Davis*, 691 F.3d at 1168 ("Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007))).  A plaintiff who proves a CUCL violation can obtain injunctive relief and restitution but not monetary damages.  *Durell*, 108 Cal. Rptr. 3d at 690 ("A [C]UCL action is equitable in nature; damages cannot be recovered. . . .  [P]revailing plaintiffs are generally limited to injunctive relief and restitution." (internal quotation marks omitted) (quoting *Korea Supply*, 29 Cal. 4th at 1144); *see also Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1146 (S.D. Cal. 2012) (same).

False advertising claims under the CUCL, like the CLRA,[6] are "governed by the 'reasonable consumer' test."  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (first citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); and then citing *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 494 (Ct. App. 2003)); *see also Hofmann*, 2015 WL 5440330, at *8 ("Claims under the [C]UCL . . . and CLRA that representations are misleading are governed by the 'reasonable consumer' test . . . ." (citing *Williams*, 552 F.3d at 938)); *Rahman v. Mott's LLP*, No. 13-CV-3482, 2014 WL 5282106, at *8 (N.D. Cal. Oct. 15, 2014) ("False advertising claims under . . . the CLRA[] and the fraudulent and unfair prongs of

---

[6]   In the September 2015 Decision, the Court denied Defendant's motion to dismiss Plaintiffs' CLRA claim because the allegations in the Amended Complaint satisfied the reasonable consumer standard.  *Stoltz*, 2015 WL 5579872, at *21.

the [C]UCL are governed by the reasonable consumer standard." (collecting cases)).  "Under the

reasonable consumer standard, [a plaintiff] must show that members of the public are likely to be

deceived."  *Williams*, 552 F.3d at 938 (citation and internal quotation marks omitted); *see also*

*Ebner v. Fresh, Inc.*, 818 F.3d 799, 806 (9th Cir. 2016) (stating that under the reasonable

consumer standard a plaintiff must show that "members of the public are likely to be deceived"

(internal quotation marks omitted) (first quoting *Williams*, 552 F.3d at 938; and then citing

*Freeman*, 68 F.3d at 289)).[7]

        In the September 2015 Decision, the Court denied Defendant's motion to dismiss

Plaintiffs' consumer protection claims, including Plaintiffs' CLRA claim.  *Stoltz*, 2015 WL

5579872, at *21.  The Court found that the misrepresentations alleged in the Amended

Complaint could mislead a reasonable consumer.  *Id.*  With respect to California law, the Court

considered and rejected Defendant's argument that the label of the Total 0% Products accurately

discloses the caloric content of the Total 0% Products and therefore only a least sophisticated

consumer could be deceived by the Total 0% Products.  *Id.* at *17 (holding that the nutrition

facts listed on the label of the Total 0% Products "do not, as a matter of law, foreclose the

possibility that a reasonable consumer would likely be misled by Defendants' Total 0%

Products").  In reaching this conclusion, the Court found that Plaintiffs allegations were not "the

type of patently implausible claim that warrants dismissal as a matter of law based on the

---

        [7]  Contrary to Defendant's contention that a CUCL claim under the unfair prong must be
"tethered" to a violation of "an underlying California consumer law," (Def. Mem. 6 n.4), the
California Supreme Court has held that "a practice may be deemed unfair even if not specifically
proscribed by some other law," *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,
1143 (2003) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180
(1999) (stating that the CUCL "does more than just borrow" violations of other laws and that "a
practice may be deemed unfair even if not specifically proscribed by some other law")); *see also*
*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) (same (citing *Korea Supply*, 29
Cal. 4th at 1143)).

reasonable consumer prong." *Id.* at *20 (first citing *Williams*, 552 F.3d at 936–38; then citing *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *1 (E.D.N.Y. July 21, 2010) (applying California law); then citing *McKinnis v. Kellogg USA*, No. 07-CV-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007); and then citing *McKinniss v. Gen. Mills, Inc.*, No. 07-CV-2521, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007)).

This reasoning applies equally to Plaintiffs' CUCL claim because Plaintiffs' CUCL and CLRA claims are governed by the same reasonable consumer standard. *Williams*, 552 F.3d at 938. Therefore, because in the September 2015 Decision the Court held that Plaintiffs had sufficiently alleged misrepresentations that could deceive a reasonable consumer and had therefore stated a CLRA claim, *Stoltz*, 2015 WL 5579872, at *21, Plaintiffs' allegations are also sufficient to state a CUCL claim.

### ii.   Plaintiffs have sufficiently alleged reliance

In addition to alleging unlawful, unfair or fraudulent conduct, "a class representative proceeding on a claim of misrepresentation as the basis of his or her [C]UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009); *see also Durell*, 108 Cal. Rptr. 3d at 687–88 ("[W]e conclude that to have standing to bring a claim under the 'unlawful' prong of the [C]UCL, in which the predicate unlawful conduct is based on misrepresentations, as here, the reasoning of *Tobacco II* is equally applicable and actual reliance is an element of the claim.").[8]

---

[8]  California courts have determined that actual reliance is an element of *unlawful* and *fraudulent* CUCL claims. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (holding that actual reliance is an element of CUCL claims under the fraudulent prong); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 694 (Ct. App. 2010) (holding that actual reliance is an element of CUCL claims under the unlawful prong). However, no California court has expressly addressed whether reliance is an element of an *unfair* CUCL claim. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014). Nevertheless, where a

To establish actual reliance, a plaintiff must "show[] that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct," meaning that, in the absence of the defendant's misrepresentation, "the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 326 (citation omitted); *see Kwikset*, 51 Cal. 4th at 327 (same); *see also In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 771 (N.D. Cal. 2010) (same). A plaintiff only has to allege that the misrepresentations were *a* cause of the conduct, not the sole cause. *Kwikset*, 51 Cal. 4th at 327 ("However, a 'plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct.'" (alteration in original) (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 328)); *see also Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014) (same).

"[T]he California Supreme Court has made clear" that requiring actual reliance is "intended 'to eliminate standing for those who have not engaged in any business dealings with would-be defendants . . . while preserving for actual victims of deception and other acts of unfair competition the ability to sue and enjoin such practices.'" *Backus v. Gen. Mills, Inc.*,

---

CUCL claim is based on allegations of misrepresentation or deception, actual reliance is an element of the claim regardless of whether the claim is for unlawful, unfair or fraudulent conduct. *See id.* at 1076 (requiring "allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the [C]UCL where such claims are premised on misrepresentations" (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011))); *Kane v. Chobani, Inc.*, No. 12-CV-2425, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) ("[T]he Court concludes that the actual reliance requirement also applies to claims under the [C]UCL's unfair prong to the extent such claims are based on fraudulent conduct. Here, the gravamen of Plaintiffs' claims under the [C]UCL's unlawful, unfair, and fraud prongs is that Defendant's labeling was deceptive. Accordingly, Plaintiffs must demonstrate actual reliance and economic injury." (citing *In re Actimmune Mktg. Litig.*, No. 08-CV-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011))); *see also Durell*, 108 Cal. Rptr. 3d at 694 (Ct. App. 2010) (stating that a "consumer's burden of pleading causation in a [C]UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the [C]UCL the consumer invokes").

122 F. Supp. 3d 909, 925 (N.D. Cal. 2015) (quoting *Kwikset*, 51 Cal. 4th at 317), *appeal dismissed* (Jan. 26, 2016); *see also Hinojos*, 718 F.3d at 1107 (noting that the "California Supreme Court has held that the purpose" of the actual reliance requirement "was to curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealings with the defendant" while preserving "standing for those who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices" (internal quotation marks omitted) (quoting *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010))).

Thus, where a plaintiff pleads that he saw and relied on the defendant's false or misleading representation when purchasing the defendant's product, and that he would not have purchased the product absent the false or misleading misrepresentation, the California Supreme Court has found such allegations sufficient to show reliance. *See Kwikset*, 51 Cal. 4th at 327–28 (holding that the plaintiffs established actual reliance where they pled that: "(1) [the defendant] labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) [the] plaintiffs saw and relied on the labels for their truth in purchasing [the defendant's] locksets, and (4) [the] plaintiffs would not have bought the locksets otherwise"); *see also Hinojos*, 718 F.3d at 1102, 1105 (holding that the plaintiff sufficiently pled actual reliance where he alleged that he "purchased several items that were advertised as being substantially reduced from their 'original' or 'regular' prices but that were, in reality, routinely sold by [the defendants'] at the advertised 'sale' prices rather than the purported 'original' or 'regular' prices" and that he would not have purchased the defendants' products "in the absence of [the defendants'] misrepresentations"); *Hofmann v. Fifth Generation, Inc.*, No. 14-CV-2569, 2015 WL 5440330, at *6 (S.D. Cal. Mar. 18, 2015) ("Under *Kwikset,* two causal steps are

necessary to tie a labeling misrepresentation to an economic injury: the consumer (1) must have been 'deceived by a products label into spending money to purchase the product,' and (2) must allege that he or she 'would not have purchased it otherwise.'" (quoting *Kwikset*, 51 Cal. 4th at 317)).

Plaintiffs allege that Mendez, one of the California class representatives, purchased the Total 0% Products believing that "Total 0%" referred to the amount of sugar, calories, carbohydrates and sodium contained in the Total 0% Products when instead "Total 0%" refers only to the Total 0% Products' fat content.  (SAC ¶ 23.)  Plaintiffs also allege that Mendez would not have purchased the Total 0% Products had he known that "Total 0%" referred only to the Total 0% Products' fat content.  (*Id.*)  By stating that Mendez purchased the Total 0% Products because he was deceived by the meaning of "Total 0%" and would not have otherwise purchased the Total 0% Products, Plaintiffs have sufficiently alleged reliance.  *See Hinojos*, 718 F.3d at 1105 ("[The plaintiff] alleges that the advertised discounts conveyed false information about the goods he purchased . . . .  He also alleges that he would not have purchased the goods in question absent this misrepresentation.  This is sufficient under *Kwikset*."); *Kwikset*, 51 Cal. 4th at 330 ("A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the [actual reliance element] by alleging, as [the] plaintiffs have here, that he or she would not have bought the product but for the misrepresentation.").

Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' CUCL claim.

### d.   California Consumer Legal Remedies Act claim

Defendant contends that under section 1782(a) of the CLRA, Plaintiffs were required to send Defendant presuit notice of the claim and provide Defendant an opportunity to cure the alleged defect.  (Def. Mem. 7.)  Defendant argues that because Plaintiffs failed to comply with the CLRA's presuit notice requirement, the Court must dismiss Plaintiffs' CLRA claim.  (*Id.*

at 7–8.) Plaintiffs argue that the CLRA requires presuit notice only for damages claims but not for restitution or injunctive relief claims, and that because they seek only injunctive relief and restitution, they were not required to give Defendant notice in advance of bringing this lawsuit. (Pls. Opp'n 11–12.)

The "CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices'" and "allows suits by a 'consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [the CLRA].'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (alteration in original) (first quoting Cal. Civ. Code § 1770(a); and then quoting *id.* § 1780). Where a consumer seeks damages, the CLRA requires that the consumer "notify those alleged to have committed deceptive practices at least 30 days prior to commencing an action for damages." *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1085 (1999) (citing Cal. Civ. Code §§ 1782(a)–(c), 1784); *see also* Cal. Civ. Code § 1782(a) (providing that a consumer must provide written notice "[t]hirty days or more prior to the commencement of an action for damages pursuant to" the CLRA); *Stearns*, 655 F.3d at 1023 ("[I]f a plaintiff hopes to recover damages, he must give a thirty-day notice to the defendant before he commences the action." (citing Cal. Civ. Code § 1782)). Because "the notice provision exists to give an erring defendant an opportunity to avoid liability for damages . . . the notice provision[] must be literally complied with." *Stearns*, 655 F.3d at 1023. However, "an action for injunctive relief may be brought without giving such notice and waiting for such remediation." *Broughton*, 21 Cal. 4th at 1085; *see also* Cal. Civ. Code § 1782 (d) (providing that "[a]n action for injunctive relief [pursuant to the CLRA] may be commenced without compliance" with the thirty-day notice requirement).

The CLRA does not specify whether a consumer action seeking restitution is a damages claim requiring presuit notice, and the Court has found no decisions by the California Supreme Court or its appellate courts addressing this issue.  Nevertheless, the California Supreme Court has described restitution[9] and damages as distinct remedies, stating that "'[d]amages,' as that term is used to describe monetary awards, may include a restitutionary element, but when the concepts overlap, the latter is easily identifiable."  *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 174 (2000).  The California Supreme Court has explained the difference by way of example:

> In a fraud action the court may award as damages money fraudulently taken from the plaintiff.  Civil Code section 3343, subdivision (a), provides: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction."  Thus, while the award of damages may be greater than the sum fraudulently acquired from the plaintiff, the award includes an element of restitution — the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received.  To that extent the award of damages literally includes restitution.  By contrast, a damages award in a negligence action in tort may include monetary compensation for lost wages, pain and suffering, physical injury, and property damage.  That damage award would not include an element of restitution.

*Id.*  Thus, where a monetary award seeks to restore a plaintiff's property that the defendant obtained using unlawful means, even where that property is money, it is "a restitutionary remedy" and "not one for payment of damages."  *Id.* at 177–78 (holding that an award for unpaid

---

[9]  The California Supreme court has described restitution to mean "the return of money or other property obtained through an improper means to the person from whom the property was taken."  *Clark v. Superior Court*, 50 Cal. 4th 605, 614 (2010) (citations omitted); *see also Restitution*, *Black's Law Dictionary* (10th ed. 2014) ("'Restitution' is an ambiguous term, sometimes referring to the disgorging of something which has been taken and at times referring to compensation for injury done." (internal quotation marks omitted) (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 9-23, at 376 (3d ed. 1987))).

wages under the CUCL was a restitutionary remedy and not a damages award); *see also Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 58–59 & n.22 (Ct. App. 2006) (discussing the differences between damages under the CLRA and restitution under the CLRA and CUCL, and noting that they are "different remedies" with "different purposes").

Using similar reasoning, several California federal district courts have concluded that a CLRA claim for restitution is not a damages claim and therefore does not require notice in advance of a lawsuit. *See Vasic v. PatentHealth, L.L.C.*, --- F. Supp. 3d ---, ---, 2016 WL 1110300, at *4 (S.D. Cal. Mar. 22, 2016) ("Although [the] [p]laintiff sought restitution and disgorgement in the original [c]omplaint, these do not appear to be 'damages' for purposes of the CLRA." (citing *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008))); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1177 (S.D. Cal. 2012) (distinguishing "injunctive relief, restitution, and disgorgement" from "monetary damages" and stating that the former group did not require presuit notice); *Henderson v. Gruma Corp.*, No. 10-CV-4173, 2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011) (noting that restitution is "not considered damages for purposes of the CLRA" (first citing *In re Mattel*, 588 F. Supp. 2d at 1119; and then citing *Util. Consumers' Action Network v. Sprint Sols., Inc.*, No. 07-CV-2231, 2008 WL 1946859, at *6 (S.D. Cal. Apr. 25, 2008))). In reaching this outcome, these courts have relied on section 1780 of the CLRA, which lists the many ways in which a consumer can recover for a CLRA violation, as including actual damages, an injunction, restitution, punitive damages and any other relief the court deems proper, and have reasoned that because restitution is listed as a separate form of relief from actual damages and punitive damages, a claim for restitution under the CLRA is not a damages claim. *See Sprint Sols.*, 2008 WL 1946859, at *7 (holding that "[p]refiling notice is not required for a CLRA claim for restitution" because although a "claim for damages and restitution

are overlapping to some extent," the CLRA identifies them "as separate forms of relief" (citing Cal. Civ. Code § 1780(a))); *Kennedy v. Nat. Balance Pet Foods, Inc.*, No. 07-CV-1082, 2007 WL 2300746 (S.D. Cal. Aug. 8, 2007) (noting that the CLRA "distinguishes between actions seeking 'damages,' 'injunctive relief,' and 'restitution,'" and that the statute's "specific requirement of notice [applies] only in actions 'for damages'").  In *Kennedy*, the court also relied on "the rule of statutory construction that expression in a statute of certain things necessarily involves the exclusion of other things not expressed," noting that "this rule of construction counsels against implying a requirement for written presuit notice in suits seeking equitable relief given that the legislature only specified a notice requirement in actions seeking damages."[10]  *Kennedy*, 2007 WL 2300746, at *3.

Here, Plaintiffs seek to restore the money Defendant acquired using allegedly unlawful means, and thus seek a "restitutionary" remedy.  While such a remedy may overlap with a

---

[10]  Other district courts have reached the opposite conclusion, finding that a CLRA restitution claim is a damages claim and requires notice in advance of a lawsuit.  *See Oxina v. Lands' End, Inc.*, No. 14-CV-2577, 2015 WL 4272058, at *2 (S.D. Cal. June 19, 2015) ("A claim for the 'equitable relief of disgorgement or restitution [is] still a claim for damages.'" (alteration in original) (quoting *Cuevas v. United Brands Co.*, No. 11-CV-991, 2012 WL 760403, at *4 (S.D. Cal. Mar. 8, 2012)); *Cuevas*, 2012 WL 760403, at *4 ("The Court agrees that Plaintiff should have given notice prior to filing her original CLRA claim because her claim for the equitable relief of disgorgement or restitution was still a claim for damages.").  These courts have held or found that interpreting the CLRA's "notice requirement for 'damages' to be limited to 'actual damages' would render the word 'actual' in Section 1780 redundant."  *Laster v. T-Mobile USA, Inc.*, No. 05-CV-1167, 2008 WL 5216255, at *17 (S.D. Cal. Aug. 11, 2008), *rev'd on other grounds sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  These courts reason that if the California legislature intended for the CLRA's notice requirement "to include *only* 'actual damages,' it is unclear why it would specifically exempt *only* injunctive relief from the notice requirement."  *Id.*; *see also In re Ford Tailgate*, No. 11-CV-2953, 2014 WL 1007066, at *9 (N.D. Cal. Mar. 12, 2014) ("If the notice requirement in § 1782(a) pertaining to 'an action for damages' is read narrowly to apply only to 'actual damages,' it would render the word 'actual' in § 1780 redundant and ignore the Legislature's specific exemption of 'injunctive relief' in § 1782(d).").

damages award, under California law, they are distinct remedies. *See Cortez*, 23 Cal. 4th at 174 (noting that damages and restitution are overlapping concepts but identifying restitution as a distinct remedy). Because the CLRA requires presuit notice only for actions seeking damages, the Court finds that a restitution claim under the CLRA does not require presuit notice based on the California Supreme Court's explanation of the distinction between restitution and damages.[11] *See Cortez*, 23 Cal. 4th at 174; *Colgan*, 38 Cal. Rptr. 3d at 58–59 & n.22 (noting that damages under the CLRA and restitution under the CLRA and CUCL are "different remedies" with "different purposes"); *see also Sprint Sols.*, 2008 WL 1946859, at *7 ("While the claim for damages and restitution are overlapping to some extent, they are identified as separate forms of relief Cal. Civ. Code § 1780(a). Presuit notice is therefore not required for a CLRA claim for restitution.").

Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' CLRA claim.

### e.   Negligent misrepresentation claims

Defendant contends that Plaintiffs have not adequately alleged negligent misrepresentation claims under the laws of California, Florida, New Jersey or Pennsylvania because the claims are incorrectly premised on an alleged omission, and Plaintiffs have not alleged any fiduciary relationship between the parties. (Def. Mem. 8–9.) Defendant specifically argues that Plaintiffs' negligent misrepresentation claims are premised on the allegation that

---

[11]  The Court finds persuasive the decision in *Kennedy v. Nat. Balance Pet Foods, Inc.*, No. 07-CV-1082, 2007 WL 2300746, (S.D. Cal. Aug. 8, 2007) which states that "this interpretation is strengthened by the California legislature's specific enumeration" of the different remedies available under the CLRA. *Kennedy*, 2007 WL 2300746, at *3. As the court in *Kennedy* noted, because the statute lists restitution as a separate remedy from actual damages and punitive damages, a claim for restitution is distinct from a claim for damages. *Id.*; *cf. Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 874–75 (Ct. App. 2013) (noting that the CLRA permits consumers to sue "for damages, restitution, and an injunction but before suing for damages [the plaintiff] must first notify the defendant of the alleged violation" (citing Cal. Civ. Code §§ 1780(a), 1782)).

Defendant omitted the qualifier "milk fat" from the "0%" in "Total 0%," and under California law, negligent misrepresentation claims cannot be premised on omissions.  (*Id.* at 8–9.) Defendant also argues that, under the laws of Florida, New Jersey and Pennsylvania, negligent misrepresentation claims can only be premised on omissions when there is a fiduciary relationship between the parties.  (*Id.* at 8–9.)

Plaintiffs contend that their negligent misrepresentation claims are premised on Defendant's "affirmative misrepresentation" in addition to an omission.  (Pls. Opp'n 12.) Plaintiffs argue that "'Total 0%' is a representation, in and of itself," and that this representation is sufficient to support their negligent misrepresentation claims.  (*Id.* at 13.)  Plaintiffs also argue that because "Total 0%" is an affirmative misrepresentation, they do not need to allege facts establishing that the parties stood in a fiduciary or confidential relationship.  (*Id.* at 14.)

As explained below, Plaintiffs have not stated a claim of negligent misrepresentation under the laws of California, Florida, New Jersey or Pennsylvania.

### i.   California

Under California law, "[t]he elements of negligent misrepresentation are [that]: (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages."  *Majd v. Bank of Am., N.A.*, 197 Cal. Rptr. 3d 151, 162–63 (Ct. App. 2015) (citing *West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 295 (Ct. App. 2013)), *as modified* (Jan. 14, 2016).  "[T]he tort of negligent misrepresentation requires a 'positive assertion' and does not apply to implied misrepresentations."  *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1083 (1997) (internal quotation marks omitted) (quoting *Evan F. v. Hughson United Methodist Church*,

10 Cal. Rptr. 2d 748, 756 n.2 (Ct. App. 1992)), as modified (Feb. 26, 1997); *see also Neubronner ex rel Mercatura Trust v. Young*, 111 F.3d 138, 138 (9th Cir. 1997) ("California law requires that plaintiffs allege positive assertions and not merely implied representations to support a claim of negligent misrepresentation." (citing *Huber, Hunt & Nichols, Inc. v. Moore*, 136 Cal. Rptr. 603, 619 (Ct. App. 1977))); *Lopez v. Nissan N. Am., Inc.*, 135 Cal. Rptr. 3d 116, 136 (Ct. App. 2011) ("A negligent misrepresentation claim 'requires a positive assertion,' not merely an omission." (collecting cases)).

Plaintiffs allege that the Total 0% Products are deceptive because Defendant omitted the qualifier "milk fat" next to the "0%" in "Total 0%," and illustrate the point by comparing the Total 0% Products to competing products that have qualified the 0% on the label by including fat or milk.  (SAC ¶¶ 43–47.)  According to Plaintiffs, Defendant's omission of the qualifier "milk fat" deceptively causes "purchasers to impute any meaning to the 0% that consumers wish," including that the Total 0% Products contain 0% calories or sugar.  (*Id.* ¶¶ 4, 34, 48.)  These allegations of deception are premised on Defendant's omission and therefore do not state a claim for negligent misrepresentation under California law.  *See Lopez*, 135 Cal. Rptr. 3d at 136 (affirming dismissal of the plaintiffs' negligent misrepresentation claim because it was based on the defendant's failure "to disclose that its odometers may not be 100 percent accurate").

### ii. Florida, New Jersey and Pennsylvania

"Under Florida law, a claim of negligent representation requires showing four elements: '(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.'" *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*,

607 F.3d 742, 747 (11th Cir. 2010) (quoting *Baggett v. Electricians Local 915 Credit Union*, 620 So. 2d 784, 786 (Fla. Dist. Ct. App. 1993)).  Under New Jersey law, the elements of negligent misrepresentation are: "an incorrect statement, negligently made and justifiably relied upon, and economic loss or injury sustained as a consequence of that reliance." *Green v. Morgan Props.*, 215 N.J. 431, 457 (2013) (alterations, citations and internal quotation marks omitted).  Under Pennsylvania law, "[t]he elements of a common law claim for negligent misrepresentation are: '(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.'" *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects & Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. Ct. 2015) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 466 (2005)).

Under the laws of Florida, New Jersey and Pennsylvania, a negligent misrepresentation claim may be premised on an omission only if the parties have a fiduciary or fiduciary-like relationship.  *See Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, --- F. Supp. 3d ---, ---, 2016 WL 867116, at *8 (S.D. Fla. Mar. 7, 2016) (Under Florida law, "the failure to disclose material information is not actionable as part of a negligent misrepresentation claim absent some fiduciary or fiduciary-like duty to disclose the information." (first citing *Advisor's Capital Invs., Inc. v. Cumberland Cas. & Sur. Co.*, No. 05-CV-404, 2007 WL 220189, at *3 (M.D. Fla. Jan. 26, 2007); and then citing *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005))); *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 859–60 (E.D. Pa. 2015) (stating that under Pennsylvania law, "claims of negligent misrepresentation by omission likewise require a duty to disclose" (citing *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds*,

26

*Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999))); *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d

447, 457 & n.9 (D.N.J. 2015) (stating that under New Jersey law, a negligent misrepresentation

claim may be based on an omission where the "plaintiff adequately pleads a duty to disclose"

and "a duty to disclose arises: '(1) when there is a fiduciary relationship between the parties; (2)

when the transaction is intrinsically fiduciary, and calls for good faith and full disclosure; and (3)

and when one party expressly places a special trust or confidence in the other'" (first citing

*S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 397 (D.N.J. 2007); and then

quoting *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-CV-4146, 2010 WL 2925913, at *11

(D.N.J. July 21, 2010))); *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv'r Commc'n Sols.,*

*Inc.*, No. 15-CV-405, 2015 WL 4093932, at *5 (E.D. Pa. July 7, 2015) ("An omission is

actionable in tort law only if defendant had a duty to speak.  Generally, such a duty arises when a

fiduciary or special relationship exists between parties." (collecting cases)).[12]

---

[12] *See also Kahama VI, LLC v. HJH, LLC*, No. 11-CV-2029, 2013 WL 6511731, at *6 (M.D. Fla. Dec. 12, 2013) ("[U]nder Florida law, omissions are not actionable as negligent or fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the complainant.  A duty to disclose arises when one party has information that the other party has a right to know because of a fiduciary or other relation of confidence between them." (citing *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879–80 (Fla. Dist. Ct. App. 2000))); *Summit Trust Co. v. Paul Ellis Inv. Associates, LLC*, No. 12-CV-6672, 2013 WL 3967602, at *6 (E.D. Pa. Aug. 2, 2013) ("Claims of negligent misrepresentation can be based on omissions 'only where there is an independent duty to disclose the omitted information.'" (quoting *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998))); *Henderson*, 2010 WL 2925913, at *11 ("A plaintiff may not bring an omission-based claim 'unless the breaching party owes [him or her] an independent duty imposed by law' requiring disclos[ur]e." (alteration in original) (quoting *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 315 (2002))); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1237 (S.D. Fla. 2007) (stating that "[u]nder Pennsylvania law, an omission or nondisclosure is only actionable under the theory of negligent misrepresentation if there is a duty to speak" and this duty "most often arises when there is a fiduciary or confidential relationship between parties," and noting the court found no Pennsylvania case law imposing a duty to speak "[i]n the context of business transactions, when there has been no active misrepresentation, and no fiduciary or confidential relationship exists" (internal quotation marks omitted) (quoting *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998))).

The Court has already determined that Plaintiffs' negligent misrepresentation claims are premised only on Defendant's omission of the qualifier "milk fat" next to the "0%" in "Total 0%." *See supra* Part II(e)(i). Thus, under the laws of Florida, New Jersey and Pennsylvania, Plaintiffs can assert a claim of negligent misrepresentation against Defendant only if they have a fiduciary or fiduciary-like relationship. *See Hawaiian Airlines*, --- F. Supp. 3d at ---, 2016 WL 867116, at *8 (stating that under Florida law a negligent misrepresentation claim may not be premised on an omission absent a fiduciary or fiduciary-like duty); *Peruto*, 126 F. Supp. 3d at 457 & n.9 (stating that under New Jersey law a negligent misrepresentation claim may not be premised on an omission absent a fiduciary or confidential relationship); *Paramount Fin. Commc'ns*, 2015 WL 4093932, at *5 (stating that under Pennsylvania law a negligent misrepresentation claim may not be premised on an omission absent a fiduciary or confidential relationship). Plaintiffs have not alleged or argued that the parties have a fiduciary or fiduciary-like relationship,[13] and therefore have not stated claims for negligent misrepresentation.

In support of their argument that they have alleged an affirmative misrepresentation, Plaintiffs rely on *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), and *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1386 (S.D. Fla. 2014), where the plaintiffs asserted negligent misrepresentation claims based on the defendants' food labeling. In *Ebin*, the court granted the plaintiffs' class certification motion based on allegations that the defendant sold olive oil with a "100% Pure Olive Oil" label when the product was "not in fact olive oil, but pomace," a product that "is fundamentally different" than olive oil. *Ebin*, 297 F.R.D. at 564. Because the defendants

---

[13]   Moreover, in the September 2015 Decision, the Court held that the parties did not have a fiduciary-like relationship. *Stoltz*, 2015 WL 5579872, at *25.

in *Ebin* never moved to dismiss the plaintiffs' negligent misrepresentation claim, the court did not consider the merits of the claim, and never determined whether the plaintiff's claim was based on an affirmative statement or an omission.[14]  *See id.*  Here, Plaintiffs allege that a consumer may "impute any meaning" to "Total 0%" and that "Total 0%" could refer to a variety of nutritional characteristics, such as the amount of sugar, carbohydrates or calories contained in the Total 0% Products.  (SAC ¶ 48.)

Similarly, in *Garcia*, the court held that the plaintiffs stated a claim of misrepresentation under Florida law, where the plaintiffs alleged that the defendants sold breakfast cereals that were marketed "as 'all natural' and containing 'nothing artificial,' when in fact the products contain[ed] [genetically modified organisms] and other allegedly synthetic ingredients." *Garcia*, 43 F. Supp. 3d at 1371.  In finding that the plaintiffs "stated a claim for negligent misrepresentation with respect to the 'all natural' and 'nothing artificial' representations," the court noted the plaintiffs' allegations that the cereals were not in fact all natural and contained artificial ingredients.  *Id.* at 1387.  In contrast to the "all natural" and "nothing artificial" statements, which were explicit and affirmative statements describing the contents of the product and were literally false because the cereals contained artificial ingredients, "Total 0%" does not explicitly state the Total 0% Products do not contain sugar or have zero calories.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' negligent misrepresentation claims.

---

[14]  Moreover, the phrase "100% Pure Olive Oil" is an affirmative statement that does not require consumers to make any inference and is open to only one interpretation — that the product is made of pure olive oil.

### III.   Conclusion

For the foregoing reasons, the Court finds that Plaintiffs do not have standing to seek injunctive relief.  The Court grants Defendant's motion to dismiss Plaintiffs' negligent misrepresentation claims and denies Defendant's motion to dismiss Plaintiffs' CUCL and CLRA claims.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  September 28, 2016
         Brooklyn, New York